# VERIFIED RETURN OF SERVICE

Job # 331639

**Client Info:**

BLAKE WARNER
2211 S. Village Ave.
Tampa, FL  33612

**Case Info:**

| | |
|---|---|
| **PLAINTIFF(S):** | UNITED STATES DISTRICT COURT |
| BLAKE WARNER, J.W. | Court Division: MIDDLE DISTRICT OF FLORIDA |
| -versus- | Court Case # **8:23-cv-181-SDM-JSS** |
| **DEFENDANT(S):** | |
| THE SCHOOL BOARD OF HILLSBOROUGH COUNTY FLORIDA | |

**Service Info:**

**Date Received: 1/26/2023** at **11:30 AM**
**Service:** I Served **THE SCHOOL BOARD OF HILLSBOROUGH COUNTY FLORIDA**
With: **SUMMONS IN A CIVIL ACTION; Verified Complaint; EXHIBITS A - E; Motion for Preliminary Injunction;
Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction; Notice of Consent To Magistrate
Judge**
by leaving with **Aida Farrell, EMPLOYEE-AUTHORIZED TO ACCEPT**

**At Business 901 E. KENNEDY BLVD. TAMPA, FL 33602**
On **1/26/2023** at **12:55 PM**
**Manner of Service: GOVERNMENT AGENCY**
PUBLIC AGENCY SERVICE: F.S. 48.111 (1)(a)(b)(c) (2) (3)

**Served Description:  (Approx)**

Age: **48**, Sex: **Female**, Race: **Hispanic**, Height: **5' 5"**, Weight: **128**, Hair: **Brown** Glasses:  **Yes**

I **LISBETH MENDEZ** acknowledge that I am authorized to serve process, in good standing in the jurisdiction wherein the process
was served and I have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing document
and that the facts stated in it are true. FS.92.525(2).



**LISBETH MENDEZ**
Lic # **20-876081**

**S & W Process Service**
2801 N. Florida Avenue
Tampa, FL 33602
Phone: (813) 251-9197

Our Job # **331639**




1 of 1

DATE: 1/26/2023 TIME: 12:55 PM
MILITARY: NA
MARITAL STATUS: NA

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| Blake Warner, J.W. | ) )  ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| The School Board of Hillsborough County Florida | ) ) |
| _____ | ) ) |
| *Defendant(s)* | ) |

Civil Action No.  8:23-cv-181-SDM-JSS

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  The School Board of Hillsborough County Florida
901 East Kennedy Boulevard
Tampa, FL 33602

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Blake Warner
2211 S Village Ave
Tampa, FL 33612

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

AlejandroCastillo

Date:  January 26, 2023

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.  8:23-cv-181-SDM-JSS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____        _____
                                                    *Server's signature*

                                        _____
                                                    *Printed name and title*

                                        _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

# United States District Court
## For The Middle District of Florida
## Tampa Division

Blake Warner, J.W.

v.

The School Board of
Hillsborough County Florida

Case Number

## Verified Complaint

## Introduction

*Plaintiff*, Blake Warner, *pro se*, hereby brings this action, on behalf of himself and his minor child J.W., against The School Board of Hillsborough County, Florida ("HCSB") for violations of 20 U.S. Code § 1706 ("Equal Educational Opportunities Act") or ("EEOA"), 42 U.S. Code § 3601 et seq ("Fair Housing Act"), and 42 U.S. Code § 1983, for intentionally operating a segregated school system.

The HCSB has significantly contributed to racial imbalance in the Hillsborough County housing market by drawing boundaries around racial lines. The HCSB then used these racial boundaries as a pretext for discrimination through redlining and steering.

An interactive version of the map boundaries presented are available at: https://grandwizarddavis.de/

## Plaintiffs

1. *Plaintiff* Blake Warner is African-American and the parent of a minor child ( J.W.) who currently attends a public school operated by the HCSB.

2. Blake Warner and J.W. have continuously resided in Hillsborough County since 2016.

3. At all times relevant to this lawsuit, J.W. was assigned to the following schools operated by the HCSB: Plant High School, Chamberlain High School, Wilson Middle School, Coleman Middle School, Adams Middle School, Mitchell Elementary, and Lake Magdalene Elementary.

4. J.W. currently attends Mitchell Elementary, and intends to attend Coleman Middle School and Plant High School thereafter.

