UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER and J.W.,

    Plaintiffs,

v.                                                        Case No. 8:23-cv-00181-SDM-JSS

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

    Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

Defendant, The School Board of Hillsborough County, Florida (the "School Board") submits this response to the plaintiffs' motion for a preliminary injunction (Dkt. 2; Dkt. 3) (the "Injunction Motion").

The School Board is in the midst of analyzing school boundaries to ensure the existing facilities are used to their proper capacity, and to allow for savings the School Board can reinvest to further their goals of providing quality educations. Plaintiffs ask this Court to stop the School Board—an entity created by the Florida Constitution—from performing its duties.

This Court should deny Plaintiffs' Injunction because: (1) this lawsuit is not ripe for adjudication and will soon become moot in any event, (2) the Injunction Motion does not comply with the Local Rules for preliminary

injunction motions, and (3) Plaintiffs cannot show the requirements necessary for preliminary injunctive relief.

The School Board denies all allegations of discrimination. Plaintiffs' Injunction Motion is an effort to shut down the entire process for determining school boundaries and effectively bar all other community members from participating. This request goes too far. Accordingly, and as explained below, the School Board requests the Court deny the Injunction Motion and dismiss this case based on its related motion to dismiss.

## I.   STANDARD FOR DETERMINATION

Trial courts have discretion to grant or deny motions for preliminary injunctions, which are a "drastic remedy." *E.g.*, *Sierra Club v. Ga. Power Co.*, 180 F.3d 1309, 1310–11 (11th Cir. 1999) (quoting *Crochet v. Housing Auth. of Tampa*, 37 F.3d 607, 610 (11th Cir. 1994)) (affirming denial of an injunction). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *American Civil Liberties Union of Florida, Inc. v. Miami-Dade County School Board,* 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *All Card Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). An "[a]buse of discretion occurs when the court . . . bases its decisions upon considerations having little factual support." *Id.* (quoting *U.S. v. Varner*, 13 F.3d 1503, 1508 (11th Cir. 1994)).

## II. MEMORANDUM OF LAW

The Court must deny the Injunction Motion for three reasons. First, Plaintiffs cannot establish subject matter jurisdiction. Second, the Injunction Motion does not comply with the Local Rules, which prevents a full and fair analysis by the Board and Court. And third, the Injunction Motion does not meet the requirements for obtaining a preliminary injunction.

### A. The lack of subject matter jurisdiction for this controversy warrants denial of the Injunction Motion.

As a threshhold issue, more thoroughly briefed in the School Board's motion to dismiss, subject matter jurisdiction does not exist for this lawsuit. To briefly restate those points, "ripeness is a question of subject matter jurisdiction." *Reahard v. Lee Cty.*, 978 F.2d 1212, 1213 (11th Cir. 1992) (citing *Greenbriar Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.7 (11th Cir. 1989)). When considering whether a case is ripe, courts consider (1) whether delayed review would cause undue hardship to the plaintiffs, (2) whether judicial intervention would inappropriately interfere with further administrative action, and (3) whether the courts would benefit from further factual development of the issues. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). Because the School Board) has not issued a "final agency action" the case is not ripe for review. *Mississippi Chem. Corp. v.*

*E.E.O.C.*, 786 F.2d 1013, 1016, 1019 (11th Cir. 1986) (affirming dismissal for lack of ripeness because agency action was not final).

Plaintiffs ask to shut down public comment and the process for potential school boundary changes. Dkt. 2. In other words, Plaintiffs ask the Court to handcuff the School Board from taking *any* further actions that might change school boundaries for however long this lawsuit might last, but also prevent every other member of the public from participating in the discussion. But as noted in Plaintiffs' own filings, this proposal is an ongoing process, and the public has no fewer than seven meetings in the coming month and a half during which they can comment. Dkt. 9.

Moreover, the contradictory requests between the complaint and Injunction Motion demonstrate this matter is not ripe. The complaint seeks to *change* the current school boundaries, while the Injunction Motion seeks to *prevent* changes to the school boundaries. *Compare* Dkt. 1 (asking the Court to change the school boundaries), *with* Dkt. 2–3 (asking the Court to not permit organic changes to the school boundaries). In other words, the Plaintiffs' own filings demonstrate they are asking the Court to rule on a moving target. Even Plaintiffs admit they do not contest the proposed boundaries in the complaint, meaning their passage through the ordinary processes would moot this case. Exhibit A; *see also Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) (describing the mootness doctrine).

In short, Plaintiffs' challenge is premature. Plaintiffs have every right to participate in the ongoing public discussions, and accordingly will not face any prejudice in doing so. And the further factual development of the issues would benefit the Court in evaluating any relief requested by Plaintiffs. Moreover, granting the proposed injunction would result in court interference with the exact types of political administrative proceedings that courts try to avoid. *See Mississippi Chem.*, 786 F.2d at 1016. As a result, none of the relevant factors support Plaintiffs' lawsuit, and the resulting lack of subject matter jurisdiction warrants denial of the Injunction Motion at this time.

### B. Plaintiffs' failure to comply with the Local Rules warrants denial of the Injunction Motion.

Local Rule 6.02 (and, by extension, Local Rule 6.01) establishes strict requirements a party must follow when seeking a preliminary injunction. The Injunction Motion fails to comply with numerous of these obligations, which prevents the Court and School Board from fully assessing the Plaintiffs' requests. Rule 6.02(a), which is the main rule, has two main requirements: (1) The party seeking the preliminary injunction must comply with the first two subsections of Rule 6.01, and (2) the motion "must include as an attachment each paper on which the movant relies."

Rule 6.01(a) sets forth five items a party must include in its motion:

1. The motion must include "preliminary injunction" in the title.

2. The motion must include a precise and verified description of the conduct and persons subject to the proposed injunction.

3. The motion must include a precise and verified explanation of the amount and form of security the plaintiff must post.

4. The motion must include a supporting legal memorandum.

5. The motion must include a proposed order.

Starting with Rule 6.02(b), Plaintiffs' Injunction Motion does not itself include any exhibits on which they purport to rely. It at most makes generalized references to the complaint and pictures in the complaint. The notice of correction (Dkt. 9) has at least one included document, but only an e-mail noting the public has the right to comment at open meetings regarding the proposed boundary changes *See* Section II.A of this response.[1]

The Injunction Motion does name the School Board as the party subject the proposed injunction, but it fails to precisely identify the supposed conduct Plaintiffs wish to block. Local Rule 6.01(a)(2). At face value, it appears Plaintiffs are only referring to the current proposed boundary changes, as shown in the second bullet point of the motion itself. Dkt. 2, at 1–2. But reading the Injunction Motion further, it essentially asks the Court to block *all* possible actions the School Board might take now or in the future that

---

[1] In general, Local Rule 6.02(d) prohibits amendments to preliminary injunction motions without leave, but the School Board does not dispute the accuracy of the correction with respect to the schedule for the proposals and ability to public comment. To avoid docket clog, this response does not separately include the schedule attached to Dkt. 9, but the School Board will file it separately if desired by the Court.

6

68485518;4

could potentially "re-assign[] [students] . . . twice," regardless of whether those actions are lawful. *Id.* at 2. In other words, the School Board would be locked into its current boundaries if this reading were applied, and could not perform its necessary duties to manage school districts under the Florida Constitution. *See* FLA. CONST. art. IX, § 4 (imposing on school boards the duty to "operate, control and supervise all free public schools").

The related legal memorandum portion of the Injunction Motion similarly does not adequately describe what exactly it is the School Board allegedly cannot do. Plaintiffs discuss blocking the School Board from issuing "unlawful" new boundaries, Dkt. 3, at 4, but also suggest the School Board is somehow threatening to "evict" Plaintiffs from their home. *Id.* at 5.[2]

Lastly, the Injunction Motion does not include a proposed order that the Court and School Board can assess. This omission is significant, as the filings demonstrate the Plaintiffs are essentially asking the Court to step into a permanent role of overseeing the boundaries. The final page of the complaint asks the Court to "enter a permanent injunction enjoining [the School Board] from promulgating *any* school assignment boundary maps without prior approval of the Court." Dkt. 1, at 19 (emphasis added). Although the Injunction Motion *appears* to focus on the pendency of this case,

---

[2] As discussed further in Section II.C of this response, the School Board disagrees with any suggestions it is in any way involved in housing matters.

the expansive nature of the requests at issue requires all parties to know exactly what is at stake.

In short, the Injunction Motion is deficient. Its fails to comply with the Local Rules, leaving the School Board in the position of trying to address missing arguments and the Court in the position of deciding whether to issue a sweeping injunction without all necessary facts. *See, e.g.*, *Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."); *Crosby v. Fla.*, No. 3:22-cv-00067, 2022 WL 195312, at *3 (M.D. Fla. Jan. 21, 2022) (denying a motion for a preliminary injunction for failures to comply with Rule 6.02). As a result, the School Board requests the Court deny the Injunction Motion.

### C. Plaintiffs cannot establish the necessary requirements to obtain a preliminary injunction.

#### 1. Plaintiffs do not offer proper analysis in support of the likelihood of success on the merits of their case.

The initial obligation of a party seeking to obtain a preliminary injunction is to show "a substantial likelihood of success on the merits." Local Rule 6.01(b)(1); *see, e.g.*, *Bledorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (quoting *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)). Failure to do so ends the inquiry;

courts do not need to consider the remaining elements. *Id.*[3] The Eleventh Circuit has noted that in exercising their discretion of whether to grant a preliminary injunction, district courts must rely on considerations with substantial factual support. *Am. Civil Liberties Union of Fla.*, 557 F.3d at 1198 (quoting *U.S. v. Varner*, 13 F.3d 1503, 1508 (11th Cir. 1994)).

As noted above, the Injunction Motion does not include specific evidence on which the Plaintiffs purport to rely, but rather offers a general citation to the complaint. Dkt. 3, at 2. Specifically, the portion of the Injunction motion purporting to describe the likelihood of the Plaintiffs' success on the merits is limited to a single paragraph:

> Plaintiff is likely to succeed on the merits because the evidence is overwhelming. A picture is worth a thousand words, and the images attached and embedded in the Verified Complaint speak volumes. It is impossible for the HCSB to argue that assigning those students to farther schools did not result in more segregation in violation of the [Equal Educational Opportunities Act]. The test is simple and the results are apparent.

*Id.*

The pictures from the complaint consist of: (1) An apparent picture of the current boundary lines, with mark up from Plaintiffs, Dkt. 1 ¶ 28; (2) A purported map of racial demographics, without citation to its source, *Id.* at ¶ 31; (3) Another marked-up map without explanation of the modifications or

---

[3] In fact, this requirement applies to each of the elements—a failure to meet any one of them results in the preliminary injunction's failure. *Id.*

68485518;4

analysis, *Id.* at ¶ 33; (4) Another purported map of racial demographics, with a series of lines and markup that supposedly show areas that are closer to one school than another, *Id.* at ¶ 36; (5) A marked-up map alleging to show a comparison of racial demographics versus district boundaries, *Id.* at ¶ 38; and (6) images appearing to be of social media posts from non-parties. *Id.* at ¶¶ 69-70. There is no explanation for the source, authenticity, modifications, or analysis in these maps. And obviously the social media posts are inadmissible hearsay when offered for their purported truth. Fed. R. Evid. 801–02.

Likewise, the "Facts" section of the motion contains two brief conclusory sentences, lacking the necessary supporting evidence regarding Plaintiffs' likelihood of success. There is no full statistical analysis or evidence the School Board and Court could use to assess the merits of whether unlawful discrimination exists (which the School Board denies). The Injunction Motion fails to describe the pictures themselves or how they are purportedly relevant and helpful to this matter.

All of this leaves the School Board in the untenable position of attempting to guess as to the specifics of the Injunction Motion. In an effort to do so, the School Board raises eight brief points:

1.     First, the section regarding purported success on the merits does not contain any legal analysis. *See Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a

brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."). At most, it offers a generalized citation to the entire Equal Educational Opportunities Act,[4] but does not assess the requirements under that statute. 20 U.S.C. § 1703 provides the general rule under the Act, and generally prohibits six activities, though the complaint only cites to subsections (a) and (c) of it. Dkt. 1 ¶¶ 91–92. Subsection (a) prohibits "deliberate segregation," while subsection (c) is a bit more involved and seems to be the thrust of the complaint:

> No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by the assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color, sex, or national origin . . . .

20 U.S.C. § 1703(c). In turns, 20 U.S.C. § 1720(c) defines "segregation" as an operation that results in students being "wholly or substantially separated among the schools . . . on the basis of race, color, sex, or national origin . . . ."

The Injunction Motion does not address either of these subsections. With respect to subsection (a), the School Board denies all allegations of discrimination. The School Board disputes any suggestions it has violated subsection (c). Again, the Plaintiffs fail to explain how the School Board

---

[4] The complaint includes five counts, but the Injunction Motion itself limits itself to the Equal Educational Opportunities Act for purposes of the success on the merits discussion.

11

68485518;4

allegedly violated this provision, but the School Board maintains it has always sought to provide families with adequate schooling close to their homes—the School Board does not engage in segregation of any type. Even the Act itself notes that simply having an imbalance is *not* a denial of an equal educational opportunity; the Act is more focused on whether discriminatory intent is driving these types of decisions, which it is not in this case. 20 U.S.C. § 1704. Additionally, Plaintiffs do not suggest that they themselves are not assigned to their nearest schools. *See generally* Dkt. 1; Dkt. 3, at 2.

2. Second, and relatedly, the lack of facts in support of the Injunction Motion, and the unsupported nature of the alluded-to pictures in the complaint does not support a finding that the Plaintiffs will have success on the merits. The Injunction Motion is a series of conclusory statements without supporting evidence. The pictures and alleged inferences drawn from them are suspect at best. The lack of detail regarding the pictures or explanation of their origin renders them inadmissible for numerous reasons—unsupported expert opinion testimony, Fed. R. Evid. 701–03; hearsay as out-of-court statements offered for truth of the matter asserted, Fed. R. Evid. 802(a); lack of authentication, Fed. R. Evid. 901(a); etc. The lack of evidence for the School Board to rebut (despite its efforts here) seeks essentially to shift the burden of proof onto the defendant, which turns the

12

applicable standard on its head. *See, e.g.*, *Am. Civil Liberties Union of Fla.*, 557 F.3d at 1198 (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)) (noting that the party seeking the injunction bears the burden of proof).

3.   Third, the Injunction Motion speaks of a "simple" "test" with allegedly "apparent" results. Dkt. 3, at 2. But at no point does the Injunction Motion elaborate on what test it is purporting to describe, what those results are, or how they are purportedly "apparent."

4.   Fourth, given the broad nature of the relief sought in the Injunction Motion, the lack of evidence in support of the Plaintiffs' claimed likelihood of success is particularly important. The School Board is a constitutional entity in Florida tasked with "operat[ing], control[ling], and supervis[ing] all free public schools in the district." FLA. CONST. art. IX, § 4. It does not exist in a vacuum, and must comply with the requirements imposed by various laws. Notably, if it fails to use all its available capacity effectively, which it always aims to do in its proposals, it will face sanctions, resulting in a potential loss of funding and worse educational opportunities for *everyone*. *See* FLA. CONST. art. IX, § 1 (limiting class sizes); Fla. Stat. § 1013.64(2) (requiring schools to meet certain requirements to obtain funding for new facilities).

5.     Fifth, the Injunction Motion does not actually discuss the merits of the boundary change proposals themselves, and even the pictures noted from the complaint (despite the issues with those images described above) do not address the proposed changes. Those changes would result in modifying the boundaries that the complaint itself suggests are discriminatory. *See generally* Docket 1. Regardless, the Injunction Motion asks the Court to block these proposals without presenting them for the Court's review.

6.     Sixth, Plaintiffs do not challenge the proposed boundary changes with this lawsuit. *See generally* Docket 1; Exhibit A. Thus, the Injunction Motion has nothing to do with any substantial likelihood on the merits of the actual lawsuit, as the conduct it seeks to block is not even at issue in the complaint.

7.     Seventh, the complaint underlying the Injunction Motion (despite its contradictory request to *require* the School Board to change the boundaries) appears to imply that schools are equidistant from each other, and the map of Tampa allows for essentially circles to be drawn around those schools to show who should be in them. But Tampa is not a city that exists in a single mass—the Bay and various waterways (not to mention natural development of roads and other infrastructure) have resulted in it being an unusual shape for cities, as Plaintiffs' own images demonstrate. Perfect

14

equidistance would require the city to be essentially a rectangle or square, which is not possible under the actual conditions.

8. Eighth, the School Board denies all allegations of discrimination. Setting school boundaries is a highly involved process, and the School Board has been open with the public since the beginning about both the proposals and the reasoning for them. For example, Superintendent Davis noted in public discussions that the changes would help with imbalances in enrollment while improving efficiency, possibly even leading to millions in savings that the School District can then reuse in the schools themselves to improve the education. *E.g.*, Stephanie Colombini, *What to Know about Hillsborough County's Plans to Change School Boundaries*, WUSF PUB. MEDIA (Dec. 27, 2022, 5:00 a.m. EST), https://wusfnews.wusf.usf.edu/education/2022-12-27/what-know-hillsborough-county-plans-change-school-boundaries. Simply building new schools to alleviate overcrowding is not an appropriate option at this time, as the state itself requires schools to use their existing capacity in an efficient manner. *See* FLA. CONST. art. IX, § 1 (limiting class sizes); Fla. Stat. § 1013.64(2) (requiring schools to meet certain requirements to obtain funding for new facilities).

Plaintiffs' efforts to characterize these complex issues and efforts by the School Board as some type of discrimination are unpersuasive (not to

15

mention unsupported by any evidence). The School Board remains committed to ensuring *all* students get the best possible educations while managing and best allocating its limited resources and complying with all relevant laws.

### 2. The Injunction Motion does not demonstrate the existence of irreparable harm.

For the sake of conciseness, this response addresses the second and third requirements (a description of the alleged harm and the irreparable nature of it) together. Local Rule 6.02(b)(2)–(3). The Injunction Motion states that the harm potentially at issue is that students might be reassigned under the current proposals, but then have to face another reassignment if Plaintiffs are ultimately successful. Dkt. 3, at 2. It makes a series of allegations, none of which have any evidentiary support. *See Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."). The only purported evidence is in regards to the suggestion that "instability" is a type of harm for children, for which the Plaintiffs cite a hearsay, unverified, opinion-based "Discussion Paper." Docket 3, at 3. *But see* Fed. R. Evid. 701 (prohibiting opinion-based testimony outside of admitted experts).

Independently, the proposition of the Injunction Motion is suspect. It essentially suggests that any types of "displacement from . . . schools" is a

16

type of irreparable harm, without basis. And this suggestion ignores the potential countervailing benefit associated with optimizing capacity.

Moreover, Plaintiffs cannot claim it is improper for the School Board to act on proposals that the complaint in this matter does not challenge. As noted above in Section II.C.1, Plaintiffs themselves do not attack the proposed changes through this lawsuit. Exhibit A. In other words, the Injunction Motion asks the Court to block a purported harm not even at issue in the underlying case. The proposals themselves tend to render the entire case moot by modifying the boundaries the complaint attacks, further underscoring the ripeness discussion above in Section II.A and the related motion to dismiss.

Lastly, Plaintiffs fail to show the proposed changes would affect them. At best, Plaintiffs appear to file their motion in a representative capacity for all community members without taking any of the necessary steps to do so. *See* Exhibit A (demonstrating the Plaintiffs themselves are not challenging the proposed boundaries). Accordingly, the lack of description of how this supposed harm would be irreparable and related omissions warrant denial of the motion. *Am. Civil Liberties Union of Fla.*, 557 F.3d at 1198 (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)) (noting that the party seeking the injunction bears the burden of proving all necessary elements).

17

### 3. The Injunction Motion does not properly consider the public interests at issue.

Finally, the Injunction Motion incorrectly concludes the equities weigh against the School Board and the proposed relief operates in the public's interest. Local Rule 6.01(b)(4); *cf. U.S. v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (noting that as an injunction is an equitable remedy, courts should consider how the equities of the parties balance). The Injunction Motion disregards the negative impacts it would cause:

- The **School Board** will be unable to carry out its prescribed duties under Article IX, Section 4 of the Florida Constitution.

- **Members of the public** will face uncertainty and a loss of ability to participate in the remaining meetings during which the public can comment. It will transfer every aspect of this democratic process away from the people, to the management of this Court.

- **Families with enrolled children** will face uncertainty regarding their own children's future enrollment, pending resolution by this Court without their participation.

- **The Court** would be drawn into the exact type of premature conflict the ripeness doctrine seeks to avoid, as described above in Section II.A. Granting the injunction would encourage people dissatisfied

with nonfinal administrative proposals to seek injunctions instead of offering comments and following the ordinary processes for these types of actions.

- **Plaintiffs** will not face any harm if the proposals move forward, as they do not even challenge them. Exhibit A. Plaintiffs do not suggest that the proposed changes would require them to change schools or suffer any type of purported "instability." *See* Dkt. 3, at 3 (arguing "instability" is the purported harm).

## III.   CONCLUSION

The Injunction Motion is neither persuasive nor warranted. It does not comply the relevant rules, makes unsupported accusations of a discriminatory conspiracy, and does not involve a case that is ripe for review. Granting the Injunction Motion would affect thousands of Hillsborough County families and prevent the School Board from engaging in its constitutionally mandated duties under Florida law. The School Board maintains that the appropriate outcome here is dismissal of Plaintiffs' lawsuit for lack of subject matter jurisdiction. Short of that, it requests denial of the Injunction Motion.

Respectfully submitted,

*/s/ Jason L. Margolin*
**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant