## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER and J.W.,

     Plaintiffs,

v.                           Case No. 8:23-cv-00181-SDM-JSS

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

     Defendant.

_____/

## ANSWER AND AFFIRMATIVE DEFENSES
## TO AMENDED VERIFIED COMPLAINT

     Defendant School Board of Hillsborough County, Florida ("School Board"), answers the numbered paragraphs of the Amended Verified Complaint (Dkt. 29) (the "Amended Complaint") by Plaintiff Blake Warner ("Plaintiff")[1] and states:

     The School Board denies any wrongdoing. The School Board denies all allegations by Plaintiff, except as specifically set forth below. Further, legal conclusions do not require a response; to the extent a response is required,

_____

[1] In the original Complaint, Plaintiff included his minor child (J.W.) as a co-plaintiff. In light of the Amended Verified Complaint, the School Board understands that J.W. is no longer a party to this action. To the extent J.W. raises any allegations or claims in this action, they are denied.

Plaintiff's legal conclusions are denied. The School Board denies any allegations either express or implied in the headings, subheadings, and defined terms in this Answer. The use of certain headings, subheadings, and defined terms from the Amended Complaint, is for ease of reference only and is not to be construed as an admission by the School Board.

Additionally, the School Board denies in its entirety the "Introduction" section preceding the numbered allegations in Plaintiff's complaint, including the website referenced therein, and further denies that Plaintiff is entitled to any relief.

### Responses to Individual Paragraphs

1.   ***Plaintiff* is African-American.**

Response:   Without knowledge, therefore denied.

2.   ***Plaintiff* has continuously resided in Hillsborough County since 2016.**

Response:   Without knowledge, therefore denied.

3.   **Defendant The School Board of Hillsborough County, Florida operates, controls and supervises all free public schools within Hillsborough County pursuant Art. IX § 4 and Fla. Stat. § 1001.42.**

Response:  Admitted that the School Board operates, controls, and supervises the free public schools in Hillsborough County. The remainder of this paragraph is a legal characterization that requires no factual response, as the cited laws speak for themselves.

70614833;1

4.     **The HCSB accepts federal funds through the Individuals with Disabilities Education Act ("IDEA"), Title I-VII, and the Cares Act.**

Response:   Admitted that the School Board accepts federal funding. The remainder of this paragraph is a legal characterization that requires no factual response, as the cited laws speak for themselves.

5.     **This court has jurisdiction pursuant 42 U.S. Code § 3613.**

Response:   Admitted only that the School Board does not contest the Court's jurisdiction. The remainder of this paragraph is a legal characterization that requires no factual response, as the cited laws speak for themselves. Otherwise denied.

6.     **Venue is proper pursuant 28 U.S.C. § 1391 because Defendant reside in the Middle District of Florida, and all events giving rise to Plaintiff's claims occurred in the Middle District of Florida.**

Response:   Admitted only that the School Board does not contest venue in this matter. Denied that Plaintiffs experienced any "events" that entitle them to claimed relief. The remainder of this paragraph is a legal characterization that requires no factual response, as the cited laws speak for themselves. Otherwise denied.

7.     **The EEOA declares unlawful segregation as "the assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color, sex, or national origin among the schools of such agency than would result if such student were assigned to the school closest to his or her place of residence within the school district of such agency providing the appropriate grade level and type of education for such student".**

Response:   This paragraph is a legal characterization that requires no factual response, as the cited laws speak for themselves. Otherwise denied.

8.     **As laid out below, the HCSB has a pattern and/or practice of assigning students to farther away schools resulting in more segregation, in violation of the EEOA.**

Response:   Denied.

3

9.      **For the purposes of this complaint, the following regions are defined as follows:**

Response:   This paragraph does not set forth any allegations, but rather appears to be a general introduction for the following paragraphs. To the extent this paragraph is deemed to set forth an allegation, denied.

10.     ***South Tampa* is defined as the area between Gandy Boulevard and Kennedy Boulevard.**

Response:  Admitted only that Plaintiff is purporting to use these definitions in the complaint, and those definitions apparently hold the stated meanings to Plaintiff. Otherwise denied.

11.     ***West Tampa* is defined as the area between Kennedy Boulevard and Busch Boulevard/Linebaugh Avenue, and west of I-275.**

Response:  Admitted only that Plaintiff is purporting to use these definitions in the complaint, and those definitions apparently hold the stated meanings to Plaintiff. Otherwise denied.

12.     ***East Tampa* is defined as the area between Kennedy Boulevard and Fletcher Avenue, and east of I-275.**

Response:  Admitted only that Plaintiff is purporting to use these definitions in the complaint, and those definitions apparently hold the stated meanings to Plaintiff. Otherwise denied.

13.     ***South Tampa*'s population is predominantly White. *see* Exhibits A and B.**

Response:   Without knowledge, therefore denied. [2]

14.     **West Tampa's population is predominantly Hispanic. see Exhibits A and C.**

Response:   Without knowledge, therefore denied.

---

[2] First, Plaintiff does not authenticate or explain the origin or modification of his exhibits. Second, the School Board does not dispute any official census data, but does not have any independent knowledge to admit or deny Plaintiff's allegations. All remaining paragraphs involving purported exhibits and/or population data are further denied for those same reasons.

15. **East Tampa's population is predominantly African-American. see Exhibits A and D.**

Response:   Without knowledge, therefore denied.

16. **The racial demographics rapidly change at Kennedy Boulevard. Kennedy is generally the demarcation point between affluent whites and minorities.**

Response:   Without knowledge, therefore denied.

17. **The three *South Tampa* elementary schools which border *West Tampa*–Grady, Mitchell, and Gorrie–currently have utilization rates of 118%, 111%, and 107%, respectively. *see* Exhibits E.**

Response:   Denied.

18. **The three *West Tampa* elementary schools which border *South Tampa*–Tampa Bay Boulevard, West Tampa, and Just–currently have utilization rates of 63%, 84%, and 41%, respectively. *see* Exhibits E.**

Response:   Denied.

19. **The bordering *South Tampa* schools are extremely over utilized, while the bordering *West Tampa* are extremely underutilized.**

Response:   Denied.

20. **The obvious solution is to shift the school boundaries southward, sending some of the white students from over-utilized *South Tampa* to underutilized–majority minority–*West Tampa* to balance out the utilization.**

Response:   Denied.

21. **Rather than do this, the HCSB has proposals to close a minority school and leave the bordering *South Tampa* schools at a staggering 100-119% utilization despite their stated goal to reduce utilization to the 80% range.**

Response:   Denied.

70614833;1

22.      **The HCSB will not lower those utilization rates to the 80%
range, because that would mean sending white students to bordering
minority schools.**

Response:   Denied.

23.      **The following map shows the locations and boundaries for
Plant High School (orange), Jefferson High School (yellow), and Blake
High School (purple):**

Response:   This paragraph purports to include and rely upon a picture
that Plaintiff does not properly explain nor authenticate. And to the extent
there are exhibits such as pictures, those documents are the best evidence of
their own contents and speak for themselves. Therefore, denied.

24.      **Plant High School is nearly *twice* as far from Davis Island
as Blake High School is by ground transportation, yet students in that
affluent white enclave are not assigned to Blake, a predominantly
African-American school.**

Response:   The School Board admits the school boundary lines are
public record and speak for themselves. Otherwise denied.

25.      **Similarly, the neighborhoods of Westshore Palms, North
Bon Air, Beach Park, and Oakford Park are at least twice as close to
Jefferson High School than Plant, and in some cases literally across
the street from Jefferson, yet those white students are assigned to
Plant and the school district is unable to give a cognizable reason why.**

Response:   The School Board admits the school boundary lines are
public record and speak for themselves. Otherwise denied.

26.      **The reason for the odd shape of the boundaries becomes
clear when you overlay those boundaries over a map of the racial
demographics, as illustrated in the following image:**

Response:   This paragraph purports to include and rely upon a picture
that Plaintiffs do not properly explain nor authenticate. And to the extent there
are exhibits such as pictures, those documents are the best evidence of their
own contents and speak for themselves. Otherwise denied.

27.   **The most egregious part is that Plant is overpopulated, and yet they still will not send those white students to predominantly minority Jefferson High School and Blake High School.**

Response:   Denied.

28.   **The following image shows just how maladjusted the current Plant High School boundaries are, when overlaid with the boundaries for the closest high schools. The shaded area highlight portions of Plant High School's current boundary that are closer to Jefferson High School and Blake High School:**

Response:   This paragraph purports to include and rely upon a picture that Plaintiffs do not properly explain nor authenticate. And to the extent there are exhibits such as pictures, those documents are the best evidence of their own contents and speak for themselves. Otherwise denied.

29.   **The situation with Coleman Middle School is similar to Plant High School: Coleman's boundary is artificially kept lower to exclude assigning the large African-American population directly to their north, despite them being significantly closer to Coleman than Pierce.**

Response:   The School Board admits the school boundary lines are public record and speak for themselves. Otherwise denied.

30.   **Madison to the South of Coleman, is exerting pressure to move Coleman's boundaries up. But to avoid doing this, the District is proposing plans to just close Madison or Monroe, to avoid sending white students to minority schools directly to the north.**

Response:   The School Board admits the school boundary lines and proposals are public record and speak for themselves. Otherwise denied.

31.   **The following image shows the locations of Coleman, Pierce, and Madison, over-layed over a map of race. The black lines represent the border for the closest school:**

Response:   This paragraph purports to include and rely upon a picture that Plaintiffs do not properly explain nor authenticate. And to the extent there are exhibits such as pictures, those documents are the best evidence of their own contents and speak for themselves. Otherwise denied.

32.     **Not only did the school board segregate the students, they segregated themselves. They drew district map boundaries that correspond directly to race: the Hispanic population is almost exclusively located in district 1, the African-American population in district 5, and white population in district 2.**

Response:   Denied.

33.     **This image shows the racial map overlaid with the district boundaries shown in blue lines:**

Response:   This paragraph purports to include and rely upon a picture that Plaintiffs do not properly explain nor authenticate. And to the extent there are exhibits such as pictures, those documents are the best evidence of their own contents and speak for themselves. Otherwise denied.

34.     **The racial segregation in the district map was intentional.**

Response:   Denied.

35.     **The HCSB stated "Given the population distribution in Hillsborough County, having a high black population in District Five maximizes the opportunity for a minority candidate to be elected. When considering the demographic profile of each map, any map that identified a significant reduction in the black population in District Five was discarded".**

Response:   The document cited by Plaintiffs in footnote 2 to paragraph 35 speaks for itself. Otherwise denied.

36.     **The HCSB stated "The black population percentage for district five. is 41.1%".**

Response:   The document cited by Plaintiffs in footnote 3 to paragraph 36 speaks for itself. Otherwise denied.

37.     **The black population percentage for Hillsborough County is approximately 18%.**

Response:   The School Board does not dispute publicly available census data, but is without independent knowledge, and therefore denies, Plaintiffs' allegations regarding population percentages within Hillsborough County. Otherwise denied.

70614833;1

38.     **The school board intentionally drew their district map to concentrate their black population in District 5.**

Response:   Denied.

39.     **By concentrating the black population in District 5, they remove the black population from the other districts causing other races to be segregated as well. The end result was a map where Hispanic (District 1), black (District 5), and white (District 2, 3, and 4) populations were segregated into their own respective districts.**

Response:   Denied.

40.     **Hillsborough County home buyers and renters frequently make decisions on which neighborhoods to purchase or rent based substantially on the public schools that are assigned to properties.**

Response:   Without knowledge, therefore denied.

41.     **The assigned schools are provisioned services and/or facilities in connection with the residence that is assigned to them.**

Response:   Denied.

42.     **The HCSB is the entity who assigns public schools to specific residences, usually through the promulgation of a boundary map.**

Response:   The School Board admits it is the entity that determines the boundary maps for public school assignments. Otherwise denied.

43.     **Promulgating school boundary maps that unlawfully segregate by race under the EEOA is de facto racial discrimination under the Fair Housing Act.**

Response:   This paragraph is a legal characterization that requires no factual response, as the cited laws speak for themselves. Otherwise denied.

44.     **At all times relevant, there has been at least one residential real estate property for sale in each of the affected neighborhoods.**

Response:   Denied to the extent Plaintiff alleges the School Board had had "at least one residential real estate property for sale in each of the affected neighborhoods." Otherwise without knowledge, therefore denied.

45.     **"Steering" is the practice of influencing a buyer's choice of communities based upon one of the protected characteristics under the Fair Housing Act, which are race, color, religion, gender, disability, familial status, or national origin.**

Response:   This paragraph is a legal characterization that requires no factual response, as the applicable laws speak for themselves. Otherwise denied.

46.     **"Redlining" is a discriminatory practice that puts services (financial and otherwise) out of reach for residents of certain areas based on race or ethnicity, often times by drawing lines on maps.**

Response:   This paragraph is a legal characterization that requires no factual response, as the applicable laws speak for themselves. Otherwise denied.

47.     **The HCSB artificially inflated the property values in *South Tampa* by racially segregating white students into white schools to fabricate "A-rated" schools by excluding minority students.**

Response:   Denied.

48.     **On the flip side, this caused the schools that were deprived of those white students to get less resources and lower school grades, which depressed property values in homes assigned to those manufactured minority schools.**

Response:   Denied.

49.     **This pricing imbalance steered minorities to minority neighborhoods that they could only afford due to HCSB segregation based pricing manipulation, and affluent white people to the segregated white neighborhoods, further entrenching the segregation. Effectively redlining along the HCSB's segregated school boundaries.**

Response:   Denied.

50.     **As an African-American who has been the subject of discrimination throughout his life, Mr. Warner is particularly sensitive to discriminatory practices. Mr. Warner was insulted and emotionally distressed by the knowledge that school aged students in**

his community–including his child–were being discriminated against because of their race... in the year 2023.

Response:   Without knowledge, therefore denied. Further denied to the extent this paragraph includes any suggestion the School Board engaged in unlawful discrimination.

51.   **Mr. Warner was and is saddened, angered, and insulted by the fact that the HCSB continues to operate a segregated school system.**

Response:   Without knowledge, therefore denied. Further denied to the extent this paragraph includes any suggestion the School Board engaged in unlawful discrimination.

52.   **Defendant's unlawful conduct proximately caused Mr. Warner to suffer the aforementioned emotions, which have manifested into stress, unpleasant rumination, mental strain, and feelings of indignity, hopelessness and anxiety about race discrimination in housing and the school system.**

Response:   Denied.

53.   **Due to HCSB's manipulation of property values, Plaintiff was priced out of *South Tampa* and had to relocate to relocate outside of *South Tampa* and resulting in a loss of community for Plaintiff.**

Response:   Denied.

54.   **Mr. Warner spent much of his childhood in South Tampa. He attended Tinker Elementary, Monroe Middle School, and Robinson High School there.**

Response:   Without knowledge, therefore denied.

55.   **The fact that the school boundaries correlate nearly 1-to-1 directly to race.**

Response:   Denied.

56.   **The fact that the school board explicitly used race to draw the district maps to segregate.**

Response:   Denied.

57.    The fact that the HCSB has a history of refusing to desegregate.

Response:   Denied.

58.    The fact that the HCSB was notified several times that they were in violation of the EEOA, and provided racial maps and other evidence in support of that assertion, yet the HCSB ignored it and pressed forward with racial segregated maps and proposals.

Response:   Denied.

59.    The fact that Blake High School was the negro High School in the 50's before desegregation, and it remains a segregated negro High School in 2023 due to the obvious gerrymandering of Blake High School.

Response:   Denied.

60.    The fact that white students across the street from Jefferson High School are not assigned to Jefferson High School.

Response:   Denied.

61.    The affluent white residents of *South Tampa* wield tremendous political influence in relation to the other parts of Hillsborough County.

Response:   Without knowledge, therefore denied.

62.    Those affluent white *South Tampa* residents are currently exerting tremendous pressure on the HCSB to not implement certain proposed school boundary changes that would assign some of their homes to Jefferson High School, despite their homes being geographically closer to Jefferson, because generally they do not want their children attending Jefferson High School (a low performing minority school) and because their property values will drop if their homes are reassigned from A-rated Plant High School to C-rated Jefferson High School.

Response:   Without knowledge, therefore denied.

63.    Superintendent Addison Davis has capitulated to this political pressure, and has expressed assurances to certain school

**board members that he will not submit the proposal that reassigns white students to Jefferson High School, while publicly stating that no decision has been made:**

Response: This paragraph purports to include and rely upon a picture, likely a social media screenshot, which Plaintiff does not properly explain nor authenticate. And to the extent there are exhibits such as pictures, those documents are the best evidence of their own contents and speak for themselves. Otherwise denied.

64. **The school board members are poised to approve yet another racially segregated map, despite knowing full and well that those maps are racially segregated, because they lack the political courage to overcome that political pressure from *South Tampa* residents:**

Response: This paragraph purports to include and rely upon a picture, likely a social media screenshot, which Plaintiff does not properly explain nor authenticate. And to the extent there are exhibits such as pictures, those documents are the best evidence of their own contents and speak for themselves. Otherwise denied.

65. **School Board Member Dr. Stacy Hahn's comments about "fighting everyday" to keep District 2 (white) family's in District 2 schools (white).**

Response:   Denied.

66. **A discriminatory purpose, not any legitimate reason, was a motivating factor behind Defendant's aforementioned discriminatory actions and/or omissions.**

Response:   Denied.

67. **On or about January 11, 2023, Dr. Stacy Hahn gave a news interview with New Channel 8 WFLA.**

Response:   Admitted.

68. **This interview was broadcast on public television as well as printed on WFLA's website.**

Response:   Admitted.

70614833;1

69.    **Dr. Hahn knew when she agreed to this interview, that it would be published and/or printed on television and/or the WFLA website.**

Response:   Without knowledge, therefore denied.

70.    **During this interview, Dr. Hahn stated "I can tell you that I am fighting every day to make sure District 2 families stay in District 2 schools,".**

Response:   This paragraph purports to describe a written article Plaintiffs linked. As that document is the best evidence of its own contents and speaks for itself, denied. Further denied to the extent this paragraph implies unlawful discrimination by the School Board.

71.    **There is no legal basis for District 2 families to stay in District 2. School boundaries routinely cross those arbitrary Districts, whose sole purpose is for electing school board members, not for school boundaries.**

Response:   This paragraph is a legal characterization that requires no factual response, as the cited laws speak for themselves. To the extent this paragraph is deemed to suggest the School Board engages in unlawful discrimination, denied.

72.    **"District 2" is the racially gerrymandered Caucasian district that Dr. Hahn represents. "District 2" 's population is predominantly white.**

Response:   Denied.

73.    **District 1's population is predominantly minority and borders District 2 to the north.**

Response:   The School Board does not dispute publicly available census data, but is without independent knowledge, and therefore denies, Plaintiffs' allegations regarding population percentages within Hillsborough County. Otherwise denied.

74.    **Dr. Hahn's statement is dog whistling, telling white residents in South Tampa that she is fighting hard not to send their white children to a minority dominated schools in District 1.**

Response:   Denied.

70614833;1

75.   **Dr. Hahn's statement indicates a preference for white people to live and attend white schools in District 2, and consequently for minority students to attend schools in District 1.**

Response:   Denied.

76.   **The current school boundaries are arbitrary and the HCSB cannot have any legitimate objective for them because they violate the EEOA.**

Response:   Denied.

77.   **The current school boundaries disproportionately affect racial minorities by isolating them into under-performing schools, while the isolated white students excel in A-Rated schools.**

Response:   Denied.

78.   **This further harms the minority communities in east Tampa and west Tampa, because their property values are decreased, while the property values increase in the white neighborhoods.**

Response:   Denied.

### Count I: 42 U.S. Code § 3604: Intentional Discrimination[3]

79.   ***Plaintiffs* re-alleges and incorporates by reference ¶ 1 – 78**

Response:   The School Board restates its responses to paragraphs 1–78 above.

80.   **Defendant intended to unlawfully segregate students by race and/or color through South Tampa school assignment boundary maps which are the terms, conditions, or privileges of a sale or rental of a dwelling, or the provision of services or facilities in connection therewith; or otherwise made housing unavailable by pricing minorities out of south tampa due to unlawful pricing manipulation.**

Response:   Denied.

---

[3] The School Board reiterates that the headings are included solely for convenience, and it affirmatively denies all allegations that might be deemed to exist within them.

### Count II: 42 U.S. Code § 3604: Disparate Impact

81.     *Plaintiffs* re-alleges and incorporates by reference ¶ 1 – 78

Response: The School Board restates its responses to paragraphs 1–78 above.

82.     **Defendant's school assignment boundary maps had a discriminatory effect on minority students in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of south tampa services or facilities in connection therewith, because of race and/or color, or otherwise made housing unavailable by pricing minorities out of south tampa due to unlawful pricing manipulation.**

Response:   Denied.

:::

**The School Board further denies all allegations contained in the "Wherefore" paragraph at the end of Plaintiff's complaint, and further denies that Plaintiff is entitled to any claimed relief.**

### AFFIRMATIVE DEFENSES

Without conceding that the School Board bears the burden of proof as to any issue, and without conceding liability, the School Board asserts the following defenses to Plaintiff's complaint:

### FIRST DEFENSE

The Eleventh Circuit previously declared the Hillsborough County school system unitary, ceasing federal judicial supervision of the Hillsborough County school system. *See Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cnty., Fla.*, 244 F.3d 927, 947 (11th Cir. 2001). Plaintiff's claims fail to the extent they seek relieve inconsistent with *Manning* and to the extent Plaintiff

challenges school boundary lines in place or demographic shifts that began to occur, prior to the *Manning* opinion.

**SECOND DEFENSE**

The Plaintiff has not suffered any harm because he received his preferred and requested school assignment.

**THIRD DEFENSE**

Plaintiff's claims are barred by release, discharge, and waiver. Plaintiff previously executed a Settlement Agreement with the School Board. Because the Settlement Agreement is confidential, the School Board attached a mostly-redacted version as **Exhibit 1**.[4] Pursuant to the Settlement Agreement, Plaintiff received a specific school assignment for his minor child. Additionally, the Settlement Agreement includes a broad release where Plaintiff agreed as follows:

> **5. <u>Release of the School Board and District</u>:** For and in consideration of the required acts and promises set forth in this Agreement, the **Parent hereby knowingly and voluntarily releases and discharges the School Board and District from any and all claims, demands, causes of action, complaints or charges, known or unknown** specifically related J.W.'s education, services, and educational program in the District **through the date of the execution of this Agreement**.

---

[4] Because the Settlement Agreement is confidential, the School Board attaches a mostly-redacted version as Exhibit 1. Prior to this filing, the parties conferred and agreed to the redactions made.

This shall include, but not be limited to, all claims for services, supports, therapies, evaluations, tutoring, training, compensatory education or services, reimbursements, or claims for expenses, costs, fees, attorneys' fees, **and all losses of any kind whatsoever related specifically to J.W.'s education**, **which the Parent has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the Effective Date of this Agreement**.

The Parent understands that this **release shall also cover any claims, if any, that may belong independently to J.W. related to his educational services and program**. The claims described in this paragraph shall be collectively referred to as "Released Claims" herein. The Parties jointly agree that the release in this paragraph shall not act to impair the enforceability of this Agreement or a waiver of the Parties' respective rights to take action to enforce this Agreement. The Parties further agree that this release shall not cover any claim that is not regarding J.W.'s education or any new claim that may arise by reason of an act or omission occurring after the Effective Date of this Agreement. To that end, the School Board and District acknowledge that no provision in this Agreement may be construed as relieving them of any obligation they may have under federal or state law to provide J.W. a FAPE for any time after the execution of this Agreement.

*See* Settlement Agreement, ¶ 5 (emphasis added).

Moreover, Plaintiff admits his claims are premised on the contractual assignment (*i.e.*, his choice) under the settlement agreement. *See* Plaintiffs' email dated May 17, 2023, attached as **Exhibit 2**, admitting his "EEOA counts are premised on the contractual assignment of J.W. to Coleman Middle School and Plant High School."

18

Because Plaintiff voluntary chose to have his child attend the assigned school and because of the release he executed, Plaintiff's claims fail as a matter of law.

## FOURTH DEFENSE

Any purported imbalances are naturally attributable to the intervening acts of third parties, specifically the natural flow of people within a community (particularly one growing as quickly as Tampa) and are not attributable to any purported actions by the School Board.

## FIFTH DEFENSE

By affirmatively requesting and receiving their preferred school placements, the Plaintiff waived any ability to sue based on the purported placements.

## SIXTH DEFENSE

The School Board at all relevant times has acted reasonably, properly, lawfully, and in good faith.

## SEVENTH DEFENSE

The relief sought by Plaintiff is unreasonable and constitutes an undue hardship on the School Board.

70614833;1

**EIGHTH DEFENSE**

The School Board is not in business of selling or renting dwelling units, and accordingly, cannot be held liable under 42 U.S.C. § 3604. *See* 42 U.S.C § 3603(c).

**NINTH DEFENSE**

Plaintiff's claims are barred by the Eleventh Amendment, which bars suits brought by private citizens against a state or arm of the state in federal court without consent. *See McCardell v. U.S. Dept. of Housing and Urban Development*, 794 F.3d 510, 521-22 (5th Cir. 2015) (holding state defendants, which were arms of the state of Texas, had not consented to suit brough under the Fair Housing Act).

**TENTH DEFENSE**

Plaintiff lacks standing to sue.

**ELEVENTH DEFENSE**

Plaintiff's claims are barred to the extent they are premised upon Plaintiff J.W.'s assignment, using his prior 502 S. Fremont Avenue address as outlined in paragraph 10 of the Complaint, in light of Plaintiffs' email dated May 17, 2023, attached as **Exhibit 2**, withdrawing any such allegation.

Similarly, Plaintiffs' claims within Counts I (28 U.S. Code § 1703(a)), II (28 U.S. Code § 1703(c)), and III (28 U.S. Code § 1983) of the original complaint are barred by Plaintiffs' Notice of Abandonment of Counts I and II, filed on

20

May 18, 2023, *see* Dkt. 28, and by virtue of Plaintiff's filing of the Amended Verified Complaint omitting those claims.

## RESERVATION OF RIGHTS

The School Board reserves the right to assert additional affirmative defenses and to supplement its current affirmative defenses as discovery warrants.

:::

Having fully answered the Plaintiff's complaint, the School Board requests the court enter an order:

(a)   Dismissing the complaint against the School Board with prejudice;

(b)   Ordering that the Plaintiff take nothing by this action;

(c)   Awarding the School Board its costs and attorney's fees associated with this litigation, pursuant to 42 U.S.C. § 1988(b), 42 U.S.C. § 3613(c)(2), or otherwise; and

(d)   Awarding the School Board such other and further relief as the Court deems just and proper.

70614833;1

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
Akerman LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant