IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| SARAH FRANCES DRAYTON, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-CV-53 |
| | ) | |
| MCINTOSH COUNTY, GEORGIA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UNITED STATES OF AMERICA'S STATEMENT OF INTEREST

### I. INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517, to address the application of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, to state actors and to discriminatory conduct that occurs after the initial acquisition of housing, and the application of Title VI of the Civil Rights Act of 1964 ("Title VI") to programs or activities that receive federal financial assistance. 42 U.S.C. § 2000d. The United States Department of Justice ("DOJ") and the United States Department of Housing and Urban Development ("HUD") share enforcement authority under the FHA. *See* 42 U.S.C. §§ 3610, 3612(a)–(b), (o), 3613(e), and 3614. The DOJ is also authorized to bring Title VI civil actions and to coordinate Title VI enforcement by all federal agencies. 28 C.F.R. § 42.108 (1966); Exec. Order No. 12250, 45 Fed. Reg. 72,995 (Nov. 2, 1980). The United States thus has a strong interest in ensuring the correct interpretation and application of the provisions at issue in this case. This Statement of Interest addresses Plaintiffs' claims under § 3604(a), (b), (f)(1), and (f)(2) of the FHA, and under

1

Title VI.

## II. BACKGROUND

On December 9, 2015, Plaintiffs filed a Complaint alleging claims under the FHA; 42 U.S.C. §§ 1981, 1982 and 1983; the Fourteenth Amendment; Title VI; and the Americans with Disabilities Act. ECF No. 1. On February 22, 2016, Plaintiffs filed an Amended Complaint alleging the same causes of action. ECF No. 29.

Plaintiffs are members of the Gullah Geechee community who are current, former, and prospective land owners or residents of Sapelo Island in McIntosh County, Georgia, and organizations that have assisted the Gullah Geechee community related to the claims alleged. ECF No. 29 ¶¶ 19-138. The Gullah Geechee are descendants of West Africans who were enslaved on United States plantations. ECF No. 29 ¶ 2. Sapelo Island is home to the largest remaining Gullah Geechee community in the United States. ECF No. 29 ¶ 2. The State of Georgia purportedly owns 97% of the land on Sapelo Island. ECF No. 29 ¶ 9. Several of the Gullah Geechee Plaintiffs are individuals with disabilities. ECF No. 29 ¶¶ 22, 30, 34, 38, 61, 63, 75, 81, 95, 111, 130. The two organizational Plaintiffs, HELP Org. Inc. and Raccoon Hogg CDC, have assisted the Gullah Geechee on Sapelo Island in various ways, including advocating for the preservation of their land, assisting with community development plans, and communicating with government agencies. ECF No. 29 ¶¶ 134-38.

Defendants are McIntosh County, Georgia; the State of Georgia; Governor Nathan Deal; the Georgia Department of Natural Resources ("DNR"); DNR Commissioner Mark Williams; the Sapelo Island Heritage Authority; McIntosh County Sheriff Stephen Jessup; and the McIntosh County Board of Tax Assessors. ECF No. 29. County Defendants collect taxes from the individual Plaintiffs. ECF No. 29 ¶¶ 4-8. The State and its agencies receive federal financial

assistance and allocate portions of these funds to the County. ECF No. 29 ¶¶ 140, 142, 310, 353-66, 444.

Plaintiffs' Amended Complaint alleges that Defendants discriminated in the provision of housing and housing-related services and in programs or activities receiving federal financial assistance on the basis of race, color, national origin, and disability. ECF No. 29 ¶¶ 367-419, 443-47. Specifically relevant to this Statement of Interest, Plaintiffs allege that, collectively, Defendants' conduct includes providing inferior governmental services and infrastructure to the Gullah Geechee, including housing-related services; denying the Gullah Geechee "the ability to use, access, occupy, and/or possess" property; and engaging in "real estate transactions" and enforcing "zoning restrictions" in ways favoring groups other than the Gullah Geechee. ECF No. 29 ¶¶ 386-419. These claims relate to Defendants' alleged conduct occurring both before ("pre-acquisition") and after ("post-acquisition") Plaintiffs obtained housing.

## III. ARGUMENT

Defendants' motions, taken together, seek to dismiss all of the Plaintiffs' claims, including those related to any of Defendants' conduct that (1) made housing unavailable to Plaintiffs (42 U.S.C. § 3604(a), (f)(1)), and (2) discriminated in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling (42 U.S.C. § 3604(b), (f)(2)). To support this position, Defendants argue that (1) the FHA does not apply to post-acquisition discrimination and covers discriminatory conduct only if it involves the initial occupancy of housing,[1] ECF No. 46-1, Cnty. Defs. Br. at 19-21,

---

[1] In seeking to dismiss all of Plaintiffs' § 3604 claims by arguing that the FHA does not apply to post-acquisition conduct, Defendants mischaracterize the facts pled, many of which, on their face, relate to Defendants' pre-acquisition conduct, such as conduct affecting the ability of plaintiffs to acquire housing. *See, e.g.,* ECF No. 29 ¶¶ 33, 44, 65, 89, 97, 106, 120, 132, 317. There is no question that the FHA applies to discriminatory conduct that affects the ability of

ECF No. 48-1, State Defs. Mem. at 35-44, and (2) there is no FHA claim against the State Defendants because they did not engage in residential real estate-related transactions and because they "are not in the business of providing private housing or municipal services." ECF No. 48-1, State Defs. Mem. at 33-35.[2]

Defendants are incorrect on both counts. The language of the FHA and HUD's implementing regulations clearly support the application of the FHA to post-acquisition claims of discrimination. Numerous courts, including courts in the Eleventh Circuit, agree and have applied the FHA to post-acquisition discrimination. Additionally, the State is liable for violations of the FHA even if it did not engage in real estate-related transactions, because the prohibitions on discrimination in § 3604 are not limited in this way.

State Defendants assert that the Title VI claim should be dismissed primarily on Eleventh Amendment grounds, ECF No. 48-1, State Defs. Mem. at 13-16, but the State Defendants' receipt of federal financial assistance waives sovereign immunity for Title VI claims under 42 U.S.C. § 2000d-7(a)(1). State and County Defendants also contend that the Plaintiffs cannot plead a prima facie Title VI claim unless they are the intended beneficiaries of the specific federal grant or funds the Defendants receive. ECF No. 48-1, State Defs. Mem. at 15-16; ECF No. 46-1, Cnty. Defs. Br. at 25-26. To the contrary, Title VI applies broadly to discrimination by any portion of a program or activity that receives federal funds.

---

Plaintiffs to acquire housing, as Defendants themselves concede. 42 U.S.C. § 3604; *see* ECF No. 46-1, Cnty. Defs. Br. at 20; ECF No. 48-1, State Defs. Mem. at 36.

[2] Plaintiffs do not allege that the FHA abrogates state sovereign immunity and therefore the Court need not reach this issue. Plaintiffs, however, do bring claims for prospective equitable relief against State officials acting in their official capacity, which is permissible even where sovereign immunity applies, under *Ex parte Young*, 209 U.S. 123, 149-168 (1908). *See Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) ("official-capacity suits against state officials are permissible . . . under the Eleventh Amendment when the plaintiff seeks *prospective* equitable relief to end *continuing* violations of federal law.") (emphasis in original) (internal citation omitted).

## A. Standard of Review.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir.), *cert. denied sub nom. Davila v. Haynes*, 136 S. Ct. 78 (2015). Where the alleged facts "'raise a right to relief above the speculative level,'" they "need not be detailed." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Twombly*, 550 U.S. at 555), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). A complaint alleging discrimination need only "state the facts on which the plaintiff relies to support" the claim "that the adverse action was taken *because of* a [protected class]." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1222 (11th Cir. 2016). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 545. Following *Twombly* and *Iqbal*, the Eleventh Circuit eliminated a "heightened pleading standard" for civil rights complaints. *Hoefling v. City of Miami*, 811 F.3d 1271, 1276 (11th Cir. 2016) (internal quotation omitted).

A complaint need *not* plead the precise theory under which the plaintiff will prove discrimination, including whether the plaintiff will rely on direct or circumstantial evidence of discrimination.[3] *See, e.g.*, *Swierkiewicz v. Sorema*, 534 U.S. 506, 510-11 (2002); *Hunt*, 814 F.3d

---

[3] Plaintiffs may raise a reasonable inference of discriminatory intent "through various forms of circumstantial evidence." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); *see also Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993) (identifying factors that can establish discriminatory intent as set out in *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-69 (1977)).

at 1221-22 ("[T]he allegations in the complaint should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case." (internal citation omitted)); *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010) (stating that *Twombly*, 550 U.S. at 556, "reaffirm[ed] the validity of *Swierkiewicz*"). Thus, contrary to Defendants' contention, a plaintiff alleging discrimination need not necessarily plead that a similarly situated comparator was treated more favorably than a member of a protected class. *See Swierkiewicz*, 534 U.S. at 510-11; *Hunt*, 814 F.3d at 1221-22; *see* ECF No. 46-1, Cnty. Defs. Br. at 10, 19; ECF No. 48-1, State Defs. Mem. at 22-23, 38. To the extent one is alleged, defining the comparator class is a question of fact not to be decided on a motion to dismiss.

### B. The FHA Prohibits Post-Acquisition Discrimination.

The plain language of the FHA and HUD's implementing regulations are most reasonably read to prohibit post-acquisition discrimination. Nothing in the statute or in HUD's regulations indicates that the FHA should be limited to discrimination that occurs during the initial sale or rental transaction. Courts, including those in the Eleventh Circuit, have routinely applied the FHA to post-acquisition discrimination.

#### 1. Post-Acquisition Claims Are Available under § 3604(b) and 3604(f)(2).

The FHA's plain language and HUD's implementing regulations confirm that post-acquisition conduct related to the terms, conditions, or privileges of housing, or to the provision of services connected to housing, is covered under § 3604(b) and (f)(2).

The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, . . . or national origin." 42 U.S.C. § 3604(b). The FHA extends these prohibitions to discrimination based on disability through nearly identical language in § 3604(f)(2), making it unlawful to "discriminate against any person in the terms,

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a [disability]." 42 U.S.C. § 3604(f)(2).[4] This language is fairly read to provide post-acquisition protection. The "terms, conditions, or privileges" include not only the right to acquire, but also the right to inhabit a dwelling. *See United States v. Koch*, 352 F. Supp. 2d 970, 976 (D. Neb. 2004) ("[I]t is difficult to imagine a privilege that flows more naturally from the purchase or rental of a dwelling than the privilege of residing therein."). The term "privileges" and the phrase "services or facilities in connection therewith" are particularly suggestive of the right to enjoy the use of a dwelling and would have little meaning if limited to the initial act of sale or rental.

Other provisions of the FHA confirm that the statute applies to post-acquisition conduct. For example, § 3604(f)(3)(A) and (B) clearly allow requests for reasonable modifications to dwellings "occupied" by persons with disabilities, and for reasonable accommodations necessary "to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(A), (B). Additionally, § 3605 bars discrimination in residential real estate related transactions, including loans for "improving, repairing, or maintaining a dwelling." 42 U.S.C. § 3605(b)(1).

HUD's regulations interpreting these provisions confirm that § 3604(b) and (f)(2) apply to post-acquisition conduct. For example, HUD regulations interpret § 3604 to prohibit "*[e]victing* tenants because of their race, color, . . . [disability] . . . or national origin." 24 C.F.R. § 100.60(b)(5) (1989) (emphasis added). An eviction is, by its very nature, post-acquisition conduct. Other portions of the regulations further confirm that § 3604's prohibitions cover post

---

[4] Throughout this Statement of Interest, the United States uses the term "disability" instead of "handicap." For purposes of the FHA, the terms have the same meaning. *See Helen L. v. DiDario*, 46 F.3d 325, 330 n.8 (3d Cir. 1995) ("The change in nomenclature from 'handicap' to 'disability' reflects Congress' awareness that individuals with disabilities find the term 'handicapped' objectionable.").

acquisition conduct. HUD's regulations prohibit "[l]imiting the use of privileges, services, or facilities associated with a dwelling" and "[r]efusing to provide municipal services . . . for dwellings or providing such services . . . differently" on the basis of a protected characteristic. 24 C.F.R. § 100.65(b)(4) (1989); 24 C.F.R. § 100.70(d)(4) (1989). Such prohibited conduct can occur, and perhaps usually occurs, only after the purchase or rental of a home.

HUD's regulations are entitled to deference under *Chevron, USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984). *Chevron* requires that "if the statute is silent or ambiguous with respect to the specific issue," a court should ask only "whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 843. A court may not "simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* An agency may, through rulemaking, "fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974). Through its regulations, HUD provided a reasonable interpretation that the statutory protections of the FHA reach discriminatory conduct that occurs after the initial occupancy of a dwelling. HUD's interpretation is entitled to substantial deference because regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. Thus, even if the statutory language were ambiguous, HUD's regulations confirm that the FHA applies to post-acquisition conduct.

Indeed, courts have routinely applied § 3604(b) to encompass post-acquisition discriminatory conduct. Though the Eleventh Circuit has not directly held that the FHA applies to post-acquisition discrimination, it has applied the FHA to post-acquisition conduct. In *Hunt*, for example, the Eleventh Circuit held that a complaint alleging post-acquisition discrimination stated a claim under § 3604(f)(1) and (f)(2), reversing the Southern District of Florida's order of

dismissal. 814 F.3d at 1221-25; *see also Dixon v. Hallmark Cos.*, 627 F.3d 849 (11th Cir. 2010) (applying § 3604(b) to post-acquisition conduct but finding no discrimination on the merits). Additionally, district courts in the Eleventh Circuit have expressly held that the FHA applies to post-acquisition conduct. For example, in *Richards v. Bono*, the Middle District of Florida held that the FHA prohibits a landlord "from raising the rent mid-tenancy because of the sex of the tenant," because to find otherwise would be "anomalous" where the statute prohibits refusing to rent on the basis of sex. No. 5:04-cv484-OC-10GRJ, 2005 WL 1065141, at \*3 (M.D. Fla. May 2, 2005); *see also Smith v. Zacco*, No. 5:10-cv-360-TJC-JRK, 2011 WL 12450317, at \*5-7 (M.D. Fla. Mar. 8, 2011) (denying a motion to dismiss post-acquisition discrimination claims under § 3604(a) and (b)).

Numerous courts in other circuits have also applied the FHA to post-acquisition discrimination. In *Bloch v. Frischholz*, for example, the Seventh Circuit reasoned that "the right to inhabit the premises is a privilege of sale," and held that post-acquisition conduct that discriminated on the basis of religion was cognizable under § 3604. 587 F.3d 771, 779 (7th Cir. 2009) (internal citation omitted). *See also Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 713-14 (9th Cir. 2009) (rejecting *Cox v. City of Dallas*, 430 F. 3d 734 (5th Cir. 2005) and *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n.*, 388 F.3d 327 (7th Cir. 2004), and concluding that the FHA reaches post-acquisition discrimination); *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (finding that plaintiff can base an FHA claim on post-acquisition actions); *Honce v. Vigil*, 1 F.3d 1085, 1089–90 (10th Cir. 1993) (applying the FHA to claims of post-acquisition sexual harassment).

The conclusion of these courts is consistent with the statute's broad remedial purpose to "provide, within constitutional limitations, for fair housing throughout the United States."

42 U.S.C. § 3601. The privilege of inhabiting a home must also include inhabiting the premises *free from discrimination* under § 3604(b). To hold that the FHA does not protect a current tenant from discrimination, or even that the FHA protects a current tenant from discrimination only if the conduct is so egregious that it forces the tenant to vacate a home, is contrary to Congress's goal of creating "'truly integrated and balanced living patterns,'" and would frustrate the purpose of the FHA. *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211 (1972) (citing 114 Cong. Rec. 2706 (1968)); *see also Bloch*, 587 F.3d at 782 (citing *Trafficante* and holding that requiring plaintiffs "to vacate their homes before they can sue undoubtedly stifles [the FHA's] purpose"). If this Court were to reject post-acquisition liability, a housing or housing-related service provider could permissibly discriminate as long as it waited until after housing was acquired. For example, a landlord who agreed to rent to an African-American tenant but then refused to provide maintenance or other services because of the tenant's race would escape liability for this post-acquisition discriminatory conduct. Such a strained interpretation of the FHA is untenable.

## 2. Post-Acquisition Claims Are Available under § 3604(a) and 3604(f)(1).

Conduct that makes housing unavailable, even when it occurs after housing is initially acquired, is covered under § 3604(a) and (f)(1) by the statute's plain language and HUD's implementing regulations, as case law interpreting these provisions makes clear.

Section 3604(a) makes it unlawful "[t]o refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling . . . because of race, color, . . . or national origin." 42 U.S.C. § 3604(a). Section 3604(f)(1) extends this protection to discrimination on the basis of disability, making it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling . . . because of [disability]." 42 U.S.C. § 3604(f)(1). HUD's regulations confirm that these provisions apply to post-acquisition conduct, prohibiting "*[e]victing* tenants because of

their race, color, . . . [disability], . . . or national origin," and "[e]nacting or implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of race, color, . . . [disability], . . . or national origin." 24 C.F.R. § 100.60(b)(5) (emphasis added), 100.70(d)(5). The regulatory prohibition on eviction is particularly informative, because eviction by its nature necessarily occurs after the initial occupancy of a home. Moreover, nothing in the language of the statute or regulations limits these protections to pre-acquisition conduct.

Case law supports the application of § 3604(a) and (f)(1) to post-acquisition conduct. The Eleventh Circuit has recognized the "broad application of § 3604(a) to practices that affect the housing market for minorities." *Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1542 n.17 (11th Cir. 1994). Specifically, if a governmental entity engages in conduct that makes a residence "unfit for occupancy" or that causes an owner or tenant to feel "compelled to leave," such conduct is actionable under § 3604(a). *Bloch*, 587 F.3d at 776-77 (internal citation omitted) (further noting that "nothing in § 3604(a) suggests that 'unavailability' refers only to the physical condition of the premises" and includes "other actions by individuals or governmental units which directly affect the availability of housing to minorities." (internal quotations and citation omitted)); *see also Hunt*, 814 F.3d at 1221-24 (reversing dismissal of claims alleging post-acquisition discrimination under § 3604(f)(1)).

### 3. Decisions Rejecting Post-Acquisition Liability Are Neither Controlling Nor Persuasive.

As noted above, the Eleventh Circuit has not directly addressed whether post-acquisition conduct is covered by the FHA. While some decisions have rejected post-acquisition liability under portions of the FHA, none is controlling or persuasive.

11

Defendants' heavy reliance on *Halprin*, where the court held that § 3604(b) did not apply to post-acquisition discrimination claims involving religious harassment by the president of a homeowner's association, is misplaced. 388 F.3d at 330-31; *see* ECF No. 46-1, Cnty. Defs. Br. at 20; ECF No. 48-1, State Defs. Mem. at 39-40. The Seventh Circuit later clarified in *Bloch* that its holding in *Halprin* was narrow, and that post-acquisition conduct is cognizable under § 3604 where it makes housing unavailable (§ 3604(a)), or where it deprives a resident "the right to inhabit the premises" or is in connection with the initial sale or rental of the dwelling (§ 3604(b)). 587 F.3d at 776-79. Relying on this reasoning, the *Bloch* court sustained plaintiffs' claim against their condominium association for enforcing its rules in a discriminatory manner. *Id.* at 776-81. Although the relationship between the parties here is different from that in *Bloch*, the services that Defendants allegedly provided in a discriminatory manner are, like in *Bloch*, directly connected with the Plaintiffs' ability to inhabit homes on Sapelo Island. *See id.* Other courts have followed *Bloch*'s reasoning, refusing to interpret the FHA as narrowly as the *Halprin* court. *See Savanna Club Worship Serv. v. Savanna Club Homeowners' Ass'n*, 456 F. Supp. 2d 1223, 1229, 1230 (S.D. Fla. 2005) ("[T]he [c]ourt does not agree with . . . a broad reading of *Halprin*."; and "[P]art and parcel of the purchase of a home within a planned community are the rights and privileges associated with membership within the community."); *Zacco*, 2011 WL 12450317, at *5-6 (recognizing *Bloch's* limitation of *Halprin*).

Further, where courts have held that the FHA does not reach certain types of post-acquisition conduct in the context of services, these holdings did not establish that services, or post-acquisition discrimination more broadly, are *never* subject to the FHA. For example, in *Cox*, plaintiffs argued that the City of Dallas violated § 3604(a) and (b) of the FHA by discriminating in the "service" of the enforcement of zoning laws and failing to prevent illegal dumping, which

lowered the value of their homes and made the land used for dumping unavailable for future housing. 430 F.3d at 740, 744, 745. Although the court found that the city's conduct was far too attenuated from housing occupancy to be actionable under the FHA, it explicitly distinguished claims that are "about availability" of housing and claims that are "connected to the sale or rental of a dwelling," commenting that such claims are cognizable under § 3604(a) and (b), respectively. *Id.* at 741-43, 747 (internal quotations omitted). Further, *Cox* left room for a more expansive interpretation of what constitutes a service "in connection" with the sale or rental of a dwelling than Defendants in this case suggest, recognizing that "one can still conceivably connect police and fire protection to the 'sale or rental of a dwelling' (especially rental)." *Id.* at 746 n.36 (citing *Southend Neighborhood Improvement Ass'n v. Cnty. of St. Clair*, 743 F.2d 1207, 1210 (7th Cir. 1984) (holding that § 3604(b) "applies to services generally provided by governmental units such as police and fire protection or garbage collection") and *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 193 (4th Cir. 1999) (holding that § 3604(b) applies to "garbage collection and other services of the kind usually provided by municipalities")).

Notably, *Cox* and the cases it relied upon, which Defendants cite, did not involve government actions that applied directly to a plaintiff's property, and therefore do not reach the issue of whether § 3604 applies where a government service directly affects a dwelling. *See Cox*, 430 F.3d at 740–42; *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 719-20 (D.C. Cir. 1991) (finding no FHA claim related to services of a private elevator company where there was no housing-related duty to the tenants, because statute covers "those who . . . control the provision of housing services and facilities."); *Southend Neighborhood*, 743 F.2d at 1210 (rejecting claims relating to allegations that plaintiffs' property values declined after occupancy

because county did not address blighted neighborhood properties); *Jersey Heights*, 174 F.3d at 192-93 (holding that the FHA does not reach a decision of government agencies to site a highway proximate to occupied dwellings because this is not a service and because the challenged action was too far attenuated from the alleged discrimination); *see* ECF No. 38-1, State Defs. Mem. at 36-44. Here, in contrast, Plaintiffs allege that Defendants' implementation of land-use policies and provision of services, as applied directly to their properties, are discriminatory. As noted above, HUD's regulations make clear that such conduct is prohibited by the FHA. 24 C.F.R. § 100.70(d)(4)-(5).

Defendants also rely on *Steele v. City of Port Wentworth*, which is unpersuasive for two reasons. No. CV405-135, 2008 WL 717813 (S.D. Ga. Mar. 17, 2008) (Moore, J.); *see* ECF No. 46-1, Cnty. Defs. Br. at 21; ECF No. 48-1 State Defs. Mem. at 40. First, the court in *Steele* held that the water services that were the basis for plaintiffs' claims were "wholly unrelated to the sale or rental." 2008 WL 717813 at *12. In reaching this holding, the court unnecessarily read ambiguity into the statute, deciding "whether the language 'in connection with' refers to the 'sale or rental of a dwelling' or merely the 'dwelling' in general." *Id.* at *11 (quoting *Cox*, 2004 WL 370242 at *7). The court based its holding on the more narrow reading of "in connection therewith," which, as noted above, is an incorrect reading of the statute. *See supra* Part III.B.1. Second, the *Steele* court also found that the city's failure to provide water access and sanitation did not make housing unavailable because these services were available through other avenues. *Steele*, 2008 WL 717813 at *11. Here, in contrast, Plaintiffs allege that Defendants' conduct is directly responsible for making housing unavailable.

Finally, Defendants have misstated the holding in *Peklun v. Tierra Del Mar Condo. Ass'n, Inc.*, where, contrary to Defendants' assertion, the court did not reach the post-acquisition

issue under § 3604(a) because it found that an analysis of this section was "wholly inapplicable" to the matter. No. 15-CIV-80801-BLOOM/VALLE, 2015 WL 8029840, at *16 (S.D. Fla. Dec. 7, 2015); *see* ECF No. 46-1, Cnty. Defs. Br. at 20. And while *Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, on which Defendants also rely, did hold that claims under § 3604(b) must be linked to the initial occupancy of a dwelling, it did *not* hold that post-acquisition claims, including those that are linked to the initial occupancy of a dwelling, are not available under the FHA. 276 F. Supp. 2d 1222, 1233 (M.D. Fla. 2003), *vacated* No. 8:02CV1955T30TGW, 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003); *see* ECF No. 48-1, State Defs. Mem. at 40. Rather, the court in *Gourlay* commented that "[s]ection 3604(a) could potentially also extend to actions that actually evict or have the affect of evicting" a plaintiff, and noted that § 3604(b) could be applied to post-acquisition conduct under certain circumstances. *Id.* at 1232 & n.17, 1233.

Thus, the cases relied upon by Defendants do not support the position that post-acquisition discrimination can never be actionable under the FHA. Rather, these decisions recognize that where the challenged conduct is too remotely related to housing, it may not be covered by the FHA. By contrast, here Plaintiffs challenge land-use policies and government services that directly affect Plaintiffs' property and housing. As numerous courts have found, and as discussed in this brief, the FHA applies broadly to reach post-acquisition discrimination that affects housing. *See supra* Parts B.1-2.

### C. The FHA Applies to All Actors, Including State Actors, Who Violate the Fair Housing Act.

State Defendants are liable under the FHA if they made housing unavailable on the basis of a protected characteristic or discriminated in the terms, conditions, privileges, or provision of services in connection with the sale or rental of a dwelling. 42 U.S.C. § 3604(a), (b).

State Defendants incorrectly assert that they are not covered by the FHA because they did not sell, finance, rent, or otherwise engage in residential real estate-related transactions with Plaintiffs and "are not in the business of providing private housing or municipal services." ECF No. 48-1, State Defs. Mem. at 34. However, the language in § 3604 applies to any entity, including State Defendants, that violates its terms, and does not in any way limit liability to those who engage in some type of real estate transaction. Both § 3604(a) and (b) make it unlawful to discriminate without reference to who is discriminating. HUD's regulations clearly support this reading of the FHA, prohibiting discrimination in the provision of "municipal services" and in "[e]nacting or implementing land-use rules, ordinances, policies, or procedures." 24 C.F.R. § 100.70(d)(4)-(5).

Courts have applied the FHA to a wide variety of actors, including those uninvolved in the sale or rental of a dwelling, such as homeowners associations and governments. *See, e.g., Jackson*, 21 F.3d at 1542 n.17 ("Courts have construed the phrase 'otherwise make unavailable or deny' in subsection (a) to encompass actions by individuals *or government units* that affected the availability of housing to minorities." (emphasis added)); *Gourlay*, 276 F. Supp. 2d at 1229-37 (applying the FHA to a homeowners' association); *Modesto*, 583 F.3d at 715 (9th Cir. 2009) (applying the FHA to County services); *Franks v. Ross*, 313 F.3d 184, 199 (4th Cir. 2002) (allowing FHA claims against state officials); *see also United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 549-50 (W.D. Va. 1975) (collecting cases applying the FHA to diverse entities).

State Defendants further argue that the State is not covered by the FHA because it is not a municipality and is not "required or mandated to provide any services." ECF No. 48-1, State Defs. Mem. at 34-35. However, nothing in the statute's text, legislative history, or case law

limits the application of the FHA to *municipal* services, or to services that an entity is *required* to provide. The FHA prohibits providing "different and inferior . . . services to . . . dwellings" on a discriminatory basis, without qualification. *Lopez v. City of Dallas*, No. 3:03-cv-2223-M, 2004 WL 2026804, *8-9 (N.D. Tex., Sept. 9, 2004); *see also Jersey Heights*, 174 F.3d at 193 (noting that § 3604(b) "simply requires that 'such things as garbage collection and other services of the kind usually provided by municipalities' not be denied on a discriminatory basis") (quoting *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 424 (4th Cir. 1984)); *Southend Neighborhood*, 743 F.2d at 1210 (noting that § 3604(b) "applies to services generally provided by governmental units"); *Clifton Terrace*, 929 F.2d at 720 (a municipality that is the "sole source of a service essential to the habitability of a dwelling" could be covered by the FHA). Even if the State is providing services as a "courtesy," ECF No. 48-1, State Defs. Mem. at 35, it may not provide such services in a discriminatory manner.

### D. Title VI Claims are Not Barred by the Eleventh Amendment and a Plaintiff Need Only Allege Discrimination by a Federally Assisted Program or Activity.

Defendants seek to dismiss Plaintiffs' Title VI claims, which allege that Defendants discriminated on the basis of race, color, and national origin in violation of 42 U.S.C. § 2000d in programs or activities receiving federal financial assistance. The State argues that Eleventh Amendment immunity precludes the Title VI claim against the State Defendants, and both the State and County Defendants contend that the Title VI claims must be dismissed because the "[P]laintiffs were not the intended beneficiaries of the federal funds referenced" in the Amended Complaint. ECF No. 46-1, Cnty. Defs. Br. at 25; ECF No. 48-1, State Defs. Mem. at 16.

Both arguments are incorrect. Thirty years ago, Congress unequivocally conditioned receipt of federal funds on waiver of state sovereign immunity for Title VI claims in 42 U.S.C. § 2000d-7. Further, to state a claim under 42 U.S.C. § 2000d, a plaintiff need only allege facts

sufficient to support that the Defendants were "(1) receiving federal funds; and (2) engaging in racial discrimination." *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 32 F. Supp. 2d 1370, 1379 (S.D. Ga. 1999) (citing *Fobbs v. Holy Cross,* 29 F.3d 1439, 1447 (9th Cir.1994)), *vacated on other grounds sub nom. Tracy v. Bd. of Regents of the Univ. Sys.*, 208 F.3d 1313 (11th Cir. 2000).

### 1.   42 U.S.C. 2000d-7 Removes Eleventh Amendment Immunity to Title VI Claims.[5]

The State Defendants assert Eleventh Amendment immunity to the Plaintiffs' Title VI claim, arguing that the "mere receipt of federal funds does not establish" consent to a Title VI suit and that they lack authority to waive immunity under the Georgia State Constitution and state law. ECF No. 48-1, State Defs. Mem. at 14, 8. These arguments fail to acknowledge that Congress unequivocally conditioned receipt of federal financial assistance on waiver of Eleventh Amendment immunity to Title VI suits in 42 U.S.C. § 2000d-7. The plain language of the statute, added in 1986, provides that a "State shall not be immune under the Eleventh Amendment . . . from suit in Federal Court for a violation of . . . title VI of the Civil Rights Act of 1964 . . . ." 42 U.S.C. § 2000d-7(a)(1).

The State Defendants acknowledge that the "Eleventh Amendment bars actions against a state, its agencies, and its officials absent a waiver by the State *or a valid congressional override*." ECF No. 48-1, State Defs. Mem. at 7 (emphasis added). However, the State Defendants fail to address the express Congressional condition on receipt of federal funds in § 2000d-7(a)(1). *See* ECF No. 48-1, State Defs. Mem. at 7-8. [6]

---

[5] For the reasons described *supra* note 2, this Statement of Interest does not address state sovereign immunity in the context of the FHA.

[6]  In contrast to the arguments that the State Defendants make regarding sovereign immunity for damages claims under Title II of the ADA, the State Defendants do not assert that Congress lacked the constitutional authority to condition the waiver of sovereign immunity on the

Instead of addressing the "valid congressional override" of state sovereign immunity for Title VI claims, the State Defendants cite *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 246-47 (1985), a case that pre-dates § 2000d-7. *See* ECF No. 48-1, State Defs. Mem. at 14. In that case, the Supreme Court held that section 504 of the Rehabilitation Act, 29 U.S.C. § 794, did not expressly abrogate Eleventh Amendment immunity. *Atascadero*, 473 U.S. at 246. In response to *Atascadero*, Congress enacted § 2000d-7 to expressly waive states' immunity for claims in federal court for violations of section 504, Title VI, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the Age Discrimination Act, 42 U.S.C. § 6101. *See Lane v. Peña*, 518 U.S. 187, 197-98 (1996) (noting that Congress responded to its decision in *Atascadero* by crafting an "unequivocal waiver" of all state recipients' Eleventh Amendment immunity in § 2000d-7.).

Equally inapposite is the State Defendants' reliance on *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1226 n.13 (11th Cir. 2000). *See* ECF No. 48-1, State Defs. Mem. at 14. In that case, the Eleventh Circuit found only that Congress did not waive sovereign immunity for claims under the Medicaid Act, which is not at issue here. *Fla. Ass'n of Rehab. Facilities*, 225 F.3d at 1226 n.13. In contrast, the Eleventh Circuit has held that § 2000d–7 manifests an "unmistakable intent to condition federal funds on a state's waiver of sovereign immunity" for Title VI cases. *Garrett v. Univ. of Ala. at Birmingham Bd. of Tr.*, 344 F.3d 1288, 1291 (11th Cir. 2003) (quoting *Sandoval v. Hagan*, 197 F.3d 484, 493 (11th Cir. 1999), *reversed on other grounds sub nom. Alexander v. Sandoval*, 532 U.S. 275 (2001)).

---

acceptance of federal funds pursuant to 42 U.S.C. § 2000d-7(a)(1). As noted above, they simply ignore the existence of § 2000d-7(a)(1).

Nor can the State Defendants raise the Georgia State Constitution or the Georgia Tort Claims Act as a shield by claiming that they lack the authority to waive a condition of receipt of federal funds. *See* ECF No. 48-1, State Defs. Mem. at 8. State agencies can either accept federal funds conditioned on the waiver of Eleventh Amendment immunity, or they can reject the funds, but they cannot accept the funds and reject the "inextricably intertwined condition of waiver" under § 2000d-7. *Miller v. Texas Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 348 (5th Cir. 2005) (accepting federal funds waives sovereign immunity from suit in federal court under § 2000d-7 notwithstanding the state agencies' arguments that they lacked state statutory authority to waive immunity); *Sandoval*, 197 F.3d at 493-94 (a state waives its Eleventh Amendment immunity if it continues to receive federal funds after § 2000d-7 was enacted).

Plaintiffs allege, and Defendants do not deny, that at all times relevant to this action, Defendants State and DNR have received federal financial assistance. ECF No. 29 ¶¶ 6, 140, 142, 445; *see* ECF No. 46-1, Cnty. Defs. Br. at 25; ECF No. 48-1, State Defs. Mem. at 16. This receipt waived Eleventh Amendment immunity.[7]

### 2. The State and County's Programs or Activities Fall Within the Scope of Title VI.

The State Defendants erroneously contend that the Title VI claim must be dismissed for failing to allege a nexus between the specific federally-assisted program and the alleged

---

[7] State Defendants also contend that the Eleventh Amendment bars the remedies Plaintiffs request against the State of Georgia and its State agencies. ECF No. 48-1, State Defs. Mem. at 7, 49. However, the Eleventh Amendment does not shield State Defendants from the relief requested as all "remedies (including remedies both at law and in equity) are available" in Title VI cases. 42 U.S.C. § 2000d-7(a)(2). County Defendants assert that Plaintiffs have not stated sufficient facts to be granted the Title VI relief requested. ECF No. 46-1, Cnty. Defs. Br. at 31, 34. However, "a motion for failure to state a claim properly addresses the cause of action alleged, not the remedy sought." *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 353 (E.D.N.Y. 2007). Only after discovery, when the court crafts the remedy, may defendants contest its application. *Id.* (citing *United States v. Georgia Power Co.*, 301 F.Supp. 538 (N.D. Ga. 1969)).

discrimination Plaintiffs suffered. *See* ECF No. 48-1, State Defs. Mem. at 13-16. That argument

ignores the definition of "program or activity" that Congress adopted for Title VI in the Civil

Rights Restoration Act of 1987 ("CRRA"), Pub. L. No. 100-259, 102 Stat. 28 (1988). Under the

CRRA, "program or activity" or "program" explicitly encompasses "all of the operations of . . . a

department, agency, special purpose district, or other instrumentality of a State or of a local

government . . . [,] any part of which is extended Federal financial assistance." 42 U.S.C.

§ 2000d-4a. Therefore, "all the operations" of the state agency or department that receives the

funds must comply with Title VI. *Id.*

In support of their argument, the State Defendants incorrectly rely on two cases that pre-

date the CRRA, *Doyle v. Univ. of Ala. in Birmingham*, 680 F.2d 1323, 1326 (11th Cir. 1982) and

*Brown v. Sibley*, 650 F.2d 760, 767-71 (5th Cir. 1981). *See* ECF No. 48-1, State Defs. Mem. at

14-15. State Defendants also rely on a recent Eleventh Circuit decision, *Muckle v. UNCF*, 420 F.

App'x 916, 918 (11th Cir. 2011), which does not discuss the CRRA, to support their assertion

that a viable Title VI claim must show that the alleged discrimination occurred in the specific

program or activity receiving federal financial assistance. *See* ECF No. 48-1, State Defs. Mem. at

14-15. A court in the Northern District of Georgia has held that Defendant DNR's reliance on

*Muckle* did "not persuade this Court that *Brown* and *Doyle* remain good law in this circuit"

because *Muckle* "did not cite the [CRRA] or discuss its effect on the continued viability of

*Doyle,* nor did it cite any of the cases holding that the Act had effectively overturned *Brown,* on

which *Doyle* relied." *Gaylor v. Georgia Dep't of Nat. Res.*, No. 2:11-cv-288-RWS, 2014 WL

4215575, at *3 (N.D. Ga. Aug. 25, 2014).

State Defendants' argument would have this court impose the same narrow limitations on

Title VI that the Supreme Court applied in *Grove City College v. Bell*, 465 U.S. 555 (1984),

which Congress subsequently abrogated with the CRRA. In *Grove City*, the Supreme Court held that because the college received federal aid in the form of student loans, the only "program or activity" covered by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682, was the college's financial aid program. *Id*. at 574-75. In response to *Grove City*, Congress enacted the CRRA to restore the long-standing broad application of anti-discrimination statutes, such as Title VI. S. Rep. No. 100-64, at 2 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3, 3-4. Accordingly, when *any* part of a state agency or department receives federal financial assistance, Title VI covers *all* the operations of that agency or department regardless of whether the alleged discrimination occurred in the specific portion of the program or activity receiving federal funding.

### 3. Title VI Claimants Need Not Be the Intended Beneficiaries of Federal Funds.

Defendants contend that Plaintiffs lack standing because Plaintiffs are not the intended beneficiaries of federal Community Development Block Grants and HOME grants and therefore cannot state a Title VI claim. ECF No. 48-1, State Defs. Mem. at 16; ECF No. 46-1, Cnty. Defs. Br. at 24-26. To support this argument, Defendant McIntosh County cites *Ivey v. Blocker*, in which the court stated that in order to have standing a plaintiff must allege that "plaintiff was an intended beneficiary of the *program or activity* receiving the assistance." No. 6:11-cv-1776, 2012 WL 667937, at *4 (M.D. Fla. Feb. 8, 2012) (emphasis added). However, *Ivey* does not hold that plaintiffs must be the intended beneficiaries of the *grant*. Defendants' argument, which seeks to restrict Title VI protections by focusing on the purpose of the federal financial assistance, is wholly inconsistent with the express scope of coverage of Title VI.

Title VI states that "[n]o person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

under *any program or activity* receiving Federal financial assistance." 42 U.S.C. § 2000d (emphasis added). Under Title VI, "program or activity" does not refer to the grant received but instead refers to "all of the operations of . . . a department, agency . . . or other instrumentality of a State or of a local government . . . ." 42 U.S.C. § 2000d-4a. For example, when any part of a state or local government department or agency receives a federal housing grant, the entire department or agency must comply with Title VI regardless of the specific purpose of the grant. *See* S. Rep. No. 100-64, at 16 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3, 18. Aside from one narrow exception for employment discrimination coverage under 42 U.S.C. § 2000d-3, the purpose of the grant is simply irrelevant to the scope of Title VI's coverage; what is relevant are the activities of the recipient.

Consistent with the congressionally-established scope of Title VI coverage, many courts have rejected the intended beneficiary limitation. *See Wooden*, 32 F. Supp. 2d at 1379 (citing *Fobbs*, 29 F.3d at 1447 ("There is no requirement that plaintiff plead that he was an intended beneficiary of the federally funded program in which defendants are alleged to have participated.")); *Carnell Const. Corp. v. Danville Redev. & Hous. Auth.*, 745 F.3d 703, 715 (4th Cir. 2014) ("Title VI does not require that an injured party be the intended beneficiary of federal funds."), *cert. denied*, 135 S. Ct. 357 (2014), *and*, 135 S. Ct. 361 (2014); *Bryant v. New Jersey Dep't of Transp.*, 998 F. Supp. 438, 443-44 (D.N.J. 1998) (rejecting the intended beneficiary limitation for Title VI cases as inconsistent with the purpose of the statute); *Alasady v. Northwest Airlines Corp.*, No. Civ.02-3669(RHK/AJB), 2003 WL 1565944, at *13 (D. Minn. Mar. 3, 2003) ("Plaintiffs need not plead or prove that they were 'intended beneficiaries' of any federal financial aid."); *Epileptic Found. v. City & Cnty. of Maui*, 300 F. Supp. 2d 1003, 1012 (D. Haw. 2003) (holding that after the CRRA, "it is of no moment" the purpose of the federal assistance

Defendant receives because that receipt "subjects the entire department to the provisions of Title VI"). Accordingly, Defendants' attempt to restrict Title VI protections by focusing on the purpose of the grant should be rejected.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully urges the Court to find that the FHA applies to post-acquisition conduct and to state actors, and to apply Title VI broadly to all operations of state and local governmental entities that receive federal funds.

Respectfully submitted,

LORETTA E. LYNCH
Attorney General

/s/ Vanita Gupta
VANITA GUPTA
Principal Deputy
Assistant Attorney General, Civil Rights Division
GREGORY B. FRIEL
EVE L. HILL
Deputy Assistant Attorneys General

EDWARD J. TARVER
United States Attorney
Southern District of Georgia

/s/ J. Thomas Clarkson
J. THOMAS CLARKSON
Assistant United States Attorney
Georgia Bar No. 656069
Post Office Box 8970
Savannah, Georgia 31401
Phone: (912) 652-4422
thomas.clarkson@usdoj.gov

/s/ Sameena Shina Majeed
SAMEENA SHINA MAJEED
Acting Chief
Housing & Civil Enforcement Section
CHRISTINE STONEMAN
Acting Chief
Federal Coordination & Compliance Section
MICHAEL S. MAURER
Deputy Chief
Housing & Civil Enforcement Section
DARIA E. NEAL
Deputy Chief
Federal Coordination & Compliance Section

/s/ Katharine F. Towt
KATHARINE F. TOWT
Massachusetts Bar No. 690461
ANDREA K. STEINACKER
Trial Attorneys
Housing & Civil Enforcement Section
MICHAEL J. MULÉ
SELIN CHERIAN-RIVERS
Attorneys
Federal Coordination & Compliance Section

**Civil Rights Division**
**U.S. Department of Justice**
950 Pennsylvania Avenue, NW
Northwestern Building, 7th Floor
Washington, D.C. 20530
Phone: (202) 353-4140 / Fax: (202) 514-1116
katie.towt@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that on April 21, 2016, I served all the parties in this case in accordance with the notice of electronic filing ("NEF"), which was generated as a result of electronic filing in this Court.

/s/ Katharine F. Towt
Katharine F. Towt
Massachusetts Bar No. 690461
Attorney for the United States