UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER and J.W.,

    Plaintiffs,

v.                                                             Case No. 8:23-cv-00181-SDM-JSS

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

    Defendant.

_____/

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant, The School Board of Hillsborough County, Florida (the "School Board") moves for judgment on the pleadings.

### I. INTRODUCTION AND BACKGROUND

This Court should enter judgment as a matter of law on the pleadings because Plaintiff's claims for violation of the Fair Housing Act, 42 U.S.C. § 3604, fail as a matter of law. Plaintiff's claims fail because (1) they are barred by the parties' prior settlement agreement, and (2) the Fair Housing Act does <u>not</u> cover Plaintiff's allegations against the School Board.

As set forth in his Amended Verified Complaint, Plaintiff brings only two claims against the School Board under the Fair Housing Act: (1) Count I

70643734;3

alleging intentional discrimination under 42 U.S.C. § 3604, and (2) Count II alleging disparate impact also under 42 U.S.C. § 3604. *See* Doc. 29, pp. 15-16.

Originally, Plaintiff's complaint included additional counts (and Plaintiff's minor son as an additional party plaintiff) relating to purported educational discrimination. *See generally* Doc. 1. But Plaintiff abandoned those counts, limiting this action to the two Fair Housing Act claims. Doc. 29 ¶¶ 79–82. Accordingly, any other prior claims are not discussed in this motion and do not bar entry of judgment as a matter of law against the Amended Verified Complaint.

Previously, Plaintiff executed a settlement agreement with the School Board, resolving a prior matter, and Plaintiff provided a broad release. Unable to: (a) plead a breach of the settlement agreement or (b) to identify any action by the School Board against the Plaintiff since the time the agreement was executed, Plaintiff now pursues a novel theory for relief.

Plaintiff alleges that the School Board violated the Fair Housing Act, 42 U.S.C. § 3604. But the complaint does not and cannot suggest that the School Board sells or rents any dwellings, as it in fact does not. *Compare* Doc. 29 (including no allegations that the School Board sells, rents, advertises, or makes any representations regarding the availability of dwellings), *with* 42 U.S.C. § 3604(a)–(f) (prohibiting only those activities).

As the complaint acknowledges, the School Board's role includes setting attendance boundaries of the schools in Hillsborough County, which results in those schools being assigned to the various residences in Hillsborough County. *Id.* at ¶¶ 3, 42. The School Board concerns itself only with overseeing the schools in the Hillsborough County School District and is <u>not</u> involved in the private management or sale of dwellings.

Accordingly, this Court should enter judgment against the two Fair Housing Act claims as a matter of law because (1) both claims are barred by the parties' prior settlement agreement, and (2) Plaintiff's allegations cannot establish any violation of the Fair Housing Act.

## II.   STANDARD FOR DETERMINATION

Federal Rule of Civil Procedure 12(c) "provides 'a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings.'" *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quoting with emphasis Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2004)). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law," accepting as true all material facts alleged in the non-moving party's pleading. *Id.* at 1335 (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). Threadbare legal conclusions in a complaint

"are not entitled to the assumption of truth," but instead the complaint must include factual allegations that are plausible on their face. *Samara v. Taylor*, 38 F.4th 141, 152 (11th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. MEMORANDUM OF LAW

#### A. Plaintiff's lawsuit is barred by the parties' prior settlement agreement.

Plaintiff's two claims are barred by the parties' prior settlement agreement, which is attached to the School Board's Answer as Exhibit 1. *See* Doc. 30-1 (the "Settlement Agreement"). In the Settlement Agreement, Plaintiffs provided a general release of the School Board for "any and all claims, demands, causes of action, complaints or charges, known or unknown specifically related to J.W.'s education" through March 15, 2022. *See* Doc. 30-1, Ex. 1, p.2, ¶ 5.

Plaintiff challenges the "school assignment boundary maps" but does <u>not</u> allege any change to those maps <u>after</u> March 15, 2022 (the date of the release) <u>changing</u> the assignment for Plaintiff's residence (or his minor child). *See* Doc. 29, ¶¶ 80, 82. Because Plaintiff has not alleged and cannot allege any change to the boundary maps <u>affecting</u> Plaintiff since execution of the release, Plaintiff's claims are barred by the Settlement Agreement as a matter of law.

The extremely broad language of the release encompasses the allegations in Plaintiff's Amended Complaint. Although Plaintiff's pleading, as amended, purports to focus on housing claims, Plaintiff ties his housing claims to the alleged assignment of school districts and the "district map boundaries," which directly relates to "J.W.'s education."

Even if Plaintiff could drastically expand the Fair Housing Act to state a claim on these facts (he cannot as explained in Section III.B, *infra*), the claims would still be barred by the parties' Settlement Agreement because they are "related to J.W.'s education." *See* Doc. 30-1, Ex. 1, p.2, ¶ 5. The Court should decline Plaintiff's invitation to drastically expand the Fair Housing Act and hold Plaintiff to the terms of the Settlement Agreement. *Cf. Clark v. Al-Amin*, 872 N.W.2d 730, 733–34 & 401 (Mich. Ct. App. 2015) (providing an example of a case where a court refused to accept novel theories to avoid a settlement agreement, where accepting those novel theories would "turn the law … on its head"). Accordingly, this Court should enter judgment as a matter of law against Plaintiff's Amended Verified Complaint.

**B.   The Fair Housing Act does not apply to the School Board in this case.**

Plaintiff brings both his claims pursuant to 42 U.S.C. § 3604, which does not apply here. Plaintiff does <u>not</u> specify which subsection or subsections

5

70643734;3

are at issue, so it is helpful to consider the language of the entire statute itself:

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
> (a) To **refuse to sell or rent** after the making of a bona fide offer, or to **refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny**, **a dwelling** to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of **sale or rental of a dwelling, or in the provision of services or facilities in connection therewith**, because of race, color, religion, sex, familial status, or national origin.
>
> (c) To **make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling** that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.
>
> (d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that **any dwelling is not available for inspection, sale, or rental** when such dwelling is in fact so available.
>
> (e) For profit, to **induce or attempt to induce any person to sell or rent any dwelling** by representations regarding the entry or prospective entry into the neighborhood of a

6

>>person or persons of a particular race, color, religion, sex, handicap, familial status, or national origin.
>
>(f) To **discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling** to any buyer or renter because of a **handicap** . . . .[1]

42 U.S.C. § 3604 (emphasis added).

By its own clear terms, the Fair Housing Act prohibits discriminatory acts with respect to the direct sale or rental of dwellings. Nothing in the amended complaint suggests that the School Board in any way participates in the housing market or fits within the language of the Fair Housing Act. *See generally* Doc. 29. Rather, the School Board is a constitutional entity in Florida tasked with "operat[ing], control[ling], and supervis[ing] all free public schools within the school district." FLA. CONST. art. IX, § 4. It does not buy or sell dwellings, it does not rent dwellings, it does not advertise dwellings—in short, it has nothing to do with housing. Any purported "relationship" between housing and the School Board is entirely through the actions of private parties wholly unrelated to and not under the control of the School Board.

---

[1] Subsection (f) contains nine separate paragraphs but is specific to handicap discrimination clearly not at issue in this case where Plaintiff does not allege handicap discrimination. *See* Doc. 29, ¶¶ 80 & 82 (alleging discrimination based on "race and/or color").

Plaintiff attempts to drastically expand the scope of section 3604 by arguing that school assignments "pric[e] minorities out of" certain neighborhoods by merely *affecting* housing prices. Doc. 29 ¶¶ 80, 82. But by that reasoning, nearly every action by every party could be swept into the Fair Housing Act.

For example, if a company builds a new office building in a suburb, the availability of those jobs is likely going to affect housing prices in the area. Similarly, improving a park or other community space in the area might *affect* housing prices, thereby creating Fair Housing Act liability under Plaintiff's theory. Such an expansive reading of the Fair Housing Act is unsupported.

Nothing in the case law supports Plaintiff's efforts to distort the purposes of the Fair Housing Act. After review of the case law in all jurisdictions, the School Board is unaware of a single case in which any plaintiff tested this type of novel theory, much less a court adopting it. To the contrary, the available case law suggests the exact opposite.

While Plaintiff does not cite a specific part of § 3604, Plaintiff appears to rely on the "provision of services" prong of § 3604(b). *See* Doc 29 ¶ 41 (alleging the "assigned schools are provisioned services and/or facilities in connection with the residence that is assigned to them."). But even at its broadest interpretation, that provision of Fair Housing Act is limited to

8

regulating conduct in connection with the sale or rental of a dwelling. *See Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1233 (M.D. Fla. 2003)[2] ("This Court need not reach the question of whether Plaintiffs needed to be evicted to violate Section 3604(b), because this Court concludes that Section 3604(b) only prohibits the discriminatory provision of services and facilities **in connection with a sale of a dwelling**.") (emphasis added) (citing *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004) (dismissing complaint involving "service" from homeowners association) and *Clifton Terrace Associates, Ltd. V. United Technologies Corp.*, 929 F. 2d 714 (D.C. Cir. 1991)). *See also Roy v. Board of County Com'rs Walton County, Fla.*, No. 3:06-cv-95, 2007 WL 3345352 (N.D. Fla. Nov. 9, 2007) (dismissing with prejudice claims under § 3604(a) for disparate treatment and under § 3604(b)).

In *Roy*, the court noted that the "provision of services" prong of § 3604(b) "must relate to the sale of a dwelling, and not just ownership of the dwelling." *Id.* at *12 (citation omitted); *Clifton Terrace*, 929 F.2d at 720 ("The

---

[2] "After the *Gourlay* decision was issued, the parties settled and the court withdrew the opinion. [*see* 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003)] The order's reasoning and analysis, however, remain instructive and persuasive." *Schwarz v. Villages Charter Sch., Inc.*, No. 5:12-CV-177-OC-34PRL, 2014 WL 12623013, at *6 (M.D. Fla. May 23, 2014) (recommending dismissal of Fair Housing Act claim for handicap discrimination under (f)(2).

9

70643734;3

fact that such a discriminatory practice could have an impact on the use and enjoyment of residential property rights, however, does not necessarily mean that it will also be redressable under Title VIII."). At most, Plaintiff's allegations relate to interests in the property he owns, not the purchase of the property itself, and thus is not actionable under the Fair Housing Act. *See Southend Neighbrohood Imp. Ass'n v. St. Clair County*, 743 F.2d 1207 (7th Cir. 1984) (holding complaint did not state a claim for relief). Specifically:

> We hold that the County's actions here could not have affected the availability of housing in a manner implicating Section 3604(a) of the Fair Housing Act. Section 3604(a) is designed to ensure that no one is denied the right to live where they choose for discriminatory reasons, but it does not protect the intangible interests in the already-owned property raised by the plaintiffs allegations.

*Id.* at 1210.

Plaintiff does not allege the School Board provides any services related to the "sale" of any dwelling (nor his current dwelling), and thus, cannot state a claim under the Fair Housing Act. *Id. See also* FLA. CONST. art. IX, § 4 (noting the School Board's role is to govern schools rather than houses).

Courts and the Department of Housing and Urban Development have taken the same approach with respect to the "provision of services" language in Section 3604(b). The Department's implementing regulation regarding that language notes that any "services or facilities" at issue must be offered

10

70643734;3

"in connection with the sale or rental of a dwelling." 24 C.F.R. § 100.65(a). And Courts interpreting that language in the statute and regulation have held that "the 'services' that are alleged to have been discriminatorily provided 'must relate to the sale of a dwelling, and not just ownership of the dwelling.'" *Roy*, 2007 WL 3345352, at *12 (quoting *Edwards v. Media Borough Council*, 430 F. Supp. 2d 445, 452 n.14 (E.D. Pa. 2006)) (holding that denial of a variance was not a type of "service" that would fit within the subsection (b) of the Act); *see also Edwards*, 430 F. Supp. 2d at 451 (quoting *Halprin*, 388 F.3d at 329 ("The Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing.").

For further illustration regarding governmental liability, consider 24 C.F.R. § 100.70(d)(5), which is part of the Fair Housing Act's implementing regulations from the Department of Housing and Urban Development. That paragraph forbids "[e]nacting or implementing **land-use** rules, ordinances, procedures, building codes, permitting rules, policies, or requirements that restrict or **deny housing opportunities** or otherwise make **unavailable or deny dwellings** to persons because of race, color, religion, sex, handicap, familial status, or national origin." *Id.* (emphasis added). In other words, governmental agencies might be liable where they enact discriminatory *land-use* rules or policies that prevent a person from purchasing a dwelling.

11

Nothing in the regulations suggests that any action that has an indirect effect on housing or rental prices is sufficient to state a claim under the Fair Housing Act.³ Otherwise, virtually every law or action might be deemed to have some type of effect on pricing and create liability, such as a transportation agency expanding a road near a community.

Courts have rejected this approach. And a full quote from *Michigan Protection and Advocacy Service, Inc. v. Babin*, 799 F. Supp. 695 (E.D. Mich. 1992), is helpful in this analysis. In *Babin*, a group of people living in a community opposed a proposed group home and "began to engage in activities designed to prevent the institution of the group home," such as picketing, arranging for media coverage, and threatening boycotts. *Id.* at 701. The complaint asserted several different claims, *id.* at 703-04, including a theory

---

³ It appears that six cases—all unpublished—cite to § 100.70(d)(5). None of those cases involves an effort to impose liability on a school board for alleged discriminatory school boundaries; they all involved governmental agencies having direct regulatory authority over dwellings. *Mabry v. City of East Chicago*, No. 16-cv-00402, 2020 WL 638897, at *1 (N.D. Ind. Feb. 11, 2020) (dismissing intentional discrimination and disparate impact claims under the Fair Housing Act in case challenging plan to demolish homes and alleging concealment of health and safety issues on properties); *Avenue 6E Inv., LLC v. City of Yuma, Ariz.*, No. 09-cv-00297, 2018 WL 582314, at *1 (D. Ariz. Jan. 28, 2018) (challenging rezoning denial); *Mabry v. City of East Chicago*, No. 16-cv-00402, 2017 WL 4287523, at *1 (N.D. Ind. Sept. 27, 2017) (dismissing Fair Housing Act claims related to closing dwelling units); *Perdue v. City of Wilmington*, No. 14-cv-00044, 2014 WL 5035938, at *2 (D. Del. Oct. 8, 2014) (involving time-barred Fair Housing Act claim related to compliance violation citations); *Teran v. Village of Wheeling*, No. 13-cv-06509, 2014 WL 2938397, at *1 (N.D. Ill. June 30, 2014) (alleging selective and discriminatory enforcement of property maintenance code); *U.S. v. City of New Orleans*, No. 12-cv-02011, 2013 WL 1767787, at *1 (E.D. La. Apr. 24, 2013) (arising from proposed redevelopment of former nursing home into an affordable housing apartment complex and the financing of a development through bonds as part of post-Hurricane Katrina redevelopment efforts, which the U.S. Dept. of Justice alleged was being obstructed by the city and bond commission).

of expanding the Fair Housing Act claims to enclose those who "**indirectly deprive a protected individual of housing.**" *Id.* 711-12 (emphasis added). The court rejected this theory, stating:

> The second part of § 3604(f)(1) applies to those who "otherwise make unavailable" a dwelling. Although this phrase has been referred to as a "catchall," Schwemm § 13.4(1), its scope is not limitless. By its terms, it is limited to those individuals who are in a position to make a dwelling unavailable. **To be in this position, a person must be able to exercise influence over or control the disposition of the dwelling.** Without this power, the person might be able to annoy a prospective tenant, but would be unable to make a dwelling unavailable.
>
> Plaintiffs, however, **ask the Court to expand the meaning of "otherwise make unavailable" to encompass those who indirectly deprive a protected individual of housing.** Under this interpretation, any person whose act eventually causes the denial of housing could be liable under the FHAA. **For example, a competing buyer who outbids a member of a protected group would be liable under the statute in that he made the dwelling unavailable.** Similarly, a journalist whose negative portrayal of retarded people might result in the denial of a dwelling to a retarded person would be liable in that he made the dwelling unavailable through his writing.
>
> Clearly, Congress did not intend to cause such a procrustean result. **Rather, it intended the phrase "otherwise make unavailable" to cover only those persons who, though not an owner or his agent, are in a position directly to deny a member of a protected group his housing rights.**
>
> . . . .

13

> This Court agrees with the reasoning and conclusions of the *Devereux* and *Steptoe* courts. **Section 3604(f)(1) covers only those actors who are in a position directly to make a dwelling unavailable—that is, a seller, his agent, or another person or entity integrally involved in the sale or financing of real estate. An expansion of the statute beyond this limit would contravene the language of § 3604(f)(1) as well as common sense.** Because the Neighbors had no control over the Home, they could not and did not directly deprive Plaintiffs of housing. Therefore, they are not covered by § 3604(f)(1). The Court rejects all § 3604(f)(1) claims against the Neighbors.

*Id.* at 711–14 (emphasis added).

In short, there is a limit to the Fair Housing Act. Even the more expansive language of subsection (f) (regarding handicap discrimination), relates only to those who "are in a position directly to make a dwelling unavailable—that is, a seller, his agent, or another person or entity integrally involved in the sale or financing of real estate." *Id.* at 711-12. Plaintiff does not and cannot allege the School Board is in such a position merely by promulgating school assignment boundary maps.

Just as a transportation agency would not face liability for expanding a highway and thereby increasing or decreasing the value of nearby homes, neither should the School Board face liability under the Fair Housing Act for performing its typical school management activities, even if those activities might influence private sellers and renters. The private housing market is

14

going to naturally evolve through the actions of numerous actors over which the School Board has no control, and it cannot have those actions applied to it. The Court should decline the Plaintiff's novel invitation to vastly expand the Fair Housing Act beyond its intended scope, and grant the School Board judgment as a matter of law because "school assignment boundary maps" are <u>not</u> a predicate for liability under 42 U.S.C. § 3604.

### IV.   CONCLUSION

Plaintiff's complaint is an unsupported theory that lacks merit—an effort to pigeonhole the School Board into liability under a statute that does not have any bearing on its actual activities. Allowing this case to proceed would effectively cause *all* activities that have any impact on housing prices (regardless of how distant) to fall within the Fair Housing Act. That request goes too far, and the School Board requests final judgment in its favor.

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant

16