# United States District Court
## For The Middle District of Florida
## Tampa Division

Blake Warner, on behalf of himself

v.

The School Board of
Hillsborough County Florida

Case Number 8:23-CV-181-SDM-JSS

# Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings

(i)

# Table of Contents

I  Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

II  Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

III  Pro Se Liberal Construction . . . . . . . . . . . . . . . . . . . . . .  2

IV  Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

1.  Plaintiff Need Only Plead a Prima Facie Case at the Pleading Stage . . . . .  2

2.  Chevron's Deference . . . . . . . . . . . . . . . . . . . . . . . . .  3

V  Settlement Release does not Apply . . . . . . . . . . . . . . . . . . . .  3

VI  Proximate Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

1.  History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    A.  *City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506-WPD (S.D. Fla. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    B.  *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262 (11th Cir. 2015) . . .  4

    C.  *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 (2017) . . . . . . . .  5

    D.  *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260 (11th Cir. 2019) . . .  5

2.  The First Step . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

3.  Holmes Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    A.  the ability to distinguish the damages attributable to the violation, as distinct from other, independent, factors . . . . . . . . . . . . . . . . . .  7

B.   the risk of multiple recoveries; and . . . . . . . . . . . . . . . . . . . . . . 8

C.   whether more direct plaintiffs could be counted on to vindicate the law as private attorneys general. . . . . . . . . . . . . . . . . . . . . . . . . 8

4.  Foreseeability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5.  Relaxed Proximate Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII  The Amended Complaint invokes § 3604(a) . . . . . . . . . . . . . . . . . . . 10

VIII  The "provision of services" prong of § 3604(b) applies to the School Board 10

IX  24 C.F.R. § 100 Imparts Liability to the School Board . . . . . . . . . . . . 10

1.  § 100.7(a)(1) "Liability" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2.  § 100.65(a) "Discrimination in Terms, Conditions, Privileges, Services, and Facilities" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3.  § 100.70(a) "Restrict Housing" . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4.  § 100.70(b) "Discriminate in Services" . . . . . . . . . . . . . . . . . . . . . 13

X  Aggrieved Person . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XI  Distinguish . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.  Gourlay v. Forest Lake Estates Civic Association, No. 8:02-cv-1955-T-30TGW (M.D. Fla. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

2.  Roy v. Board of County Com'rs Walton County, Fla., No. 3:06-cv-95, 2007 WL 3345352 (N.D. Fla. Nov. 9, 2007) . . . . . . . . . . . . . . . . . . . . . 15

XII  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# I  TABLE OF AUTHORITIES

CASES                                                                      Page

*Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S. Ct. 1991,*
  164 L. Ed. 2d 720 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bank of Am. Corp. v. City of Miami,*
  137 S. Ct. 1296 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . ii, 5, 9, 14

*Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) . . . . . . . . 3

*City of Miami v. Bank of Am. Corp.*,
  800 F.3d 1262 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . ii, 4

*City of Miami v. Bank of Am. Corp.*,
  No. 1:13-cv-24506-WPD (S.D. Fla. 2013) . . . . . . . . . . . . . . . . ii, 4

*City of Miami v. Wells Fargo & Co.*,
  923 F.3d 1260 (11th Cir. 2019) . . . . . . . . . . . . . . . . . . . . ii, 5, 6, 14

*Gibson v. JetBlue Airways Corp., No. 20-10943,*
  at *8 (11th Cir. Nov. 18, 2021) . . . . . . . . . . . . . . . . . . . . . . . 2

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) . . . . . . . . . . . . . 14

*Hemi Group, LLC v. City of New York, NY, 559 U.S. 1, 130 S. Ct. 983,*
  175 L. Ed. 2d 943 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 112 S. Ct.*
  *1311*, 117 L. Ed. 2d 532 (1992). . . . . . . . . . . . . . . . . . . . . . 5, 7

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) . . . . . . . . . . . . . . . 6

*Jackson v. Okaloosa County, 21 F.3d 1531*, 1542 (11th Cir. 1994) . . . . . . . . 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118,*
  133 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Molina v. Aurora Loan Services, LLC, 635 F. App'x 618*,
  13 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

CONSTITUTIONAL PROVISIONS, STATUTES AND RULES

OTHER AUTHORITIES

## II   INTRODUCTION

*Defendant* moved pursuant Rule 12(c) challenging the legal sufficiency of the Amended Complaint because a) "they are barred by the parties' prior settlement agreement" and b) "the Fair Housing Act does not cover Plaintiff's allegations against the School Board".

The matter of the settlement agreement is straight forward, however the failure to state a claim argument is more nebulous, nonetheless *Plaintiff* can roughly make out four arguments:

1. Appears to inartfully plead a *proximate cause* challenge.

2. Incorrectly assumes that the Amended Complaint only invokes § 3604(b).

3. The "provision of services" prong of § 3604(b) does not apply to the School Board.

4. C.F.R. § 100.70(d)(5) lists out government liability which does not apply to the School Board.

It is important to note that *Defendant* failed to present any argument related to 42 U.S.C. § 3604(a), which the Amended Complaint asserted in ¶ 80 and 82: "or otherwise made housing unavailable by pricing minorities out of south tampa due to unlawful pricing manipulation". This Rule 12(c) motion is due to be denied based on this omission alone.

Because of the broad interpretation of the FHA, the only analysis this Court really needs to perform is whether a) *Plaintiff* sufficiently plead that *Defendant* "otherwise made housing unavailable" b) because of race/color and c) whether *Plaintiff* sufficiently plead *proximate cause*. All other arguments are just noise, but none-the-less the undersigned will address them in turn.

1

# III   Pro Se Liberal Construction

*Pro se* complaints are to be liberally construed. *see* Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

# IV   Standards

## 1.   Plaintiff Need Only Plead a Prima Facie Case at the Pleading Stage

"'The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context.' Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 843 n.11 (11th Cir. 2000)." *Gibson v. JetBlue Airways Corp., No. 20-10943*, at *8 (11th Cir. Nov. 18, 2021).

"The plaintiff can establish a claim of ... race discrimination through direct evidence or circumstantial evidence. Alvarez, 610 F.3d at 1264. Where a plaintiff supports her § 1981 discrimination claim using circumstantial evidence, we generally apply the McDonnell Douglas burden-shifting framework. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174, 1181 (11th Cir. 2010)." *Id.*

"To evaluate a claim of discrimination under the FHA, we use the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)" *Molina v. Aurora Loan Services, LLC, 635 F. App'x 618*, 13 (11th Cir. 2015).

"To withstand a motion to dismiss, a plaintiff asserting discrimination under the FHA need not allege specific facts establishing a prima facie case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). Still, in order to avoid dismissal, a plaintiff's complaint 'must provide enough factual matter (taken as true) to suggest intentional . . . discrimination.' Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (quoting Twombly, 550 U.S. at 556)." *Id.*

To be clear, the Amended Complaint proffers both direct and circumstantial evidence, but at this stage they are indistinguishable as *Plaintiff* must only plead a *prima facie* case for both.

## 2.   CHEVRON'S DEFERENCE

The applicable U.S. Department of Housing and Urban Development ("HUD") rules and interpretations of 42 U.S.C. 3601 et seq—codified in 24 C.F.R. § 100—are binding on this court through a *Chevron*'s deference. *see Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984). If the statute is ambiguous or silent on an issue, then a federal court must defer to an agency's interpretation of a statute so long as it is "permissible".

# V   SETTLEMENT RELEASE DOES NOT APPLY

*Defendant* misrepresents the release as "broad" and "extremely broad", when the plain language only releases claims "specifically related J.W.'s education, services, AND educational program" (emphasis mine). The conjunctive "and" means all three must be present which *Defendant* did not and can not allege.

Even if you overlook that nit, and focus solely on the narrow excerpt *Defendant* quoted out of context ("specifically related J.W.'s education"), this lawsuit is *generally* challenging the assignment of *all* students in *South Tampa*, and is thus not *specifically* related to J.W.'s education. J.W. is neither a party nor referenced at all in the Amended Complaint.

Indeed *Plaintiff* could bring the exact same lawsuit even if J.W. did not exist, because the claim is not predicated on J.W. at all, but rather the assignment of *all* students in *South Tampa*. Even a childless person could bring the *exact* same claim.

The release itself gives examples of the types of claims that the parties expected to be released: "all claims for services, supports, therapies, evaluations, tutoring, training, compensatory education or services". These are all claims or relief associated with I.D.E.A. and Section 504 litigation which is what the underlying litigation was about. Nothing in the agreement either expresses or implies that the release went beyond I.D.E.A. and Section 504 claims, much less to housing discrimination claims.

The nonsensical interpretation of the release that *Defendant* is asking this court to

3

adopt would also preclude *Plaintiff* from bringing a premise liability claim against the school board if he had a slip-and-fall at J.W.'s school.

# VI  PROXIMATE CAUSE

"The proximate-cause inquiry is not easy to define, and over the years it has taken various forms; but courts have a great deal of experience applying it, and there is a wealth of precedent for them to draw upon in doing so. See Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 838-839, 116 S. Ct. 1813, 135 L. Ed. 2d 113 (1996); Pac. Operators Offshore, LLP v. Valladolid, 565 U.S. 207, 224-225, 132 S. Ct. 680, 181 L. Ed. 2d 675, 691 (2012) (Scalia, J., concurring in part and concurring in judgment). Proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits.

Put differently, the proximate-cause requirement generally bars suits for alleged harm that is "too remote" from the defendant's unlawful conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118*, 133 (2014)

## 1.  HISTORY

### A.  *City of Miami v. Bank of America 2013*, NO. 1:13-CV-24506-WPD

On December 13, 2013, the City of Miami brought a complex Fair Housing Act action against Bank of America alleging violations of 42 U.S.C. § 3604(b) and § 3605(a) by engaging in discriminatory mortgage lending practices that resulted in a disproportionate and excessive number of foreclosures in minority neighborhoods, causing the city—inter alia—to suffer financial loss in the form of decreased tax revenue from depreciated property values.

The trial court dismissed the action stating that the City had failed to demonstrate proximate cause between the Bank's unlawful conduct and the injuries suffered by the City.

### B.  *City of Miami v. Bank of America 2015*, 800 F.3D 1262

The City appealed, and the Eleventh Circuit reversed holding that proximate cause had been met with the foreseeability test.

### C. *Bank of Am. Corp. v. City of Miami*, 137 S. Cᴛ. 1296

The Bank appealed to the Supreme Court, which then reversed the Eleventh Circuit holding that foreseeability alone does not satisfy the proximate cause element of a FHA claim. and imposed the more stringent "direct relation standard" which necessitates a direct relationship between the injurious conduct and alleged harm. While the Court declined to outline the precise boundaries of that standard, it did offer some guidance:

1. foreseeability *alone* will not satisfy the proximate cause element;

2. the proximate cause theory does not generally find liability "beyond the first step" of a causal chain;

3. the two considerations for expanding proximate causation beyond the first step are:

    (a) the nature of the statutory action; and

    (b) the statute's policy goals; and

    (c) the consideration of what is "administratively possible and convenient."

4. that proximate cause turns on "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits".

5. the Court cited three cases in emphasizing the principle of "directness" over "foreseeability": *Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 112 S. Ct. 1311*, 117 L. Ed. 2d 532 (1992)., *Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S. Ct. 1991*, 164 L. Ed. 2d 720 (2006). and *Hemi Group, LLC v. City of New York, NY, 559 U.S. 1, 130 S. Ct. 983*, 175 L. Ed. 2d 943 (2010). abc.

### D. *City of Miami v. Wells Fargo*, 923 F.3ᴅ 1260

On remand from the Supreme Court, the Eleventh Circuit *again* found proximate-cause for the city by going beyond the "first step" (opinion vacated as moot after the parties settled).

"It is clear, though, that proximate cause does not always cut off at the first step after a violative act. A general tendency is not the same as a hard and fast rule that dictates the outcome in every case ..." *Id*

"If, in fact, there were a hard and fast 'only the first step' rule limiting liability, a plaintiff homeowner who was forced into foreclosure on account of a predatory bank loan that violated the Fair Housing Act would never be able to plausibly allege that the foreclosure was proximately caused by the bank's predation" *Id*

"the FHA has a broad remedial purpose, is written in decidedly far-reaching terms, and is perfectly capable of accommodating the type of aggregative causal connection that the City has identified between the Banks' alleged misconduct and financial harm to Miami." *Id*

"Most obviously, the '[t]he language of the [FHA] is broad and inclusive.' Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). It provides for suit by "an aggrieved person," 42 U.S.C. § 3613(a)(1)(A), (c)(1), expansively defined as 'any person who claims to have been injured by a discriminatory housing practice,' § 3602(i)" *Id*

City of Miami v. Wells Fargo & Co., 923 F.3d 1260, 1278 (11th Cir. 2019)

## 2.   THE FIRST STEP

It is well established in the antitrust context that the "first step" are the direct buyers. *see Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). *Plaintiff* is undisputably the direct home buyer as he purchased a home in October 2022, and he alleges that he was priced out of *South Tampa* regarding that home purchase.

Even if this court finds that the causal chain goes beyond the first step, the Eleventh Circuit on remand from *Miami* none-the-less went beyond the first step again in *City of Miami v. Wells Fargo*, 923 F.3d 1260 (opinion was vacated as moot after the parties settled) as argued above.

The causal chain in *Miami* looked like this:

1. the bank engaged in discriminatory lending practices;

2. the lending practices triggered higher default rates;

3. the default rates caused higher foreclosure rates;

4. the foreclosure rates led to a decrease in property values; and

5. this harmed the City because it ultimately led to less property tax revenue.

The causal chain in the instant action looks like this:

1. the School Board engaged in discriminatory school assignment practices;

2. the assignments lead to an increase in property values in white neighborhoods;

3. *Plaintiff* was harmed by being priced out of those white neighborhoods.

The causal chain in *Miami* was longer and more attenuated than the instant case, and the Eleventh Circuit *still* found proximate cause, therefore it is almost certain they would find proximate-cause in this instant action.

### 3.   Holmes Factors

The *Holmes Factors*[1] weigh heavily in favor of *Plaintiff*:

#### A.   the ability to distinguish the damages attributable to the violation, as distinct from other, independent, factors

This action is seeking equitable relief only, there are no damages. To whatever extent that we need to quantify the degree of pricing manipulation, that is possible using statistical analysis of the sales prices of homes and the schools they are assigned to. The results can be controlled to exclude external factors affecting property values by closely studying the sales prices of homes that flip from one school to another, as well as expert testimony from property appraisers and other real estate professionals.

The Eleventh Circuit has held that damages relates related to property values are able to be handled by the courts. City of Miami v. Wells Fargo & Co., 923 F.3d 1260, 1281 (11th Cir. 2019) ("In no small part, we conclude that the

---

[1] *see Holmes v. Securities Investor Protection Corporation*, 117 L. Ed. 2d 532

City has adequately—that is to say, plausibly—pled proximate cause because we find it entirely practicable and not unduly inconvenient for the courts to handle damages like the City's tax revenue injury.")

**B.   THE RISK OF MULTIPLE RECOVERIES; AND**

Again, as this action only seeks equitable relief, multiple recoveries are not possible.

**C.   WHETHER MORE DIRECT PLAINTIFFS COULD BE COUNTED ON TO VINDICATE THE LAW AS PRIVATE ATTORNEYS GENERAL.**

*Plaintiff* was an African-American prospective home-buyer who did in-fact purchase a Home in October 2022.  As far as the FHA goes, you cannot get more direct than that.

## 4.   FORESEEABILITY

It is common knowledge by prospective home-buyers and renters alike that the value of a property is significantly linked to the schools that are assigned to it because people are willing to pay a significant premium to get into elite public schools. And people without children pay the premium because the higher property values that the young families pay, increases the price of nearby properties through comps which creates barriers to minorities to enter that neighborhood.  In sum, young families pay the price premium to get their children into elite schools and people without children pay the premium to live in a segregated neighborhood: one hand jerks off the other.

The Hillsborough County Public Schools superintendent proudly admits to knowing that they are manipulating property values in these affluent areas:

"We moved the school district from number 35 in the state to number 19th. We reduced the number of historical "D" and "F" schools in this school district.  The number of "D" and "F" schools we reduced the number of persisting and low performing schools. we increased the percentage of A, B, and C schools.  And what that does is, that increases property values.  The

more we continue to address our high quality education within within every-
one of our schools" [2]

Multiple news reports link school assignments to property values:

"That's why I bought my house in this area, for the [A-rated] schools," Elena
Ivani said, a parent whose sons will now attend a C-rated high school under
the plan ... Ivani said when she and her husband were house hunting eight
years ago, they were only looking at A-rated public school districts ... I'm
hoping my home's value at least stays level, but in all honesty, would you
pay a premium for a C-rated school?" [3]

"Tampa realtor Amy Greenfield said home values are higher in neighbor-
hoods assigned to better schools, and people will pay more to be in an area
with 'A' rated schools." [4]

"Parents have started multiple petitions against the redistricting plan, citing
concerns over the school choices, emotional impact on children and property
value." [5]

## 5.   RELAXED PROXIMATE CAUSE

The Supreme Court imposed a more stringent *direct relation* standard in *Bank
of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 for FHA proximate cause pleadings
only for *damages*. All of their language around the matter surrounded *damages*.
Nothing in the opinion expressed or implied that actions for equitable relief should
be held to the higher standard. Concerns about multiple recoveries and calculating
damages simply are not applicable to equitable claims. And jettisoning these more
stringent requirements for equitable relief would further the statutory intent of the
FHA to desegregate housing.

Thus this instant action should be held to the less stringent Foreseeability stan-
dard that the Eleventh Circuit originally applied to FHA actions.

---

[2]https://www.wfla.com/news/hillsborough-county/hillsborough-county-schools-superintendent-to-present-re-
zoning-recommendation-to-school-board/

[3]https://www.wtsp.com/article/news/local/hillsboroughcounty/hillsborough-county-schools-redistricting-plan-
property-values/67-979bab7e-012f-437e-8530-26a69ae58958

[4]https://www.baynews9.com/fl/tampa/news/2023/01/06/hillsborough-proposed-school-boundary-changes-
impact-on-property-value

[5]https://www.fox13news.com/news/hillsborough-county-parents-start-petitions-against-proposed-new-school-
boundaries

# VII   The Amended Complaint invokes § 3604(a)

The Eleventh Circuit has affirmed liability under § 3604(a) for merely "affecting the availability" of housing. The manipulation of property values clearly affects the availability of housing when it causes housing segregation:

> "The complaint in this case adequately states a cause of action under § 3604(a), since this suit alleges race-based discrimination affecting the "availability" of public housing within the Authority's territory. The Fair Housing Act is concerned with both the furtherance of equal housing opportunity and the elimination of segregated housing." *Jackson v. Okaloosa County, 21 F.3d 1531*, 1542 (11th Cir. 1994)

# VIII   The "provision of services" prong of § 3604(b) applies to the School Board

As outlined below in section § 100.65(a) "Discrimination in Terms, Conditions, Privileges, Services, and Facilities", HUD's interpretation of § 3604(b) does not require that the tortfeasor be directly involved in the real-estate transaction. HUD gives several examples of liability that do not involve direct involvement in the real-estate transaction: § 100.65(b)(2), (4), (5), (6), and (7). All of those examples, given their plain meaning, could apply to post-sale conduct as well.

# IX   24 C.F.R. § 100 Imparts Liability to the School Board

## 1.   § 100.7(a)(1) "Liability"

§ 100.7(a)(1)(i) imparts direct liability under the FHA for a "person's own conduct that results in a discriminatory housing practice". It does not state that the person must be directly involved in a real-estate transaction, only that their conduct resulted in a discriminatory housing practice. As a practical matter, the *proximate cause* element limits how far the ripple can flow from the alleged conduct and the discriminatory housing practice.

§ 100.7(a)(1)(ii) imparts direct liability under the FHA for "failing to take prompt action to correct and end a discriminatory housing practice by a third-party". At the very least, *Defendant* is aware that it's school boundary assignment maps are used by third parties (such as white home buyers) to perpetuate housing segregation. *Defendant* has, and always had, the power to fix their school boundary maps to fix this issue, yet has refused to do so.

## 2.   § 100.65(a) "Discrimination in Terms, Conditions, Privileges, Services, and Facilities"

Section A of this rule states:

> "It shall be unlawful, because of race ... to impose different terms, conditions or privileges relating to the sale or rental of a dwelling or to deny or limit services or facilities in connection with the sale or rental of a dwelling." 24 C.F.R. § 100.65(a)

.

*Defendant* misrepresents *Plaintiff*'s position and the rule by focusing on "in connection with the sale or rental of a dwelling". The rule is actually two disjunctive clauses:

1. to impose different terms, conditions or privileges relating to the sale or rental of a dwelling; or

2. to deny or limit services or facilities in connection with the sale or rental of a dwelling.

The first clause applies because the school assigned to a property is a "term, condition, or privilege" related to the sale or rental of a dwelling. As the Amended Complaint alleges, the assigned school is one of the most important factors a prospective buyer considers when making real-estate purchasing decisions.

Likewise, second applies because the assigned schools are services or facilities connected to the sale or rental of a dwelling.

HUD gives the following example of what falls under this rule:

"Limiting the use of privileges, services or facilities associated with a dwelling because of race ... of an owner, tenant or a person associated with him or her." 24 C.F.R. § 100.65(b)(4)

*All* public schools in Hillsborough County are associated with a dwelling because the property taxes levied directly upon that dwelling are used to directly fund the schools, and are often paid at the closing of the real-estate transaction and through escrow accounts associated with those same transactions.  The School Board unlawfully denies minority neighborhoods access to closer white schools through the promulgated school boundary assignment maps that prevent children in those minority neighborhoods from enrolling at the white schools.

## 3.   § 100.70(a) "Restrict Housing"

Section A of this rule states:

"It shall be unlawful, because of race ... to **RESTRICT OR ATTEMPT TO RESTRICT THE CHOICES OF A PERSON** by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as **TO PERPETUATE, OR TEND TO PERPETUATE, SEGREGATED HOUSING PATTERNS**, or to discourage or obstruct choices in a community, neighborhood or development." (emphasis mine)" 24 C.F.R. § 100.70(a)

.

This binding HUD interpretation is unambiguous: you do not have to be directly involved in real-estate transactions—as *Defendant* would like this Court to believe—to be liable under the FHA.

This section is on-point because the Amended Complaint accuses the School Board of perpetuating segregated housing patterns through it's exercise of discretion in promulgating school boundary assignment maps. *see* Amended Complaint ¶ 49, 53, 80, 82.

The examples HUD gives remove any doubt that § 100.70(a) applies to the School Board:

> "Discouraging any person from ... purchasing or renting a dwelling because of race ... or because of the race ... of persons in a community, neighborhood or development." § 100.70(c)(1)

The Amended Complaint alleges that *Defendant* prices out minorities from white neighborhoods by unlawfully raising the property values in those neighborhoods. Raising the cost of specific homes would tend to discourage minorities from purchasing homes in those areas.

> "Assigning any person to a particular section of a community, neighborhood or development, or to a particular floor of a building, because of race." § 100.70(c)(4)

Individual schools are a section of the community, and the Amended Complaint alleges that *Defendant* assigns students to them based on race.

## 4.    § 100.70(b) "Discriminate in Services"

Section B of this rule states:

> "It shall be unlawful, because of race ... to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons." 24 C.F.R. § 100.70(b)

The examples HUD gives remove any doubt that § 100.70(b) applies to the School Board:

> "Refusing to provide municipal services or property or hazard insurance for dwellings or providing such services or insurance differently because of race ..." § 100.70(d)(4)

Schools are municipal services. By segregating students in minority neighborhoods, the school board is denying them access to municipal services that are provided to students in white neighborhoods.

> "Enacting or implementing land-use rules, ordinances, procedures, building codes, permitting rules, policies, or requirements that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of race ..." § 100.70(d)(5)

13

*Defendant*'s School boundary assignment maps are ordinances, procedures, policies, and/or implementations of address requirements that restrict or deny housing opportunities (or otherwise make unavailable) to minorities by unlawfully manipulating the property values in white neighborhoods to the point where significantly fewer minorities can afford to purchase or lease property in those neighborhoods.

## X  AGGRIEVED PERSON

*Defendant*'s position that "Plaintiff's allegations relate to interests in the property he owns, not the purchase of the property itself" is misplaced, not only because *Plaintiff* plead that he changed residences[6] (he in fact purchased a home in October 2022), but also because he plead "tester" standing which does not require him to actually or prospectively purchase, lease, or otherwise engage in any real-estate related transactions to have standing to sue under the FHA[7]. *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, . (1982) The FHA stretches Article III to the limits with it's definition of "aggrieved person". *see Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296.

> "'a congressional intention to define standing as broadly as it is permitted by Article III,' Trafficante, 409 U.S. at 209, 93 S.Ct. 364. The Court has also noted that later Congresses amended the FHA with full knowledge of the Court's broad readings and without changing the language the Court had construed so broadly. Bank of Am., 137 S.Ct. at 1303." *City of Miami v. Wells Fargo*, 923 F.3d 1260

## XI  DISTINGUISH

### 1.  GOURLAY V. FOREST LAKE ESTATES CIVIC ASSOCIATION, NO. 8:02-CV-1955-T-30TGW (M.D. FLA. 2003)

This case arose from a dispute between a homeowner and their Home Owners Association ("HOA") alleging adverse discriminatory actions taken by the HOA against the homeowner because they had taken in foster children *after* the sale of

---

[6] *see see* Amended Complaint ¶ 53
[7] *see see* Amended Complaint ¶ 50 - 52

the house. The instant action alleges discriminatory actions that occur and affect housing transactions *before* the sale.

There are generally two ways to be priced out of a neighborhood: a) through the initial cost of the home and b) through the manipulation of post-sale non-fixed costs such as property taxes and insurance. The first part, the initial cost of the home, implicates the actual sale of dwellings which places it outside of the purview of *Gourlay*. In addition, *Gourlay* was only concerned with one small provision of the FHA, whereas the instant action invokes parts of the FHA that *Gourlay* did not decide.

## 2.   ROY V. BOARD OF COUNTY COM'RS WALTON COUNTY, FLA., NO. 3:06-CV-95, 2007 WL 3345352 (N.D. FLA. NOV. 9, 2007)

This case arose from a dispute where a property owner alleged that the government denied his zoning permit to construct a wall for discriminatory reasons. The property owners' tenuous FHA theory was couched on their intention "to market their properties substantially, but not exclusively, to African-Americans and thus the defendants' obstruction has a harsher impact on African-Americans than whites." and he was trying to shoe horn his permit denial into a FHA claim. *Defendant* cited this case in support of it's proposition that "provision of services" ... "must relate to the sale of a dwelling, and **NOT JUST OWNERSHIP OF THE DWELLING.**" (emphasis mine). This is distinguished from the instant action because the Amended Complaint does not allege that prices were manipulated on owned properties by existing property owners, rather it alleges the price manipulation of properties that are for sale creating barriers to entry for minorities to purchase homes in white neighborhoods. In any event, the allegations in the Amended Complaint do relate to the sale of dwellings. *Plaintiff* also plead "tester" standing which falls outside of the scope of *Roy*.

# XII   Conclusion

While *Defendant* presents this action as "novel", represents that the sky would fall down if the Court finds liability, and generally airs grievances about the scope of the FHA, at it's core this case is really just another government discriminatory zoning case which is bread and butter for the FHA. This court need not try to limit the scope of the FHA, because the Supreme Court has already done that several times (most recently in *Miami*). That Court painstakingly deliberated on the guard rails for the FHA (as recently as *Miami*) and it is not for the *Defendant* or this court to second guess their judgment.

The fact is *Plaintiff* plead a prima facie case that *Defendant* is engaging in discriminatory zoning practices that are causing and/or perpetuating housing segregation in Hillsborough County, and *Plaintiff* has standing to sue them for that. No amount of *Defendant*'s bufuddling arguments will change that. For the foregoing reasons, the Court should deny *Defendant*'s Motion for Judgment on the Pleadings.

6-27-2023

Date

Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM