UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER and J.W.,

 Plaintiffs,

v.               Case No. 8:23-cv-00181-SDM-JSS

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

 Defendant.
_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant, The School Board of Hillsborough County, Florida (the "School Board") responds in opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 40) filed July 13, 2023 (the "Motion").

### I. INTRODUCTION

This Court should summarily deny Plaintiff's Motion because Mr. Warner's *pro se* Motion for an injunction on behalf of his minor child, J.W., violates this Court's prior Order. *See* Doc. 37 (Order originally filed in Case No. 8:23-cv-1029 (the "Second Case") on July 5, 2023, and also filed in this case as Doc. 37 on July 6, 2023) ("if Warner intends to appear as plaintiff on behalf of his minor child and assert his child's claims, Warner must appear through a lawyer. … Warner may amend the motion for preliminary injunction **after a**

1

**lawyer appears** and amends the complaint.") (emphasis added). Independently, this Court should also deny Plaintiff's Motion because it fails to show any of the four required elements for seeking an injunction.

## II.   STANDARD FOR DETERMINATION

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.,* 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *All Card Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). An "[a]buse of discretion occurs when the court . . . bases its decisions upon considerations having little factual support." *Id.* (quoting *U.S. v. Varner*, 13 F.3d 1503, 1508 (11th Cir. 1994)).

## III.   MEMORANDUM OF LAW

To obtain a preliminary injunction, Plaintiff must show: (1) he is *substantially* likely to succeed on the merits of his action, (2) he will suffer irreparable harm in the absence of an injunction, (3) the equities weigh in his favor as opposed to the School Board's, and (4) the public's interest does not outweigh his interest in the injunction. Local Rules 6.01(b), 6.02(a)(1).[1]

---

[1] Plaintiff was required to submit a proposed order with his Motion. Although he submits one, Doc. 40-1, Plaintiff's proposed order lacks any analysis of purported evidence or the discussion normally found in these types of orders addressing the "drastic remedy" of a preliminary injunction. *Sierra Club v. Ga. Power Co.*, 180 F.3d 1309, 1310–11 (11th Cir. 1999) (noting preliminary injunctions are a "drastic remedy"); *see also Am. Civil Liberties Union of*

Because Plaintiff fails to meet any of those four requirements, this Court should deny Plaintiff's Motion.

### A. Plaintiff cannot demonstrate a substantial likelihood of success on the merits.

Plaintiff cannot demonstrate a substantial likelihood of success on the merits for the only claim at issue in the Motion (Count III). Plaintiff ignores this Court's prior Order and ignores the School Board's dispositive arguments, previously filed in the Second Case against this same claim.

#### 1. This Court's prior Order explains why the Motion must be summarily denied as Plaintiff continues to proceed *pro se* on behalf of his minor child.

Plaintiff Mr. Warner filed his Motion for preliminary injunction *pro se*, disregarding this Court's prior Order. *See* Doc. 37, p. 4 ("Warner may amend the motion for a preliminary injunction **after a lawyer appears**") (emphasis added). Plaintiff's Motion relates solely to Count III, styled: "20 U.S. Code § 1703(c) Closest School." *See* Doc. 40-1, p.2, ¶ 2 (addressing only Count III in Plaintiff's proposed order); Doc. 40, pp. 4-6 (addressing only "20 U.S. Code § 1703(c): EEOA Closest School" in Plaintiff's discussion of the merits factor).

Count III of Plaintiff's Second Amended Complaint (one of nine claims) is substantially identical to Count I of Mr. Warner & J.W.'s Amended Verified Complaint from the dismissed, Second Case. *Compare* Doc. 38, ¶¶ 184-193 *with*

---

*Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (addressing the many intricacies of a preliminary injunction motion in a 50+ page opinion).

71718661;2

Second Case Doc. 19, ¶¶ 22-30. The only substantive change is Plaintiff's addition of a single paragraph suggesting Plaintiff has standing to bring this claim, relating to his son's education, in his own name. *See* Doc. 38 ¶ 193 (alleging the "School Board Denied Mr. Warner an education opportunity by assigning his sixth grade child J.W. to Adams Middle School for the 2023-2024 school year, instead of Carrollwood K-8."). This self-serving allegation does not change the substance of this claim, which relates solely to the school Plaintiff's minor child, <u>not</u> Plaintiff, attends. Thus, in Count III Plaintiff asserts an injury solely to his child, J.W., and not to himself. *Id.*

> Although a parent may appear as plaintiff on behalf of a minor child, who lacks the capacity to sue, "parents who are not attorneys may not bring a *pro se* action on their child's behalf." *FuQua v. Massey*, 615 Fed. App'x 611, 612 (11th Cir. 2015) (quoting *Devine v. Indian River Cnty. Sch. Bd.*, 121 F.3d 576, 581 (11th Cir. 1997) *overruled in part on other grounds, Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007)). Thus, if Warner intends to appear as plaintiff on behalf of his minor child and assert his child's claims, Warner must appear through a lawyer. (Again, Warner may assert *pro se* claims on behalf of himself only.)

Doc. 37, pp. 3-4. Accordingly, Plaintiff, still proceeding *pro se*, cannot assert Count III. *Id.* Because he is unable to assert Count III at all in a *pro se* capacity, Plaintiff cannot establish a substantial likelihood of success on the merits.

4

71718661;2

### 2. Attempting to show standing, Plaintiff's Motion conflates his claims.

Plaintiff's Motion argues "Plaintiffs[2] are substantially likely to prevail" on only one of the numerous claims that now appear in the second amended complaint—the "closest school" theory under 20 U.S.C. § 1703(c). Doc. 40, at 4–6. But when addressing standing, Plaintiff discusses the "property values of his home," *see* Motion, p.3, which relates solely to other counts, such as the Fair Housing Claims. *See* Doc. 38, Count I and II. In other words, Plaintiff relies on one claim for the supposed merits, and entirely different claims for standing.

The School Board denies any of the claims have merit, as further reflected in the dispositive motions the School Board filed in response to Plaintiff's respective pleadings in both cases, *see* Doc. 34 (the School Board's motion for judgment on the pleadings) and Second Case Doc. 18 (the School Board's motion to dismiss), and which will be asserted again in response to the current pleading. But at a minimum, Plaintiff's conflating the different legal theories—one to assert the right to bring this action and the other for the purported merits—is unpersuasive and fails to establish the potential for any success, let alone a substantial likelihood of success, on the merits of Count III.

---

[2] Even if his use of "Plaintiffs" is a scrivener's error, the substance of the Motion and Count III show Mr. Warner is improperly asserting a claim *pro se* on behalf of another.

Plaintiff's failure to address the Court's order dismissing his Equal Educational Opportunities Act claim and his effort to instead circumvent it with the Fair Housing Act claim is fatal to his request for a preliminary injunction. *See* Doc. 37, at 3–4; *see also Stephens v. Goggans*, 2:14-cv-00569-MEF, 2014 WL 3385072, at *2 (M.D. Ala. July 9, 2014) ("Plaintiff's inability to even state a claim within his Complaint evidences he is unable to meet his burden of showing a substantial likelihood of success on the merits of his claims.").[3]

### 3. Plaintiff is unlikely to succeed on the Fair Housing Act claim.

To the extent Plaintiff intended to incorporate his Fair Housing Act claims for purposes of arguing his ability to maintain this litigation, the Motion still fails to establish a substantial likelihood of success on the merits. Again, the School Board previously submitted a motion for judgment on the pleadings with respect to these claims and anticipates raising the same arguments in its forthcoming motion to dismiss the Second Amended Complaint. *See* Doc. 34, at 5–15 (explaining the Fair housing Act does not apply to the School Board's purported activities in this situation).

---

[3] To be clear, surviving a motion to dismiss carries a lesser burden than demonstrating a "substantial likelihood of success on the merits" for purposes of a preliminary injunction. *See generally Williams v. Mich. Dept. of Corrections*, No. 2:10-cv-00130, 2011 WL 1542845, at *1 (W.D. Mich. Apr. 25, 2011) (quoting *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010)) The prior dismissal of Plaintiff's complaint and scattershot manner in which he re-pled it in this action casts doubt on his ability to meet the higher preliminary injunction standard.

6

The School Board is a constitutional entity in Florida tasked with "operat[ing], control[ling], and supervis[ing] all free public schools within the school district." Fla. Const. art. IX, § 4. In contrast, the Fair Housing Act applies to (1) sales of homes; (2) rentals of homes; (3) advertisements regarding homes for sale or rent; (4) the terms, conditions, or privileges of home sales or rentals; or (5) making a home unavailable. 42 U.S.C. § 3604. Plaintiff's entire theory of supposed liability is his assertion that the School Board assigns schools to "pric[e] minorities out of certain neighborhoods . . . ." Doc. 38 ¶¶ 181, 183.

But by Plaintiff's logic, nearly every action by every party could be swept into the Fair Housing Act, and courts have uniformly rejected that approach. For example, if a company builds a new office building in a suburb, the availability of those jobs is likely going to affect housing prices in the area. Similarly, improving a park or other community space in the area might *affect* housing prices, thereby creating Fair Housing Act liability under Plaintiff's theory. Such an expansive reading of the Fair Housing Act is unsupported.

Rather, courts emphasize that the Fair Housing Act is concerned with activities directly relating to the sale or rental of dwellings. *See, e.g.*, *Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222,

7

1233 (M.D. Fla. 2003)[4] (emphasis added) ("This Court need not reach the question of whether Plaintiffs needed to be evicted to violate Section 3604(b), because this Court concludes that Section 3604(b) only prohibits the discriminatory provision of services and facilities *in connection with a sale of a dwelling*."); *see also Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004) (dismissing complaint involving services from a homeowners association); *Clifton Terrace Associates, Ltd. V. United Technologies Corp.*, 929 F. 2d 714, 719–20 (D.C. Cir. 1991) (affirming dismissal of Fair Housing Act claims against a company that merely repaired elevators at a residential building); *Roy v. Board of County Com'rs Walton County, Fla.*, No. 3:06-cv-00095, 2007 WL 3345352 (N.D. Fla. Nov. 9, 2007) (quoting *Edwards v. Media Borough Council*, 430 F. Supp. 2d 445, 452 n.14 (E.D. Pa. 2006)) (noting that where the Fair Housing Act discusses "services," those services "must relate to the sale of a dwelling, and not just ownership of the dwelling").

Additionally, the language from the *Clifton Terrace* decision is instructive regarding the limits of the Fair Housing Act: "The fact that . . . a

---

[4] "After the *Gourlay* decision was issued, the parties settled and the court withdrew the opinion. [*See* 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003).] The order's reasoning and analysis, however, remain instructive and persuasive." *Schwarz v. Villages Charter Sch., Inc.*, No. 5:12-cv-00177, 2014 WL 12623013, at *6 (M.D. Fla. May 23, 2014) (recommending dismissal of Fair Housing Act claim for handicap discrimination).

8

discriminatory practice could have an impact on the use and enjoyment of residential property rights, however, does not necessarily mean that it will also be redressable under Title VIII." 929 F.2d at 720; *see also Edwards*, 430 F. Supp. 2d at 451 ("The Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing."). There is no allegation here that the School Board took any direct actions with respect to housing; at most, its actions are alleged only to have had an indirect effect just as might be the case with a transportation agency widening a road.

Contrast this situation with the types of situations that *might* lead to a governmental entity being liable under the Fair Housing Act. For example, 24 C.F.R. § 100.70(d)(5) (with emphasis added) prohibits "[e]nacting or implementing *land-use* rules, ordinances, procedures, building codes, permitting rules, policies, or requirements that restrict or *deny housing opportunities* or otherwise make *unavailable or deny dwellings* to persons because of race, color, religion, sex, handicap, familial status, or national origin." And other decisions have likewise rejected efforts to say that simply *affecting* house prices creates liability.

For example, in *Babin*, a group of people living in a community opposed a proposed group home and "began to engage in activities designed to prevent the institution of the group home," such as picketing, arranging for media coverage, and threatening boycotts. *Michigan Protection and Advocacy*

9

*Service, Inc. v. Babin*, 799 F. Supp. 695, 701 (E.D. Mich. 1992). The complaint asserted several different claims, *id.* at 703-04, including a theory of expanding the Fair Housing Act claims to enclose those who "*indirectly* deprive a protected individual of housing." *Id.* 711-12 (emphasis added). The court rejected this theory, stating:

> The second part of § 3604(f)(1) applies to those who "otherwise make unavailable" a dwelling. Although this phrase has been referred to as a "catchall," Schwemm § 13.4(1), its scope is not limitless. By its terms, it is limited to those individuals who are in a position to make a dwelling unavailable. *To be in this position, a person must be able to exercise influence over or control the disposition of the dwelling*. Without this power, the person might be able to annoy a prospective tenant, but would be unable to make a dwelling unavailable.
>
> . . . .
>
> This Court agrees with the reasoning and conclusions of the *Devereux* and *Steptoe* courts. *Section 3604(f)(1) covers only those actors who are in a position directly to make a dwelling unavailable—that is, a seller, his agent, or another person or entity integrally involved in the sale or financing of real estate. An expansion of the statute beyond this limit would contravene the language of § 3604(f)(1) as well as common sense.* Because the Neighbors had no control over the Home, they could not and did not directly deprive Plaintiffs of housing. Therefore, they are not covered by § 3604(f)(1). The Court rejects all § 3604(f)(1) claims against the Neighbors.

*Id.* at 711–14 (emphasis added).

This case represents the same type of unwarranted invitation for the Court to dramatically expand the Fair Housing Act well beyond its language, Congress's intent, and common sense. *Id.* at 714. The Court should decline that

10

71718661;2

invitation, starting with a denial of Plaintiff's requested injunction. Plaintiff cannot plausibly argue at this point that he has a likelihood of success on his Fair Housing Act claims, much less a "substantial" likelihood of success.

### 4. Plaintiff is unlikely to succeed on the Equal Educational Opportunities Act claim.

Even if Plaintiff had standing or retained counsel to assert the Equal Educational Opportunities Act claim on behalf of his minor child, Plaintiff cannot establish a substantial likelihood of success on the merits. Previously with respect to this EEOA claim, Plaintiff acknowledged that the School Board assigned his home not based on race or any other protected classes, but rather by his neutral "home address." Second Case Doc. 1 ¶ 8. Perhaps recognizing that this admission is fatal to his claim, Plaintiff omits it in this action despite including it in a judicial admission previously. *Compare* Doc. 38 ¶ 58 *with* Second Case Doc. 19 ¶ 10. *See, e.g.*, *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718–19 (11th Cir. 2011) (internal citations omitted) (noting admissions in pleadings are "proof possessing the highest possible probative value"). In other words, Plaintiff acknowledged there was *no* decision based on the protected classes listed in the Equal Educational Opportunities Act.

The case law interpreting Section 1703(c) of the Equal Educational Opportunities Act supports this conclusion. In *U.S. v. Hinds County School Board*, the Fifth Circuit (which later split into the Eleventh Circuit) noted the

11

definition of "segregation" in 20 U.S.C. § 1720(c) as being the operation of schools "in which students are wholly or substantially separated . . . on the basis of race, color, sex, or national origin . . . ." 560 F.2d 619, 624 (5th Cir. 1977).[5] The court then elaborated: "Thus, among the schools within a system, Congress intended to prohibit the *assignment of students on the basis of race, color, sex, or national origin*." *Id.* The School Board does *not* do so, and Plaintiffs' allegations are insufficient to state a claim. Again, Plaintiff voluntarily chose to buy his house despite knowing it was assigned to Adams Middle School and despite having previously released all claims against the School Board as of May 2022, at which time his home had the same assignment as it does now. *Infra* Section III.A.5.

Moreover, Plaintiff does *not* allege the boundaries with respect to his home are materially different than those previously approved when the district was declared unified. *See Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cty., Fla.*, 244 F.3d 927 (11th Cir. 2001); *infra* Section III.A.5. And even if the boundaries have been modified, Plaintiff does *not* allege there have been material changes to the assignment for his residence, which is the predicate for his claim *nor* to his residence after he purchased it.

---

[5] *See, e.g., Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting pre-1981 decisions of the Fifth Circuit as binding for precedential purposes in the Eleventh Circuit).

12

71718661;2

5.       **Plaintiff's prior settlement agreement is fatal.**

Plaintiff cannot establish a substantial likelihood of success on the merits because Plaintiff previously entered into a settlement agreement with the School Board, through which Plaintiff and J.W. released all claims relating to J.W.'s education. Doc. 30-1, Ex. 1, at 2 ¶ 5.

The School Board previously explained that Plaintiff's assertion of Fair Housing Act claims was a futile effort to circumvent the release provided in the settlement agreement. *See* Doc. 34, pp. 4-5. While Plaintiff disputes this argument, Plaintiff cannot reasonably contend the Equal Educational Opportunities Act claim contained within Count III (the predicate for the Motion) does not relate to J.W.'s education. And thus, Plaintiff cannot establish a substantial likelihood of success on the merits because Plaintiff has not asserted any change to J.W.'s education for the 2023-2024 school year (the year at issue in the Motion) by the School Board after the release provided under the settlement agreement.

Although Plaintiff's operative pleading now spans over fifty pages and 237 paragraphs, *see generally* Doc. 38, it fails to address this defense, which the School Board raised. Specifically, Plaintiff asserted J.W. was assigned to Adams Middle School, *see* Motion, p. 4, ¶ 1, but has never asserted (and cannot honestly assert) that this assignment is different than the assignment for his current residence at the time he signed the agreement. *See generally id.*;

Doc. 34, at 4. And he has never explained how his Fair Housing Act claim is anything but an indirect effort to circumvent the settlement, given that his complaints have each been focused on his child's education. *E.g.*, Doc. 38 ¶ 8.

Second, the School Board has noted the Eleventh Circuit's prior decision in *Manning ex rel. Manning v. School Board of Hillsborough County, Florida*, 244 F.3d 927, 947 (11th Cir. 2001). In that case, the Eleventh Circuit declared the Hillsborough County school system unitary, and Plaintiff does not allege that the school boundaries have changed materially since that time. *See generally* Doc. 38. The School Board maintains that the boundaries drawn since *Manning* have complied with all relevant laws. But at a minimum, the prior federal oversight of the boundaries and recognition the school district is unitary casts doubt on Plaintiff's ability to succeed on the merits in this action. *Id.* at 934, 946–47 (finding the School Board acted in good faith to eliminate discrimination to the extent practicable, as required by cases like *Board of Education v. Dowell*, 498 U.S. 237 (1991)).

### B. Plaintiff fails to show irreparable harm.

Plaintiff also fails to demonstrate that he will suffer irreparable harm in the absence of an injunction. *See Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *All Card Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)) (noting a party's failure to demonstrate *any* of the

14

requirements for a preliminary injunction warrants denial). The procedural history of this litigation demonstrates a lack of irreparable harm, and Plaintiff's own Motion fails to convincingly argue he will suffer *any* harm, much less irreparable harm.

> 1. **Plaintiff's delay in pursuing injunctive relief tends to show a lack of irreparable harm.**

Plaintiff's delay in pursuing injunctive relief tends to show a lack of irreparable harm. Originally, Plaintiff, *pro se* on behalf of himself and his minor child J.W., sought injunctive relief. Doc. 2 (alleging violations of the Fair Housing Act and Equal Educational Opportunities Act). But Plaintiff subsequently withdrew the request for a preliminary injunction "because Plaintiff no longer believes they can prove likely irreparable harm to J.W." Doc. 20 (admitting the "status quo for J.W." would be maintained for the 2023-2024 school year, as the "final proposal delays the implementation" until the "2024-2025 school year.") Denying the Motion will <u>not</u> change the status quo for J.W. for 2023-2024, because he will remain assigned to Adams Middle School either way.

Notably, the Court *sua sponte* issued a stay on the preliminary injunction in the Second Case, which was never lifted. *See* Second Case Doc. 12. The order dismissing the Second Case allowed Plaintiff to file claims *he*

15

could properly bring in this action, but never suggested he could also file a new injunction motion without counsel. *See generally* Doc. 37.

Then, on July 13, 2023—six months after Plaintiff first filed for an injunction, and five months after he voluntarily withdrew that injunction—Plaintiff sought another injunction against the School Board. The Eleventh Circuit has repeatedly held that a party's delay of even a few months to seek an injunction "militates against a finding of irreparable harm." *E.g.*, *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l*, No. 22-14257, 2023 WL 3704912, at *3 (11th Cir. May 30, 2023) (quoting *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016)). Had Plaintiff been serious about using the injunction process to circumvent the school choice process for J.W.'s placement[6], then Plaintiff should have retained counsel and timely pursued such relief. Again, Plaintiff's own actions weigh against his ability to establish irreparable harm.

### 2. Plaintiff's pending school choice application shows his request is simply for special treatment.

Plaintiff's Motion suggests absent an injunction, his child will not be able to attend a close school, but then in a footnote attached to the same sentence admits he has a pending school choice application for his child to attend a closer

---

[6] Plaintiff admits his Motion is filed prematurely, before resolution of his "pending school choice application to a closer school" which will be resolved in "early august." Motion, p.8, n.8.

school. Doc. 40, at 8 n.8. In other words, Plaintiff acknowledges that although he voluntarily moved to a house that was assigned to one school, *supra* Section III.A.5, the regular processes are at work and he has the same right as any other person to request an assignment to a different school.

To that end, there is no purported harm. The School Board allows parents to submit school choice applications for their children, and Plaintiff himself is in the midst of those administrative procedures. Rather, Plaintiff's Motion reveals his actual goal—he does not want to follow the procedures available to all members of the public, but rather wants the Court to grant him special treatment to avoid those processes. There is no irreparable harm here.

## C. The equities weigh in favor of denying the Motion.

The equities weigh in favor of denying the Motion, which will result in J.W. being assigned to the school Plaintiff and J.W. negotiated for in their prior settlement agreement or to the school Plaintiff and J.W. have requested in their pending school choice application (both options other than the school to which J.W. would attend based on his residence). *See* Doc. 30-1, at 2 ¶ 4; Motion, p.8 n.8. Either way, J.W. will be able to attend a school selected by Plaintiff without the injunctive relief sought in the Motion.

17

### D. Plaintiff's Motion and primary cited authority demonstrate the public interest is in *denying* the preliminary injunction.

Plaintiff fails to establish injunctive relief is in the public interest. *See* Motion, p.9 (providing minimal argument). Plaintiff cites *Florida v. Department of Health and Human Services*, 19 F.4th 1271 (11th Cir. 2021), which requires the Court to consider potential harm to the public. But Plaintiff does not explain how moving J.W. for the sixth grade school year or how the alternative request to enjoin the "Carrollwood K-8 format change" would serve the public interest. *See* Motion, p.9.

As explained above, Plaintiff's action is an effort to circumvent both this Court's prior order rejecting Plaintiff's theories and the school choice window that Plaintiff is free to use. *Supra* Sections III.A.1, III.B.2.

Moreover, as noted above in Section III.B.2 of this motion, Plaintiff's request is actually an effort to *circumvent* the processes that Florida has in place for seeking school choices. Rather than simply filing for a school choice (which Plaintiff in fact did, Doc. 40, at 8 n.8), he wishes for the Court to grant him special treatment. But doing so would undermine the public's interest in seeing its laws followed by all members of society, along with the School Board's interest in following its lawful procedures. And it in fact would create the negative incentive for parties to always attempt to avoid the school choice law and instead file expensive and time-consuming lawsuits that pull away

71718661;2

from the Hillsborough School District's limited resources (not to mention the Court's) in the hopes of receiving similar special treatment. Plaintiff does not even attempt to grapple with any of these issues.

The motion then confusingly attempts to discuss "infringements upon First Amendment values," which are not at issue in this case, much less Count III. *See generally* Doc. 38; *supra* Sections III.A.1–4. Accordingly, Plaintiff's own failure to actually address both the School Board's harm and the public interests affected warrant denial of his motion. *See Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

## IV.  CONCLUSION

Plaintiff's Motion violates this Court's prior order. Independently, Plaintiff's Motion fails to establish any of the four necessary elements for a preliminary injunction. Plaintiff completely ignores the School Board's previously briefed arguments, which require the dismissal of his claims, and instead, Plaintiff conflates his claims in an attempt to establish standing to proceed. The School Board requests the Court deny Plaintiff's Motion.

71718661;2

Respectfully submitted,

/s/ *Jason L. Margolin*
**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant