## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER,

      Plaintiffs,

v.                                Case No. 8:23-cv-00181-SDM-JSS

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

      Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED
## COMPLAINT

Defendant, The School Board of Hillsborough County, Florida (the "School Board"), moves to dismiss Plaintiff Blake Warner's Second Amended Verified Complaint (Doc. 38) (the "SAC" or "Second Amended Complaint").

## I.  INTRODUCTION

This Court should dismiss Plaintiff's Second Amended Complaint because it (1) is barred by the parties' prior settlement agreement; (2) fails to state a claim for relief; and (3) violates this Court's prior Order. *See* Doc. 37 (the "Order") (explaining Plaintiff Mr. Warner could not appear *pro se* for claims brough on behalf of his minor child) (citing *FuQua v. Massey*, 615 F. App'x 611, 612 (11th Cir. 215)).

71757728;3

Plaintiff's Second Amended Complaint, Plaintiff's third iteration of these claims—not including the related case Plaintiff filed, assigned Case No. 8:23-cv-01029 (the "Second Case")—alleges "unlawful manipulation of housing values . . . through operating a segregated school system" and the denial of "due process with the school choice application process." SAC, p.1.

Although the crux of Plaintiff's allegations have not changed, Plaintiff's Second Amended Complaint now includes nine counts: Counts I and II under 42 U.S.C § 3601, *et seq.* (the "Fair Housing Act Claims"); Count III under 20 U.S.C. § 1703(c) (the "EEOA Claim"); Counts IV and V under 42 U.S.C. § 2000d *et seq.* (the "§ 2000d Claims"); Counts VI and VII under 42 U.S.C. § 1983 (the "§ 1983 Claims") and Counts VIII and IX under Art. IX, § 1(a) Fla. Const. (the "FL Constitution Claims"). The School Board requests dismissal of this repeatedly amended pleading with prejudice. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (explaining district courts do not have to give more than one opportunity to amend a complaint, and "dismissal with prejudice" is the "default" under Rule 12(b)(6)).

## II.    STANDARD FOR DETERMINATION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Boyd v. Warden, Holman*

*Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017). Although the complaint does not need to contain "detailed factual allegations," it must contain enough facts to show the complainant is entitled to relief on more than a "speculative level." *Twombly*, 550 U.S. at 555; *see* Fed. R. Civ. P. 8(a)(2).

Applying these principles requires a two-step approach. *Iqbal*, 556 U.S. at 678–79. First, any threadbare legal conclusions are not entitled to any assumptions of truth, but instead should be eliminated from the complaint. *Id.* Second, any well-pleaded factual allegations should be tested for whether they "plausibly" show an entitlement to relief. *Id.* at 679–80. Courts also recognize that where an exhibit attached to a complaint contradicts the allegations of the complaint, the exhibit controls. *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).

## III.    MEMORANDUM OF LAW

### A.    Plaintiff's settlement with the School Board bars the claims in the Second Amended Complaint.

Plaintiff previously entered into a settlement agreement with the School Board, in which Plaintiff (and his minor child, J.W.) released all claims relating to J.W.'s education. Doc. 30-1, Ex. 1 (the "Settlement Agreement"), at 2 ¶ 5.[1]

---

[1]    Plaintiff agrees this Court may consider the Settlement Agreement. This Court may consider the Settlement Agreement without converting this motion to dismiss into one for summary judgment because the Settlement Agreement is (1) central to the plaintiff's claim and (2) undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (affirming order

Under the terms of this Settlement Agreement, Plaintiff "knowingly and voluntarily release[d] and discharge[d] the School Board and District from any and all claims, demands, causes of actions, complaints or charges, known or unknown, specifically related to [his child's] education, services, and educational program in the District through [March 15, 2022]." *Id.*

Although Plaintiff's Second Amended Complaint now spans over fifty pages and 237 paragraphs, *see generally* Doc. 38, he has never rebutted the release defense arising from his Settlement Agreement. Specifically, he has never asserted the boundaries relating to his home and to his child (J.W.) have changed since he signed the Settlement Agreement. *See generally id.*; Doc. 34, at 4. And Plaintiff has never explained how his Fair Housing Act claims are anything but an indirect effort to circumvent the Settlement Agreement. *E.g.*, Doc. 38 ¶¶ 8-9. In short, each of Plaintiff's claims relates to his child's education—he complains about the district boundaries, and those district boundaries directly relate to his child's schooling and services. As a result, the School Board requests dismissal of the Second Amended Complaint.

## B.   Plaintiff's Second Amended Complaint does not cure the deficiencies cited in the Court's prior Order.

This Court dismissed Plaintiff's Second Case, holding Plaintiff Warner could not proceed *pro se* on claims belonging to his minor child. *See* Order at 3–

---

granting motion to dismiss, where motion attached contract between the parties) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

71757728;3

4 (quoting *FuQua v. Massey*, 615 Fed. App'x 611, 612 (11th Cir. 2015))
("[P]arents are not attorneys may not bring a *pro se* action on their child's
behalf."). The Court recognized there is a limited exception to this general rule
under the Individuals with Disabilities Education Act (IDEA). *See* Order
(citing *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516,
526 (2007)). But that exception does not apply to any of Plaintiff's claims,
because it flows directly from the statutory scheme under IDEA.

In the Second Case, Plaintiff attempted to sue the School Board on behalf
of his child, asserting claims under the Equal Educational Opportunities Act
(like Count III here), 42 U.S.C. § 1983 (like Counts VI and VII here), and
"mandamus." *Compare* Second Case Doc. 19, ¶¶ 25-26, *with* Doc. 38 (Counts
III, VI and VII in this case). Plaintiff's Count III is functionally identical to his
Equal Educational Opportunities Act claim the Court already dismissed as
being an improper attempt to act as an unlicensed attorney for his child. Order
at 3–4; Doc. 38 ¶¶ 184–93; Second Case, Doc. 19 ¶¶ 22–30. Similarly,
Plaintiff's Count IV (42 U.S.C. § 2000d) is an allegation on his child's behalf,
identical in all substantive respects to his Equal Educational Opportunities
Act claim. *Compare* Doc. 38 ¶ 192 (claiming the school boundaries are
discriminatory for purposes of the Equal Educational Opportunities Act), *with*

Doc. 38 ¶ 197 (claiming the school boundaries are discriminatory for purposes of 42 U.S.C. § 2000d).[2]

Plaintiff's § 1983 Claims (Counts VI and VIII, ¶¶ 202–28) should be dismissed for this same reason. Each arises from allegations related to his child's education, not the education of Mr. Warner. *See* Doc. 38 ¶ 211 (asserting the claim based on the alleged "fundamental right of parents to direct the care, upbringing, and education of their children under the Fourteenth Amendment of the United States Constitution"); *see also*, *id.* at ¶¶ 119–21, 220–21 (claiming the school boundaries are discriminatory, just like under the Equal Educational Opportunities Act claim, and explicitly adopting those allegations into the second § 1983 claim).

Plaintiff's FL Constitution Claims (Counts VIII and IX, ¶¶ 229–37) should also be dismissed for this same reason. *Id.* ¶¶ 72–79, 229, 233 (incorporating allegations relating to his child's education and purported discrimination, similar to the previously dismissed EEOA claim).

To be clear, the School Board maintains that there are additional reasons to dismiss these claims, as outlined below. But the failure to comply with the prior order itself and underlying reasoning of that order warrants dismissal.

---

[2]   During the conferral process, Plaintiff agreed to dismiss Count V of the Second Amended Complaint, which was a disparate impact theory under 42 U.S.C. § 2000d.

71757728;3

**C.    The Fair Housing Act does not apply to the School Board's alleged actions.**

This Court should dismiss Counts I (disparate treatment) and II (disparate impact) under the Fair Housing Act because the act does not apply to the School Board. *See* Doc. 34, at 5–15 (explaining the Fair housing Act does not apply to the School Board's purported activities in this situation). The School Board is a constitutional entity in Florida tasked with "operat[ing], control[ling], and supervis[ing] all free public schools within the school district." Fla. Const. art. IX, § 4. In contrast, the Fair Housing Act applies to (1) sales of homes; (2) rentals of homes; (3) advertisements regarding homes for sale or rent; (4) the terms, conditions, or privileges of home sales or rentals; or (5) making a home unavailable. 42 U.S.C. § 3604. Plaintiff's entire theory of supposed liability is his assertion that the School Board assigns schools to "pric[e] minorities out of certain neighborhoods . . . ." Doc. 38 ¶¶ 181, 183.

But by Plaintiff's logic, nearly every action by every party could be swept into the Fair Housing Act, and courts have uniformly rejected that approach. For example, if a company builds a new office building in a suburb, the availability of those jobs is likely going to affect housing prices in the area. Similarly, improving a park or other community space in the area might *affect* housing prices, thereby creating Fair Housing Act liability under Plaintiff's theory. Such an expansive reading of the Fair Housing Act is unsupported.

7

Rather, courts emphasize that the Fair Housing Act is concerned with activities directly relating to the sale or rental of dwellings. *See, e.g.*, *Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1233 (M.D. Fla. 2003)[3] (emphasis added) ("This Court need not reach the question of whether Plaintiffs needed to be evicted to violate Section 3604(b), because this Court concludes that Section 3604(b) only prohibits the discriminatory provision of services and facilities *in connection with a sale of a dwelling.*"); *see also Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004) (dismissing complaint involving services from a homeowners association); *Clifton Terrace Associates, Ltd. V. United Technologies Corp.*, 929 F. 2d 714, 719–20 (D.C. Cir. 1991) (affirming dismissal of Fair Housing Act claims against a company that merely repaired elevators at a residential building); *Roy v. Board of County Com'rs Walton County, Fla.*, No. 3:06-cv-00095, 2007 WL 3345352 (N.D. Fla. Nov. 9, 2007) (quoting *Edwards v. Media Borough Council*, 430 F. Supp. 2d 445, 452 n.14 (E.D. Pa. 2006)) (noting that where the Fair Housing Act discusses "services,"

---

[3]   "After the *Gourlay* decision was issued, the parties settled and the court withdrew the opinion. [*See* 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003).] The order's reasoning and analysis, however, remain instructive and persuasive." *Schwarz v. Villages Charter Sch., Inc.*, No. 5:12-cv-00177, 2014 WL 12623013, at *6 (M.D. Fla. May 23, 2014) (recommending dismissal of Fair Housing Act claim for handicap discrimination).

those services "must relate to the sale of a dwelling, and not just ownership of the dwelling").

Additionally, the language from the *Clifton Terrace* decision is instructive regarding the limits of the Fair Housing Act: "The fact that . . . a discriminatory practice could have an impact on the use and enjoyment of residential property rights, however, does not necessarily mean that it will also be redressable under Title VIII." 929 F.2d at 720; *see also Edwards*, 430 F. Supp. 2d at 451 ("The Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing."). There is no allegation here that the School Board took any direct actions with respect to housing; at most, its actions are alleged only to have had an indirect effect just as might be the case with a transportation agency widening a road.

Contrast Plaintiff's allegations with the types of situations that *might* lead to a governmental entity being liable under the Fair Housing Act. For example, 24 C.F.R. § 100.70(d)(5) (with emphasis added) prohibits "[e]nacting or implementing *land-use* rules, ordinances, procedures, building codes, permitting rules, policies, or requirements that restrict or *deny housing opportunities* or otherwise make *unavailable or deny dwellings* to persons because of race, color, religion, sex, handicap, familial status, or national origin." And other decisions have likewise rejected efforts to say that simply *affecting* house prices creates liability.

9

For example, the Eastern District of Michigan faced a situation in which a group of people living in a community opposed a proposed group home and "began to engage in activities designed to prevent the institution of the group home," such as picketing, arranging for media coverage, and threatening boycotts. *Michigan Protection and Advocacy Service, Inc. v. Babin*, 799 F. Supp. 695, 701 (E.D. Mich. 1992). The complaint asserted several different claims, *id.* at 703-04, including a theory of expanding the Fair Housing Act claims to enclose those who "*indirectly* deprive a protected individual of housing." *Id.* 711-12 (emphasis added). The court rejected this theory, stating:

> The second part of § 3604(f)(1) applies to those who "otherwise make unavailable" a dwelling. Although this phrase has been referred to as a "catchall," Schwemm § 13.4(1), its scope is not limitless. By its terms, it is limited to those individuals who are in a position to make a dwelling unavailable. *To be in this position, a person must be able to exercise influence over or control the disposition of the dwelling.* Without this power, the person might be able to annoy a prospective tenant, but would be unable to make a dwelling unavailable.
>
> . . . .
>
> This Court agrees with the reasoning and conclusions of the *Devereux* and *Steptoe* courts. *Section 3604(f)(1) covers only those actors who are in a position directly to make a dwelling unavailable—that is, a seller, his agent, or another person or entity integrally involved in the sale or financing of real estate. An expansion of the statute beyond this limit would contravene the language of § 3604(f)(1) as well as common sense.* Because the Neighbors had no control over the Home,

they could not and did not directly deprive Plaintiffs of housing. Therefore, they are not covered by § 3604(f)(1). The Court rejects all § 3604(f)(1) claims against the Neighbors.

*Id.* at 711–14 (emphasis added).

This case represents the same type of unwarranted invitation for the Court to dramatically expand the Fair Housing Act well beyond its language, Congress's intent, and common sense. *Id.* at 714. The Court should decline that invitation. Plaintiff's efforts to stretch the Fair Housing Act through his first and second counts are unpersuasive, and the School Board requests the Court dismiss those counts in their entirety.

### D.   Plaintiff fails to plead a claim under the EEOA.

In his prior effort to bring his Equal Educational Opportunities Act claim, Plaintiff acknowledged the School Board assigned his home not based on race or any other protected classes, but rather by his neutral "home address." Second Case, Doc. 1 ¶ 8. Recognizing this admission is fatal to his claim, Plaintiff omits it in this action despite including it in a judicial admission previously. *Cf., e.g.*, *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718–19 (11th Cir. 2011) (internal citations omitted) (noting admissions in pleadings are "proof possessing the highest possible probative value"). In other words, Plaintiff acknowledged there was *no* decision based on the protected classes listed in the Equal Educational Opportunities Act.

11

The case law interpreting Section 1703(c) of the Equal Educational Opportunities Act supports this conclusion. In *U.S. v. Hinds County School Board*, the Fifth Circuit (which later split into the Eleventh Circuit) noted the definition of "segregation" in 20 U.S.C. § 1720(c) as being the operation of schools "in which students are wholly or substantially separated . . . on the basis of race, color, sex, or national origin . . . ." 560 F.2d 619, 624 (5th Cir. 1977).[4] The court then elaborated: "Thus, among the schools within a system, Congress intended to prohibit the *assignment of students on the basis of race, color, sex, or national origin.*" *Id.* The School Board does *not* do so, and Plaintiffs' allegations are insufficient to state a claim. Again, Plaintiff voluntarily chose to buy his house despite knowing it was assigned to Adams Middle School and despite having previously released all claims against the School Board as of May 2022, at which time his home had the same assignment as it does now. *Supra* Section III.A.

Moreover, Plaintiff does *not* allege the boundaries are materially different than those previously approved when the district was declared unified. *See Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cty., Fla.*, 244 F.3d 927 (11th Cir. 2001); *infra* Section III.A. And even if the boundaries

---

[4]   *See, e.g., Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting pre-1981 decisions of the Fifth Circuit as binding for precedential purposes in the Eleventh Circuit).

71757728;3

have been modified, Plaintiff does *not* allege there have been material changes to the assignment for his residence, which is the predicate for his claim. Moreover, Plaintiff still cannot overcome the Court's order dismissing the EEOA Claim in the related case. *See generally* Order (dismissing Plaintiff's claims and recognizing he cannot act as an unlicensed attorney); *supra* Section III.B. As a result, the School Board requests dismissal.

**E.   During the conferral process, Plaintiff agreed to dismiss Count V because no private right of action is available for purported disparate impact under 42 U.S.C. § 2000d.**

Private rights of action are unavailable for disparate impact theories under 42 U.S.C. § 2000d, as the statute prohibits only *intentional* discrimination, and the disparate impact prohibitions flow from regulations that do not carry a private right of action. *Alexander v. Sandoval*, 532 U.S. 275, 284, 291, 293 (2001). During the parties' conferral, Plaintiff agreed to abandon this claim. As a result, the School Board requests dismissal of Count V.

**F.   Plaintiff cannot use § 1983 to sue under Florida law. Regardless, the School Board's choice processes comply any Due Process requirements.**

Plaintiff's Section 1983 due process claim is an attempt to enforce what he claims is Florida law, challenging a hardship application requirement he deems "arbitrary and capricious." Doc. 38 ¶ 209 (recognizing Plaintiff could submit a hardship application even to an over-capacity school as part of the school choice process, requiring a written submission explaining the basis for

13

his claimed hardship, which he feels is "arbitrary and capricious"). Section 1983 applies to violations of "the Constitution and laws," and that language refers to the Constitution and laws of the *United States*.[5] *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) (emphasis added) ("Section 1983 does <u>not</u> create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a *federal right*.") (emphasis added). As the Northern District of Florida explained in *Dean v. Escambia County*, "[i]t is well settled that § 1983 imposes liability only for violations of rights protected by the Constitution and laws of the United States. . . . Therefore, mere allegations of state law infractions are insufficient to support a § 1983 claim." No. 3:05-cv-00029, 2005 WL 927387, at *8 (N.D. Fla. Apr. 20, 2005) (citing numerous cases from around the country for the proposition, including *Knight* from the Eleventh Circuit).

Moreover, Florida law has been careful *not* to make education a "fundamental right," given concerns over this exact type of litigation. As the Florida Supreme Court explained in *Bush v. Holmes*:

> The "fundamental **value**" language, new to the constitution, was codified from the language taken from the Florida Supreme Court decision in *Coalition for Adequacy and Fairness in School Funding, Inc. v.*

---

[5]   Section 1983 further confirms this interpretation by noting in its final sentence that "any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." In other words, Section 1983 is not concerned with local laws.

> *Chiles*, 680 So.2d 400 (Fla.1996). Early proposals presented before the Constitution Revision Commission framed education in terms of being a "fundamental **right**." In response to concerns of commissioners that the state might become liable for every individual's dissatisfaction with the education system, the term "fundamental **value**" was substituted.

919 So. 2d 392, 403–04 (Fla. 2006) (emphasis added).

Similarly, the three statutory sections on which Plaintiff attempts to rely in paragraph 211 of the Second Amended Complaint—Sections 1014.04, 1002.20, and 1002.31—do not create a fundamental right to school choice. Section 1014.04 outlines general parental rights (including rights unrelated to education) and does *not* state anything about school choice. Rather, it merely notes parents have rights to do activities such as enroll their children in public schools, make health care decisions for their children, and the right to receive notification of any criminal offenses for which their children might be suspects. Fla. Stat. § 1014.04(1).

Likewise, Section 1002.20 does not create any legitimate right as opposed to a mere expectancy. Its language about school choice is in Subsection (6), which states: "Parents of public school students *may* seek any public educational school choice options that are applicable and available to students throughout the state." Fla. Stat. § 1002.20(6) (emphasis added). In

other words, parents *may* seek school choice, but there is nothing under that statute obligating schools to accept those children to a specific school.

Finally, Section 1002.31 is the most on-point statute for purposes of school choice. But even its language notes there is no guaranteed right to school choice. For example, Subsection (1) notes that "parents' indicated preferential educational choice" is merely "a significant factor." And even the language in paragraph (2)(a) that Plaintiffs cite about schools accepting applications is still subject to the school's capacity, including its long-term plans and projections. Fla. Stat. § 1002.31(2)(b). The statute further notes that merely applying for school choice is not a guaranteed result, given that schools must also give preferential treatment to classes of children such as children of military personnel. Fla. Stat. § 1002.31(2)(c). In other words, there is still a process to which the School Board must adhere, and Plaintiff cannot use Section 1983 to claim some unhindered right to force his child into a specific school.

Regardless, Plaintiff's own filings note that the general processes have remained open to him. His preliminary injunction motion admits he submitted a school choice application to a preferred school. Doc. 40, at 8 n.8. His primary complaint appears to be with the requirement that he submit a hardship application to have his child admitted into a school with capacity concerns, which he describes as "arbitrary and capricious." Doc. 38 ¶ 209; *see also* Doc. 38-9, at 3 (noting the projected growth for Carrollwood and potential

16

capacity concerns); *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)) (recognizing exhibits attached to a complaint control over contradictory allegations). Plaintiff's judicial admissions demonstrate the School Board is acting in an entirely rational manner, asking for applicants to explain the bases of their claimed hardships so it can evaluate them. *Id.* at ¶¶ 208–09. Plaintiff did not pursue a hardship application but applied to another school. *Id.* 205-206. Accordingly, this Court should dismiss Count VI.

## G. Plaintiff mistakes the applicable standard for Equal Protection review.

Plaintiff's equal protection claim under 42 U.S.C. § 1983 is founded on his mistaken belief that "strict scrutiny" is the applicable standard. Doc. 38 ¶ 227. *But see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (noting legal conclusions in complaints are not entitled to deference on a motion to dismiss). Strict scrutiny applies in two possible situations: (1) a law has a substantial impact on a fundamental right or (2) a law draws explicitly racial classifications. *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 314 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the

71757728;3

classification."). If strict scrutiny does not apply, and the rational basis test applies, the Supreme Court has articulated several important principles:

1. Governmental acts come "bearing a strong presumption of validity";

2. Plaintiffs attacking the rationality of a legislative classification have the burden of negating every conceivable basis that might support it; and

3. It is irrelevant whether the conceived reason for a challenged law in fact motivated the governmental body.

*See id.* at 314–15 (citing numerous cases for these principles).

As explained above in Section III.F of this motion, the Florida public and legislature has already taken steps to eliminate "fundamental right" language with respect to educational decisions, given concerns over these very types of lawsuits being used to circumvent the political processes. *See, e.g.*, *Bush v. Holmes*, 919 So. 2d 392, 403–04 (Fla. 2006) ("In response to concerns of commissioners that the state might become liable for every individual's dissatisfaction with the education system, the term "fundamental value" was substituted."). And likewise, the U.S. Supreme Court has cautioned against stretching any perceived federal rights regarding education too far:

> In *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, the Court held that the liberty protected by the Due Process Clause of the Fourteenth Amendment includes the right "to . . . *bring up children*," . . . and, concomitantly, the *right to send one's children to a private school* that offers specialized training in that case, instruction in the German language. In *Pierce v. Society of Sisters*, 268 U.S. 510,

45 S.Ct. 571, 69 L.Ed. 1070, the Court applied "the doctrine of *Meyer v. Nebraska*," *Id.*, at 534, 45 S.Ct., at 573, to hold unconstitutional an Oregon law requiring the parent, guardian, or other person having custody of a child between 8 and 16 years of age to send that child to public school on pain of criminal liability. . . . In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15, the Court stressed the limited scope of Pierce, pointing out that it lent *"no support to the contention that parents may replace state educational requirements with their own idiosyncratic views of what knowledge a child needs to be a productive and happy member of society" but rather "held simply that while a State may posit (educational) standards, it may not pre-empt the educational process by requiring children to attend public schools." Id.*, at 239, 92 S.Ct., at 1545 (White, J., concurring). And in *Norwood v. Harrison*, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723, *the Court once again stressed the "limited scope of Pierce," Id., at 461, 93 S.Ct., at 2809, which simply "affirmed the right of private schools to exist and to operate . . . ." Id.*, at 462, 93 S.Ct., at 2809.

*Runyon v. McCrary*, 427 U.S. 160, 176–77 (1976) (emphasis added).

In other words, the federal constitutional cases regarding children's educations deal with the right to send children to *private* school rather than *public* school. And *Runyon* itself simply held that federal anti-discrimination laws do not violate the constitution's freedom of association or any amorphous right to control education just because they do not allow segregated schools. *Id.*

The circuit courts have reached the same conclusion. For example, in *Stevenson v. Blytheville School District #5*, the Eighth Circuit offered a lengthy opinion noting that "neither [of the Supreme Court's decisions in] *Meyer*,

*Pierce*, nor any other relevant precedent support the proposition that a parent's ability to choose where his or her child is educated *within the public school system* is a fundamental right or liberty." 800 F.3d 955, 967 (8th Cir. 2015) (emphasis in original, internal quotes omitted).

Likewise, the *Stevenson* court rejected the proposition that a general state school choice law created a property interest enforceable through the constitution: "Therefore, under [the Supreme Court's] *Goss* [decision], the property interest which is protected by the Due Process Clause is the right to participate in the entire educational process and not the right to participate in each individual component of that process." *Id.* at 968 (quoting *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997); *see also Anderson v. Hillsborough Cty. Sch. Bd.*, 390 F. App'x 902, 903 (11th Cir. 2010) ("Florida law does not, however, create a right to attend a high school of your choice, and this court has never decided that a Florida student has a property or liberty interest in attending a particular high school."). It further noted that laws only create property interests where they create "a legitimate claim to entitlement as opposed to a mere subjective expectancy." *Stevenson*, 800 F.3d at 968 (quoting *Snaza v. City of Saint Paul*, 548 F.3d 1178, 1182–83 (8th Cir. 1997)). As noted above, Florida law does not go that far.

Turning then to the second option for applying strict scrutiny under an Equal Protection challenge, Plaintiff does not cite to any lines drawn using

20

explicit racial distinctions or other protected classes. Rather, he offers only his own conclusory theories that race was "the predominant factor," but then in the very same complaint notes that the states reasons for drawing boundaries were "keeping the community together" (*i.e.*, ensuring continuity of friend groups and education. Doc. 38 ¶¶ 145, 221, 224. While the School Board maintains that drawing boundaries is a highly complex endeavor requiring multiple considerations, the point is that Plaintiff's own complaint notes the absence of any explicit racial classifications, and in fact legitimate, non-racial reasons for the boundaries.

Accordingly, strict scrutiny does not apply. Rather, the far more deferential rational basis test applies, and by the terms of Plaintiff's own complaint, there is at least one legitimate reason for the lines. Doc. 38 ¶¶ 145, 221; *see also Beach Comms.*, 508 U.S. at 314–15 (outlining the rational basis test and noting when it applies). As a result, the School Board requests dismissal of Count VII.

### H.    Plaintiff fails to state a claim under the Florida Constitution.

This Court should dismiss Counts VIII and IX because Plaintiff cannot state a claim for violation of the Florida Constitution, specifically Article IX, Section 1(a). Doc. 38 ¶¶ 230, 234. The challenged section states:

> Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to

21

> obtain a high quality education and for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require.

FLA. CONST. art. IX, § 1(a).

Plaintiff has not stated a claim for violation of this section against himself, but improperly pursues relief, *pro se*, allegedly due to his minor child. Accordingly, both claims fail.

Independently, Plaintiff cannot state a private right of action against the School Board under this section. *See Kunz v. Sch. Bd. of Palm Beach Cty.*, 237 So. 3d 1026, 1027 (Fla. Dist. Ct. App. 2018) (recognizing Article IX, Section 1 does not contain "a method of enforcement" and thus "it does not provide a private right of action to enforce any specific procedure"); *Simon v. Celebration Co.*, 883 So. 2d 826, 831 (Fla. Dist. Ct. App. 2004) (holding that Article IX, Section 1 does not create a private right of action against school boards). As a result, the School Board requests dismissal of Counts VIII and IX.

## IV.   GOOD FAITH CONFERRAL CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for the School Board conferred with Plaintiff. Plaintiff agreed to dismiss Count V (regarding disparate impact under 42 U.S.C. § 2000d). Plaintiff agreed the Court could consider the Settlement Agreement and requested the School Board file an unredacted copy

71757728;3

under seal (which motion to seal will be forthcoming). Otherwise, the parties do not agree on the relief sought.

## V.   CONCLUSION

Plaintiff's latest amended complaint violates the Court's order of dismissal, and independently fails to state a claim on which relief can be granted. Accordingly, the School Board requests the Court grant dismissal under Federal Rule of Civil Procedure 12(b)(6). And given Plaintiff's numerous past amendments, combined with dismissal with prejudice being the "default" under Rule 12(b)(6), the School Board requests the dismissal be with prejudice. *See Eiber Radiology, Inc.*, 673 F. App'x at 929.

Respectfully submitted,

*/s/ Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
AKERMAN LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2023, I filed the foregoing using the Court's CM/ECF and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant

24