## Defendant HCSB

5. Defendant The School Board of Hillsborough County, Florida operates, controls and supervises all free public schools within Hillsborough County pursuant Art. IX § 4 and Fla. Stat. § 1001.42.

6. The HCSB accepts federal funds through the Individuals with Disabilities Education Act ("IDEA"), Title I-VII, and the Cares Act.

## Jurisdiction and Venue

7. This court has jurisdiction pursuant 20 U.S. Code § 1706, 42 U.S. Code § 3613, and 42 U.S. Code § 1983.

8. Venue is proper pursuant 28 U.S.C. § 1391 with respect to all defendants, because all Defendants reside in the Middle District of Florida, and all events giving rise to *Plaintiff*'s claims occurred in the Middle District of Florida.

## EEOA

9. The EEOA declares unlawful segregation as "the assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color, sex, or national origin among the schools of such agency than would result if such student were assigned to the school closest to his or her place of residence within the school district of such agency providing the appropriate grade level and type of education for such student".

10. When J.W. lived at 502 S. Fremont Avenue during the 2019 school year, he was assigned to Mitchell Elementary despite being closer to Gorrie Elementary, and he was assigned to Plant High School despite being closer to Blake High School. This assignment resulted in more segregation than would have normally occurred had he been assigned to the closest schools.

11. As laid out below, the HCSB has a pattern and/or practice of assigning students to farther away schools resulting in more segregation, in violation of the EEOA.

## TAMPA REGIONS

12. For the purposes of this complaint, the following regions are defined as follows:

13. *South of Gandy* ("SOG") is defined as the area between Mac Dill Air Force Base and Gandy Boulevard.

14. *South Tampa* is defined as the area between Gandy Boulevard and Kennedy Boulevard.

15. *West Tampa* is defined as the area between Kennedy Boulevard and Busch Boulevard/Linebaugh Avenue, and west of I-275.

16. *North Tampa* is defined as the area between Busch Boulevard/Linebaugh Avenue and Lutz, Forida, and west of I-275.

17. *East Tampa* is defined as the area between Kennedy Boulevard and Fletcher Avenue, and east of I-275.

## Regions

18. *South Tampa*'s population is predominantly White. *see* Exhibits A and B.

19. *West Tampa*'s population is predominantly Hispanic. *see* Exhibits A and C.

20. *East Tampa*'s population is predominantly African-American. *see* Exhibits A and D.

21. The racial demographics rapidly change at Kennedy Boulevard. Kennedy is generally the demarcation point between affluent whites and minorities.

## Elementary Schools

22. The three *South Tampa* elementary schools which border *West Tampa*–Grady, Mitchell, and Gorrie–currently have utilization rates of 118%, 111%, and 107%, respectively. *see* Exhibits E.

23. The three *West Tampa* elementary schools which border *South Tampa*–Tampa Bay Boulevard, West Tampa, and Just–currently have utilization rates of 63%, 84%, and 41%, respectively. *see* Exhibits E.

24. The bordering *South Tampa* schools are extremely over utilized, while the bordering *West Tampa* are extremely underutilized.

4

25. The obvious solution is to shift the school boundaries southward, sending some of the white students from over-utilized *South Tampa* to underutilized–majority minority–*West Tampa* to balance out the utilization.

26. Rather than do this, the HCSB has proposals to close a minority school and leave the bordering *South Tampa* schools at a staggering 100-119% utilization despite their stated goal to reduce utilization to the 80% range.

27. The HCSB will not lower those utilization rates to the 80% range, because that would mean sending white students to bordering minority schools.

## Plant, Jefferson, and Blake High School

28. The following map shows the locations and boundaries for Plant High School (orange), Jefferson High School (yellow), and Blake High School (purple):



29. Plant High School is nearly *twice* as far from Davis Island as Blake High School is by ground transportation, yet students in that affluent white enclave are not assigned to Blake, a predominently African-American school.

30. Similarly, the neighborhoods of Westshore Palms, North Bon Air, Beach Park, and Oakford Park are at least twice as close to Jefferson High School than Plant, and in some cases literally across the street from Jefferson, yet those white students are assigned to Plant and the school district is unable to give a cognizable reason why.

31. The reason for the odd shape of the boundaries becomes clear when you overlay those boundaries over a map of the racial demographics, as illustrated in the

following image:



32. The most egregious part is that Plant is overpopulated, and yet they still will not send those white students to predominantly minority Jefferson High School and Blake High School.

33. The following image shows just how maladjusted the current Plant High School boundaries are, when overlaid with the boundaries for the closest high schools. The shaded area highlight portions of Plant High School's current boundary that are closer to Jefferson High School and Blake High School:



# Coleman, Madison, and Pierce Middle School

34. The situation with Coleman Middle School is similar to Plant High School: Coleman's boundary is artificially kept lower to exclude assigning the large African-

American population to their north, despite them being significantly closer to Coleman than Pierce.

35. Madison to the South of Coleman, is exerting pressure to move Coleman's boundaries up. But to avoid doing this, the District is proposing plans to just close Madison or Monroe, to avoid sending white students to minority schools to the north.

36. The following image shows the locations of Coleman, Pierce, and Madison, overlayed over a map of race. The black lines represent the border for the closest school:



## District Boundaries

37. Not only did the school board segregate the students, they segregated themselves. They drew district map boundaries that correspond directly to race: the Hispanic population is almost exclusively located in district 1, the African-American population in district 5, and white population in district 2.

38. This image shows the racial map overlaid with the district boundaries shown in blue lines:



9

39. The racial segregation in the district map was intentional.

40. The HCSB stated "Given the population distribution in Hillsborough County, having a high black population in District Five maximizes the opportunity for a minority candidate to be elected. When considering the demographic profile of each map, any map that identified a significant reduction in the black population in District Five was discarded"[1].

41. The HCSB stated "The black population percentage for district five .. is 41.1%"[2].

42. The black population percentage for Hillsborough County is approximately 18%.

43. The school board intentionally drew their district map to concentrate their black population in District 5.

44. By concentrating the black population in District 5, they remove the black population from the other districts causing other races to be segregated as well. The end result was a map where Hispanic (District 1), black (District 5), and white (District 2, 3, and 4) populations were segregated into their own respective districts.

## FAIR HOUSING ACT

45. Hillsborough County home buyers and renters frequently make decisions on which neighborhoods to purchase or rent based substantially on the public schools that are assigned to properties.

46. The assigned schools are provisioned services and/or facilities in connection with the residence that is assigned to them.

47. The HCSB is the entity who assigns public schools to specific residences, usually through the promulgation of a boundary map.

---

[1]*see* https://www.hillsboroughschools.org/cms/lib/FL50000635/Centricity/Domain/282/Map%20F.png
[2]*see* https://www.hillsboroughschools.org/cms/lib/FL50000635/Centricity/Domain/282/Map%20F.png

48. Promulgating school boundary maps that unlawfully segregate by race under the EEOA is de facto racial discrimination under the Fair Housing Act.

49. At all times relevant, there has been at least one residential real estate property for sale in each of the affected neighborhoods.

50. "Steering" is the practice of influencing a buyer's choice of communities based upon one of the protected characteristics under the Fair Housing Act, which are race, color, religion, gender, disability, familial status, or national origin.

51. "Redlining" is a discriminatory practice that puts services (financial and otherwise) out of reach for residents of certain areas based on race or ethnicity, often times by drawing lines on maps.

52. The HCSB artificially inflated the property values in *South Tampa* by racially segregating white students into white schools to fabricate "A-rated" schools by excluding minority students.

53. On the flip side, this caused the schools that were deprived of those white students to get less resources and lower school grades, which depressed property values in homes assigned to those manufactured minority schools.

54. This pricing imbalance steered minorities to minority neighborhoods that they could only afford due to HCSB segregation based pricing manipulation, and affluent white people to the segregated white neighborhoods, further entrenching the segregation. Effectively redlining along the HCSB's segregated school boundaries.

## INJURY

55. As an African-American who has been the subject of discrimination throughout his life, Mr. Warner is particularly sensitive to discriminatory practices. Mr. Warner was insulted and emotionally distressed by the knowledge that school

aged students in his community–including his child–were being discriminated against because of their race... in the year 2023.

56. Mr. Warner was and is saddened, angered, and insulted by the fact that the HCSB continues to operate a segregated school system.

57. Defendant's unlawful conduct proximately caused Mr. Warner to suffer the afore-mentioned emotions, which have manifested into stress, unpleasant rumination, mental strain, and feelings of indignity, hopelessness and anxiety about race discrimination in housing and the school system.

58. Due to HCSB's manipulation of property values, Mr. Warner and J.W. were priced out *South Tampa* and had to relocate to more diverse *North Tampa*, further increasing segregation in *South Tampa* and resulting in a loss of community for both Mr. Warner and J.W.

59. Mr. Warner grew up in *South Tampa* and *SOG*. He attended elementary, middle, and high school there. J.W. had lived half of his life there.

60. J.W. is injured by currently attending schools which are unlawfully segregated, depriving him of both an equal educational opportunity and the opportunity to attend racially integrated schools.

## INTENT

61. The fact that the school boundaries correlate nearly 1-to-1 directly to race.

62. The fact that the school board explicitly used race to draw the district maps to segregate.

63. The fact that the HCSB has a history of refusing to desegregate.

64. The fact that the HCSB was notified several times that they were in violation of the EEOA, and provided racial maps and other evidence in support of that

assertion, yet the HCSB ignored it and pressed forward with racial segregated maps and proposals.

65. The fact that Blake High School was the negro High School in the 50's before desegregation, and it remains a segregated negro High School in 2023 due to the obvious gerrymandering of Blake High School.

66. The fact that white students across the street from Jefferson High School are not assigned to Jefferson High School.

67. The affluent white residents of *South Tampa* wield tremendous political influence in relation to the other parts of Hillsborough County.

68. Those affluent white *South Tampa* residents are currently exerting tremendous pressure on the HCSB to not implement certain proposed school boundary changes that would assign some of their homes to Jefferson High School, despite their homes being geographically closer to Jefferson, because generally they do not want their children attending Jefferson High School (a low performing minority school) and because their property values will drop if their homes are reassigned from A-rated Plant High School to C-rated Jefferson High School.

69. Superintendent Addison Davis has capitulated to this political pressure, and has expressed assurances to certain school board members that he will not submit the proposal that reassigns white students to Jefferson High School, while publicly stating that no decision has been made:



Tim McGaughey  Author  Group expert
There was a question about where the superintendent stands on this so far. Dr. Hahn commented that there was a soft commitment to keep the 130 families in the district.

Note: I assume this referenced scenario 2 and WBA, WSP.

1d                                                                   👍❤ 3

70. The school board members are poised to approve yet another racially segregated map, despite knowing full and well that those maps are racially segregated, because they lack the political courage to overcome that political pressure from *South Tampa* residents:



71. School Board Member Dr. Stacy Hahn's comments about "fighting everyday" to keep District 2 (white) family's in District 2 schools (white).

72. A discriminatory purpose, not any legitimate reason, was a motivating factor behind Defendant's aforementioned discriminatory actions and/or omissions.

## Dr. Hahn's Statements

73. On or about January 11, 2023, Dr. Stacy Hahn gave a news interview with New Channel 8 WFLA[3].

74. This interview was broadcast on public television as well as printed on WFLA's website.

75. Dr. Hahn knew when she agreed to this interview, that it would be published and/or printed on television and/or the WFLA website.

76. During this interview, Dr. Hahn stated "I can tell you that I am fighting every day to make sure District 2 families stay in District 2 schools,".

77. There is no legal basis for District 2 families to stay in District 2. School boundaries routinely cross those arbitrary Districts, whose sole purpose is for electing school board members, not for school boundaries.

78. "District 2" is the racially gerrymandered Caucasian district that Dr. Hahn represents. "District 2"'s population is predominantly white.

79. District 1's population is predominantly minority and borders District 2 to the north.

80. Dr. Hahn's statement is dog whistling, telling white residents in South Tampa that she is fighting hard not to send their white children to a minority dominated schools in District 1.

81. Dr. Hahn's statement indicates a preference for white people to live and attend white schools in District 2, and consequently for minority students to attend schools in District 1.

---

[3] *see*  https://www.wfla.com/news/hillsborough-county/hundreds-attend-plant-high-school-meeting-to-protest-proposed-hillsborough-school-redistricting/

## DISPARATE IMPACT

82. The current school boundaries are arbitrary and the HCSB cannot have any legitimate objective for them because they violate the EEOA.

83. The current school boundaries disproportionately affect racial minorities by isolating them into under-performing schools, while the isolated white students excel in A-Rated schools.

84. The disparity is immense, every single one of the *South Tampa* white schools near the border are A-Rated, and every single one of the minority schools near the *South Tampa* border are C rated or below. The minority schools are so underfunded, that they cannot even afford to bus all of their students to extra circular activities such as football games. Meanwhile the white schools are swimming in cash.

85. While on paper both white schools and minority schools receive the same funding, in practice the white schools leverage the wealth of the affluent white parents to raise side-money for the school.

86. They raise hundreds of thousands of dollars per year in additional funding through fundraisers such as art galleries and other special events throughout the year.

87. The parents in the minority schools cannot afford to spend thousands of extra money out of pocket to self-fund their schools.

88. The end result is the white schools getting significant more funding than minority schools, leading to better student outcomes for white students.

89. The school boundaries are then directly used both to keep minority students out of the A-rated white schools so that they cannot benefit from this increased revenue and educational opportunity, and to avoid sending affluent white students to minority schools thus depriving those schools of an additional revenue stream and improving the ratings and educational opportunities at those schools.

16

90. This further harms the minority communities, because their property values are decreased, while the property values increase in the white neighborhoods.

# COUNTS

## COUNT I
### 20 U.S. Code § 1703(a): Deliberate Segregation
### J.W. Against DEFENDANT HCSB

91. *Plaintiffs* re-alleges and incorporates by reference ¶ 1 - 90 *Defendant* intentionally segregated students by race by assigning them to farther away schools to increase segregation.

## COUNT II
### 20 U.S. Code § 1703(c): Closest School
### J.W. Against DEFENDANT HCSB

92. *Plaintiffs* re-alleges and incorporates by reference ¶ 1 - 90 *Defendant* segregated students by race by assigning them to farther away schools which resulted in an increase in segregation.

## COUNT III
### 42 U.S. Code § 1983: Equal Protections - Race
### Blake Warner and J.W. Against DEFENDANT HCSB

93. *Plaintiffs* re-alleges and incorporates by reference ¶ 1 - 90

94. *Defendant* intentionally treated white students differently than minority students, to segregate them.

## COUNT IV

*42 U.S. Code § 3604(b): Intentional Discrimination School Services*
*Blake Warner and J.W. Against* DEFENDANT *HCSB*

95. *Plaintiffs* re-alleges and incorporates by reference ¶ 1 - 90

96. *Defendant* intended to segregate students by race and/or color through school assignment boundary maps which are the terms, conditions, or privileges of a sale or rental of a dwelling, or the provision of services or facilities in connection therewith.

## COUNT V

*42 U.S. Code § 3604(b): Disparate Impact School Services*
*Blake Warner and J.W. Against* DEFENDANT *HCSB*

97. *Plaintiffs* re-alleges and incorporates by reference ¶ 1 - 90

98. *Defendant*'s school assignment boundary maps had a discriminatory effect on minority students in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race and/or color.

## NATURE OF RELIEF

WHEREFORE, *Plaintiffs* respectfully requests that this court:

(a) declare the actions, omissions, policies, and procedures of Defendant HCSB, complained of herein to be in violation of the Fair Housing Act; and

(b) declare the actions, omissions, policies, and procedures of Defendant HCSB, complained of herein to be in violation of the EEOA; and

(c) declare the actions, omissions, policies, and procedures of Defendant HCSB, complained of herein to be in violation of the equal protections clause; and

(d) enter a permanent injunction enjoining Defendant HCSB from promulgating any school assignment boundary maps that unlawfully segregate students by race; and

(e) enter a permanent injunction enjoining Defendant HCSB from promulgating any school assignment boundary maps without prior approval of the Court; and

(f) enter an order directing Defendant HCSB to submit a proposed desegregated school assignment boundary map for approval; and

(g) award to the *Plaintiff* costs of suit and reasonable attorney fees; and

(h) grant whatever additional relief this Court deems appropriate and just under the circumstances.

## DEMAND FOR BENCH TRIAL

Plaintiff hereby demands a trial by judge on all issues.

## UNSWORN DECLARATION

I declare under penalty of perjury that the foregoing is true and correct. Executed on:

| | |
|---|---|
| 1-26-2023 | |
| Date | Signature |
| | Blake Warner, *pro se* |
| | 2211 S. Village Ave |
| | Tampa, FL 33612 |
| | E-Service: BLAKE@NULL3D.COM |

20



Majority Race Key

| White | Hispanic | Black | Asian | Multiple/Other |









# United States District Court
## For The Middle District of Florida
## Tampa Division

Blake Warner, J.W.

v.

The School Board of
Hillsborough County Florida

Case Number

# Motion for Preliminary Injunction

Now Comes Plaintiff, Blake Warner, *pro se*, and Plaintiff J.W., and respectfully move this Court to issue a preliminary injunction against Defendant The School Board of Hillsborough County Florida ("HCSB") pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.

In support thereof, Plaintiffs state as follows:

- On 1-26-2023, Plaintiffs filed a verified complaint in this matter alleging housing discrimination in violation of 42 U.S.C. § 3601 et seq "Fair Housing Act", The Equal Education Opportunities Act, and 42 U.S.C. § 1983 related to allegations that the HCSB was operating a segregated school system through school boundary maps.

- Defendant HCSB is currently in the process of promulgating new school boundary maps which are potentially highly disruptive to students by reassigning thou-

1

sands of students to different schools, with a final decision expected in February 2023.

- If Plaintiffs are successful, the appropriate remedy would be to redraw those very same school boundary maps in a very disruptive way.

- It would have catastrophic negative effects on school children if they were forced to be re-assigned to schools *twice* in such quick succession.

- Issuing this preliminary injunction could avoid that unnecessary harm, by giving this court time to review the matter on the merits by maintaining the status quo in the interim.

- As set forth in the accompanying Memorandum of Law, Plaintiffs alleges that the instant case meets all the applicable requirements for receiving the preliminary injunction as here requested.

WHEREFORE, Plaintiffs respectfully moves this Court to enter a preliminary injunction enjoining Defendant HCSB from promulgating any new school assignment boundary maps pending further order of the Court.

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been served to Defendants via process server with the Verified Complaint.

_____
1-26-2023

Date

_____

Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM

# United States District Court
## For The Middle District of Florida
### Tampa Division

Blake Warner, J.W.

v.

The School Board of
Hillsborough County Florida

Case Number

# Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction

(i)

# TABLE OF CONTENTS

I    Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

II   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

III  Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

IV  Standard For Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

V   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

1.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS . . . . . . . .   2

2.   PLAINTIFF WILL SUFFER IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS NOT GRANTED . . . . . . . . . . . . . . . . . . . . . . . . .   2

3.   THE BALANCE OF EQUITIES TIPS STRONGLY IN FAVOR OF GRANTING PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION.   3

4.   THE PUBLIC INTEREST FAVORS GRANTING A PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

VI  Rule 65(C) Bond Requirement Should be Waived . . . . . . . . . . . . . . . . .   5

VII Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

# I  TABLE OF AUTHORITIES

CASES                                                              Page

*Amoco Prod. Co. v. Gambell, Alaska*, 480 U.S. 531 (1987) . . . . . . . . . . . .   4

*Capital Tool and Mfg. Co. v. Maschinenfabrik Herkules*,
   837 F.2d 171 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . .   4

*Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*,
   320 F.3d 1205 (11 Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . .   1

*Gresham v. Windrush Partners, Ltd., 730 F.2d 1417*,
   1423 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . .   2, 3, 4

*Haitian Refugee Ctr., Inc. v. Baker, 949 F.2d 1109*,
   1110 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411*,
   421 n.3 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . .   5

*Pashby v. Delia, 709 F.3d 307*,  332 (4th Cir.2013) . . . . . . . . . . . . .   5

*Rogers v. Windmill Pointe Village Club Ass'n, Inc.*,
   967 F.2d 525 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . .   2

*Siegel v. LePore, 234 F.3d 1163*,  1176 (11th Cir. 2000) . . . . . . . . . . .   1

*Sofarelli v. Pinellas County, 931 F.2d 718*,  724 (11th Cir. 1991) . . . . . . .   1

*Winter v. Nat. Res. Def. Council, Inc*, 555 U.S. 7 (2008) . . . . . . . . . . .   3

CONSTITUTIONAL PROVISIONS, STATUTES AND RULES

Federal Rules of Civil Procedure

   Rule 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 5

OTHER AUTHORITIES

## II   Introduction

Plaintiffs move for a Preliminary Injunction against Defendant The School Board of Hillsborough County Florida ("HCSB") pursuant to F.R.C.P. Rule 65 (a).  Plaintiffs submit this memorandum of law in support of his motion for preliminary injunction.

Plaintiffs are requesting a preliminary injunction to prevent Defendant HCSB from promulgating a new school assignment boundary map, until a ruling on the merits.

## III   Facts

1. Defendant HCSB is not assigning students to their closest schools, resulting in racial segregation in violation of 20 U.S. Code § 1706 ("Equal Educational Opportunities Act"), The Fair Housing Act, and the equal protections clause.

2. In many cases, they are refusing to assign white students to a minority schools, who live across the street from those schools because they are refusing to desegregate.

## IV   Standard For Review

A party requesting preliminary injunctive relief must show:

1. A substantial likelihood of success on the merits;

2. A substantial threat of irreparable injury;

3. It's own injury outweighs the injury to the nonmovant;

4. The injunction would not disserve the public interest;

*Haitian Refugee Ctr., Inc. v. Baker, 949 F.2d 1109*, 1110 (11th Cir. 1991); *Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205 (11 Cir. 2003), *Siegel v. LePore, 234 F.3d 1163*,  1176 (11th Cir. 2000).

Plaintiff must clearly carry the burden of persuasion on all four elements to prevail on the Motion for Preliminary Injunction.  *Sofarelli v. Pinellas County, 931 F.2d 718*, 724 (11th Cir. 1991)

# V  ARGUMENT

## 1.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

Plaintiff seeks a preliminary injunction based on all of the Counts in the Verified Complaint

Plaintiff is likely to succeed on the merits because the evidence is overwhelming. A picture is worth a thousand words, and the images attached and embedded in the Verified Complaint speak volumes. It is impossible for the HCSB to argue that assigning those students to farther schools did not result in more segregation in violation of the EEOA. The test is simple and the results are apparent.

## 2.  PLAINTIFF WILL SUFFER IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS NOT GRANTED

If a preliminary injunction is not granted, nearly all school children in Hillsborough County–including Plaintiff J.W.–stands to suffer grievous, irreparable harm through the loss of community relationships built at schools that they would then be reassigned away from, and by continuing to live with the constant threat of imminent displacement from their schools. The uncertainty has already instilled a tremendous amount of fear and uncertainty in the community. These students cannot remain in limbo while the court resolves this matter.

Monetary relief is neither sought in this action, nor could it correct the harm inflicted if this court does not grant the injunction.

Other courts have repeatedly held that discrimination in housing constitutes irreparable harm[1]

In *Rogers v. Windmill Pointe Village Club Ass'n, Inc.*, 967 F.2d 525 (11th Cir. 1992), the Eleventh Circuit held that, "irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes" (citing *Id*). "[W]hen

---

[1] *see Gresham v. Windrush Partners, Ltd., 730 F.2d 1417*, 1423 (11th Cir. 1984) "[P]roof of the existence of discriminatory housing practices is sufficient to permit a court to presume irreparable injury."

a plaintiff who has standing to bring suit shows a substantial likelihood that a defendant has violated specific fair housing statutes and regulations, that alone, if unrebutted, is sufficient to support an injunction remedying those violations." (*Gresham v. Windrush Partners, Ltd.*, at at 1423-1424).

Harm from loss of community is particularly acute where the victims of the discrimination include children. The negative effects of instability on children are compelling and well-studied. *see* Heather Sandstrom, Sandra Huerta, The Negative Effects Of Instability On Child Development: A Research Synthesis, The Urban Institute, Low Income Working Families Discussion Paper 3 (Sept. 2013)[2]

Plaintiff cannot be made whole with monetary damages alone if no injunctive relief is granted and they are left to suffer from constant anxiety that disproportionally affects minority families.

## 3.   THE BALANCE OF EQUITIES TIPS STRONGLY IN FAVOR OF GRANTING PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION.

In deciding whether to enjoin the Defendants, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief". *see Winter v. Nat. Res. Def. Council, Inc*, 555 U.S. 7, at 376 (2008). J.W.(and most public school students in Hillsborough County) stand to lose equal educational opportunities and displacement if the HCSB is not enjoined.

Under existing Fourth Circuit precedent, "the purpose of a preliminary, as opposed to a final, injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held," and because the court does not have sufficient information at the preliminary injunction stage to conduct a trial

---

[2]https://www.urban.org/sites/default/files/publication/32706/412899-The-Negative-Effects-of-Instability-on-Child-Development-A-Research-Synthesis.PDF

on the merits, it "must balance the hardship the parties will suffer pending trial.". *see Capital Tool and Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. 1988).

While examining the balance of equities, the court should consider whether the "injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration.". *see Amoco Prod. Co. v. Gambell, Alaska*, 480 U.S. 531, at 545 (1987).

If Defendant HCSB is allowed to redraw their maps in an unlawful way, it will be impossible to undo all of the harm that a second major redistricting would inflict upon most of the school children in Hillsborough County.

Conversely, Defendant HCSB is not likely to suffer harm if they are enjoined from immediately promulgating new maps. These current maps have existed how they are currently, more-or-less, for decades.

By enjoining the Defendant HCSB, the Court will maintain the status quo while it determines Plaintiffs' rights on the merits. Taken as a whole, the equities clearly weigh in Plaintiffs' favor.

## 4. THE PUBLIC INTEREST FAVORS GRANTING A PRELIMINARY INJUNCTION

In the Eleventh Circuit Court of Appeals, when there is a likelihood of success on a Fair Housing claim, irreparable injury, damage and vindication of the public interest must be presumed.

"[W]hen a plaintiff who has standing to bring suit shows a substantial likelihood that a defendant has violated specific fair housing statutes and regulations, that alone, if unrebutted, is sufficient to support an injunction remedying those violations." (*Gresham v. Windrush Partners, Ltd.*, at at 1423-1424).

Preventing housing discrimination based on protected classes is always in the public's interest. Especially, when it affects multiple families with children in

4

the same community as it does in the present case. Allowing Defendants to successfully evict Plaintiff for exercising his rights under federal, state, and local law would have a chilling affect on other families reporting discrimination.

The issues at hand also affect nearly every child attending public school in Hillsborough County. It is in the public interest to avoiding harming these most vulnerable members of society.

# VI   RULE 65(C) BOND REQUIREMENT SHOULD BE WAIVED

Having established that Plaintiff is entitled to a preliminary injunction, the only question that remains is whether Plaintiff must provide security under Federal Rule of Civil Procedure 65(c). A "court may issue a preliminary injunction ... only if the movant gives security." F.R.C.P. Rule 65 (c). However, the purpose of the security requirement "is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction," *Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411*, 421 n.3 (4th Cir. 1999), and a court has discretion to set the bond amount or, alternatively, to waive the bond requirement. *Pashby v. Delia, 709 F.3d 307*, 332 (4th Cir.2013). A waiver of the bond requirement is justified when the court finds that the likelihood of harm to the enjoined party is remote. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 421 at at 421 n.3.

Not only is Plaintiff likely to prevail on the merits, but when balancing the equities, it is clear that the risk of harm to Defendant, by enjoining them temporarily promulgating new school boundary maps, is remote. The purpose of the lawsuit is to preserve Plaintiffs' civil rights and right to an equal education. To this end, Plaintiffs' motion for a preliminary injunction seeks to stop Defendants from discriminating against them based on race.

# VII   Conclusion

Plaintiffs demonstrate a substantial likelihood of success on the merits of their claims, and they will suffer irreparable harm if the school board immediately promulagtes new school boundary maps. The balance of equities weighs heavily in favor of issuing a preliminary injunction. Furthermore the public interest will be served by issuing the preliminary injunction.

Plaintiff is, therefore, entitled to, and the ends of justice will be served by, a preliminary injunction in this case. Plaintiff therefore request that the Court enter a preliminary injunction enjoining Defendant HCSB from promulgating any new school assignment boundary maps pending further order of the Court.

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been served to Defendants via process server with the Verified Complaint.

## UNSWORN DECLARATION

I declare under penalty of perjury that the foregoing is true and correct. Executed on:

1-26-2023
_____
Date

_____
Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM

# United States District Court
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER, J.W.

v.

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY FLORIDA

Case Number 8:23-CV-181-SDM-JSS

## NOTICE OF CONSENT TO MAGISTRATE JUDGE

Plaintiffs, Blake Warner, *pro se*, and Plaintiffs J.W., gives notice of consent to the exercise of jurisdiction in this action, pursuant 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, by Magistrate Judge Julie S. Sneed.

1

# CERTIFICATE OF SERVICE

I certify that a copy hereof has been served to Defendants via process server with the Verified Complaint.

_____
1-26-2023

Date

_____
Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM