UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE ANDREW WARNER,

      Plaintiff,

v.                                  Case No: 8:23-cv-181-SDM-JSS

SCHOOL BOARD OF
HILLSBOROUGH COUNTY,
FLORIDA,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

      Defendant moves to dismiss Plaintiff's Second Amended Verified Complaint. (Motion, Dkt. 45.) The court held a hearing on the Motion on October 26, 2023. (Dkt. 66.) For the reasons that follow, the court recommends that Defendant's Motion be granted in part and denied in part. Additionally, the undersigned further recommends that Plaintiff's Motion for Preliminary Injunctive Relief (Dkt. 40) be denied.

## BACKGROUND

      Plaintiff lived in the South Tampa area of Hillsborough County until 2022, when he alleges he was forced to relocate due to rising housing costs. (Dkt. 38, Compl. ¶¶ 113–14.) As a result, Plaintiff was unable to enroll his minor child, J.W., in a public school in South Tampa. (*Id.*) Plaintiff attributes increased housing prices in South Tampa to racially motivated school boundary assignments made by Defendant, the School Board of Hillsborough County, Florida. (*Id.*) According to Plaintiff,

Defendant segregated school boundary assignments for public schools in Hillsborough County by race or color, which caused racially segregated neighborhoods and increased home values in South Tampa.  *See*  (*id.* ¶¶ 110–18.)  Plaintiff alleges Defendant's intentional and unlawful segregation of the school assignment boundaries on the basis of race or color resulted in the violation of Plaintiff's constitutional rights. *See generally* (*id.*)

Plaintiff filed his initial verified complaint in this matter on behalf of himself and his minor son, J.W., on January 26, 2023.  (Dkt. 1.)  On May 18, 2023, Plaintiff amended his complaint, asserting claims on behalf of himself only and dropping any claims asserted on behalf of J.W.  (Dkt. 29.)  Defendant answered the Amended Complaint and asserted affirmative defenses noting that Plaintiff's claims were barred by a prior settlement agreement with Defendant. (Dkt. 30.)  On May 10, 2023, Plaintiff filed a separate action against Defendant on behalf of himself and J.W. based on facts similar to those alleged in this matter.  *See Warner v. Sch. Bd. of Hillsborough Cnty.*, Fla., No. 8:23-cv-01029-SDM-SPF (M.D. Fla. 2003); *see also* (Dkt. 26.)  On July 5, 2023, the court dismissed Plaintiff's complaint in the separate action for improper claim splitting, among other reasons, and directed Plaintiff to assert all of his claims against Defendant in a second amended complaint in this matter.  *See* (Dkts. 37, 39.)  The court further cautioned Plaintiff that, as a non-attorney, he may not bring a pro se

action on his child's behalf.  (Dkt. 37 (citing *FuQua v. Massey*, 615 F. App'x 611, 612 (11th Cir. 2015).)[1]

Plaintiff filed his Second Amended Verified Complaint in this matter, asserting nine counts against Defendant.  (Dkt. 38, Compl.)  In Counts I and II, Plaintiff seeks relief under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, alleging Defendant's school boundary assignments affect minority rights to housing.  *See* (Compl. ¶¶ 180–83.)  In Count III, Plaintiff seeks relief under the Equal Educational Opportunities Act, 20 U.S.C. § 1703(c), alleging Defendant denied Plaintiff an educational opportunity by assigning his minor child, J.W. to Adams Middle School instead of Carrollwood K-8, Plaintiff's school of choice.  (Compl. ¶¶ 184–93.)  In Counts IV and V, Plaintiff seeks relief under Title VI, 42 U.S.C. § 2000d *et seq.*, alleging that Defendant discriminates on the basis of race or color in its school assignment boundaries.  (Compl. ¶¶ 194–201.)  In Counts VI and VII, Plaintiff seeks relief under 42 U.S.C. § 1983 for violations of his rights to due process and under the Equal Protection Clause of Fourteenth Amendment.  (Compl. ¶¶ 202–28.)  In Counts VIII and IX, Plaintiff alleges

---

[1] Plaintiff filed an interlocutory appeal on the issue of whether he can represent his son pro se (Dkt. 42), but neither party has moved to stay the case pending the appeal.  "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *see also Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) ("When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case.").  As discussed herein, Plaintiff's Second Amended Verified Complaint does not purport to assert claims "on behalf of J.W." and the court therefore finds that the issues raised in Defendant's Motion to Dismiss and for Preliminary Injunctive relief are not related to the issue on interlocutory appeal.  *See* (Dkt. 49 at 7 (arguing that Plaintiff is asserting claims that are "independently his own, regardless if they implicate the rights of his child").)

Defendant's actions violated article IX, section 1(a) of the Florida Constitution and denied access to his guaranteed rights to education.  (Compl. ¶¶ 229–37.)

Defendant moves to dismiss Plaintiff's Second Amended Verified Complaint. (Dkt. 45.)  Defendant argues that Plaintiff's claims are precluded by a prior settlement agreement between Plaintiff and Defendant, that Plaintiff improperly asserts claims pro se on behalf of his minor child and lacks standing to sue on his own behalf for each count, and that Plaintiff otherwise fails to state claims upon which relief may be granted.  (*Id.*)  Plaintiff opposes the Motion in part, and has agreed to dismiss Count V.  (Dkt. 49.)  Plaintiff also argues that he has individualized standing to assert each claim and that he sufficiently stated a claim on each count.  (*Id.*)  The Honorable Steven D. Merryday referred the Motion to the undersigned for a hearing and report and recommendation.  (Dkt. 55.)

## APPLICABLE STANDARDS

When ruling on a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all well-plead factual allegations as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002).  To survive a motion to dismiss, a pleading must allege facts that reasonably demonstrate evidence exists to support the plaintiff's claims.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).  A litigant cannot solely put forth "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft*, 556 U.S. at 678.  "To avoid dismissal, the 'complaint

must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *petition for cert. denied*, 139 S. Ct. 807 (Jan. 7, 2019). "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Additionally, although pleadings drafted by pro se litigants are liberally construed, they must still "conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002).

The party invoking federal jurisdiction also bears the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, a plaintiff must plead sufficient facts to establish each element of standing in that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Warth v. Seldin,* 422 U.S. 490, 498–99 (1975)); *see also Lujan*, 504 U.S. at 560–61. If a plaintiff's injury is one which is "stigmatic" in nature, or generally "suffered by all members of a racial group" when the alleged discrimination is racial, the litigant must assert a "judicially cognizable injury" to survive dismissal. *Allen v. Wright*, 468 U.S. 737, 754 (1984). Absent standing, a claim is due to be dismissed. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964,

974 (11th Cir. 2005).  A motion to dismiss for lack of standing "has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Cone Corp. v. Fla. Dep't of Transp.,* 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991)).

## ANALYSIS

### A.    Plaintiff's Settlement Agreement with the School Board

Defendant contends that Plaintiff's Second Amended Verified Complaint must be dismissed because Plaintiff released all claims related to J.W.'s education in a previous settlement agreement with Defendant.  (Dkt. 45 at 3–4.)  Defendant attached the settlement agreement to its answer to Plaintiff's first amended complaint (Dkt. 30-1), and although the settlement agreement was neither referenced in the Second Amended Verified Complaint nor attached thereto, Defendant seeks its consideration in support of Defendant's Motion.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); *see also Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) (citing *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005)).  "[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2)

- 6 -

undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."). "A document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim." *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) (citing *Day*, 400 F.3d at 1276). Courts consider documents outside of the four corners of the complaint when the documents relate to the substance of the allegations in the complaint itself. *Roberts*, 824 F. App'x at 827 (holding that district court erred in considering ticket contract containing one-year limitations period without converting motion to summary judgment in plaintiff's negligence action against cruise-ship operator).

According to Defendant, the parties previously entered into a settlement agreement concerning all claims related to Plaintiff's child's education in the Hillsborough County School District through March 15, 2022. (Dkt. 45.) Plaintiff maintains that the settlement agreement was not supported by consideration, he did not agree to waive all of his claims against Defendant, and the agreement is illegal. (Dkt. 49.) As noted, the settlement agreement was not referenced in the 53-page, 237 paragraph Second Amended Verified Complaint, nor do Plaintiff's claims rely on the settlement agreement in any way. Thus, the settlement agreement appears to be neither undisputed, nor central to Plaintiff's claims. *See Horsley*, 304 F.3d at 1134. As

such, the undersigned does not recommend dismissing the Second Amended Verified Complaint based on the parties' settlement agreement at this early stage. *See Quiller v. Barclays Am./Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir. 1984) ("Generally, the existence of an affirmative defense will not support a motion to dismiss."), *aff'd and reinstated on reh'g,* 764 F.2d 1400 (11th Cir. 1985).

### B.    Plaintiff's Standing and Compliance with the Court's Prior Order

Defendant next argues that Plaintiff's Second Amended Verified Complaint does not comply with the court's prior order dismissing the separate action and specifically providing that Plaintiff cannot proceed pro se on behalf of his minor child. (Dkt. 45 at 4–6.) Defendant challenges Plaintiff's standing to bring Counts III, IV, VI, VII, VIII, and IX and maintains Plaintiff lacks standing to bring those claims. (*Id.*)

To establish standing, Plaintiff must plead sufficient facts to establish that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338. If a plaintiff's injury is one which is "stigmatic" in nature, or generally "suffered by all members of a racial group" when the alleged discrimination is racial, the litigant must assert a "judicially cognizable injury" to survive dismissal. *Allen*, 468 U.S. at 754; *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) ("In order to sufficiently allege stigmatic injury, a plaintiff still must meet the constitutional standing requirements."). "An individual who suffers an intangible injury from discrimination can establish standing if he

personally experienced the discrimination." *Sierra*, 996 F.3d at 1113 (citing *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1338 (11th Cir. 2019) (finding that an organizational plaintiff that alleged stigmatic injury did not have standing because it did not adequately allege "it [was] among the class of persons whose concrete interests [were] affected by discriminatory treatment")).   In the context of alleged discriminatory school practices, the Supreme Court has recognized that "one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff," and that parents "can validly claim [such an injury] on behalf of their children" to establish standing.  *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718–19 (2007); *see also Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 666 (8th Cir. 2023) ("Parents have standing to sue when the practices and policies of a school threaten the rights and interests of their minor children.").  The Supreme Court has also recognized that "a plaintiff who alleges that he is the object of a racial gerrymander—a drawing of district lines on the basis of race—has standing to assert only that his own district has been so gerrymandered." *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (citing *United States v. Hays*, 515 U.S. 737, 744–745 (1995)).

Here, Plaintiff's Second Amended Verified Complaint does not assert claims on behalf of J.W. but rather asserts claims on Plaintiff's own behalf.  *See* (Dkt. 38, Compl.) As the parent of J.W., Plaintiff generally asserts injuries arising from the effects of Defendant's alleged discriminatory conduct, denial of an educational opportunity, and

the infringement of his rights from Defendant's conduct, including those under the Equal Protection Clause of the Fourteenth Amendment.  *See* (Compl. ¶¶ 110–18.) Plaintiff also alleges that as a resident of Tampa, he has been adversely affected by the impermissible gerrymandering of the school district boundaries on the basis of race. (*Id.* ¶¶ 119–76.)  Plaintiff alleges that he "is particularly sensitive to discriminatory practices" and that he was "insulted and emotionally distressed by the knowledge that school aged students in his community were being discriminated against because of their race . . . in the year 2023." (*Id.* ¶ 110.)  Plaintiff further alleges that he "was and is saddened, angered, and insulted by the fact that [Defendant] continues to operate a segregated school system" and that "Defendant's unlawful conduct proximately caused [Plaintiff] to suffer the aforementioned emotions, which have manifested into stress, unpleasant rumination, mental strain, and feelings of indignity, hopelessness and anxiety about race discrimination in housing and the school system." (*Id.* ¶¶ 111–12.)  With respect to his housing claims, Plaintiff alleges that due to Defendant's "manipulation of property values, [Plaintiff] was priced out of [S]outh [T]ampa and had to relocate [] to [North] [T]ampa where he was assigned to failing schools." (*Id.* ¶ 114.)  Plaintiff further alleges that had Defendant "assigned all students to their closest school, property values in area of [S]outh [T]ampa that Mr. Warner resided would have decreased, and he would have purchased a home there." (*Id.* ¶ 116.)

At this early state in the litigation, the court finds that Plaintiff has sufficiently alleged that he either personally experienced discrimination or that he is within the

class of individuals targeted by that discrimination to establish standing for his claims. *See Sierra*, 996 F.3d at 1113 ("An individual who suffers an intangible injury from discrimination can establish standing if he personally experienced the discrimination."); *see also Common Cause Fla. v. Desantis,* No. 4:22-cv-109-AW-MAF, 2022 WL 19978293, at *1 (N.D. Fla. Nov. 8, 2022) (finding that plaintiffs "have standing under the district-specific injury analysis of *Gill v. Whitford*, 138 S.Ct. 1916, 1929–30 (2018)").  To the extent Plaintiff claims an injury to J.W. in the form of competing in a race-based school system under the Equal Protection Clause, the court further finds that Plaintiff has established constitutional standing to pursue his claims as J.W.'s parent.  *See Parents Involved in Cmty. Sch.*, 551 U.S. at 718–19.  Accordingly, the court finds that Plaintiff's Second Amended Verified Complaint complies with the court's prior order to bring pro se claims on behalf of Plaintiff only and that Plaintiff has sufficiently alleged facts to establish his personal standing to assert those claims except where specifically discussed herein.  The court therefore recommends denying Defendant's Motion to Dismiss as to Plaintiff's standing.

### C.    Failure to State a Claim

Defendant asserts that Plaintiff has either failed to state a claim on each count or that Plaintiff's alleged injury is not redressable pursuant to the statute under which he brings his causes of action.  *See* (Dkt. 45.)  Plaintiff has agreed to dismiss Count V, but otherwise asserts that he has sufficiently stated a redressable claim on each count. (Dkt. 49.)  Upon consideration, the court agrees with Defendant in part, and finds that

Plaintiff has failed to state a claim on Counts I, II, III, IV, V[2], VI, VIII, and XI.  The court therefore recommends that those counts be dismissed.  However, the court finds that Plaintiff has sufficiently stated a claim on Count VII, and recommends that Defendant's Motion be denied as to that count.

### i.  Fair Housing Act (Counts I and II)

In Counts I and II, Plaintiff generally asserts claims under the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.*, for disparate treatment (Count I) and disparate impact (Count II).  (Compl. ¶¶ 180–83.)  The Fair Housing Act requires the government to provide access to fair housing throughout the country and provides a cause of action for denial of that right.  42 U.S.C. §§ 3601, 3613.  Race is a protected class under the statute and "[t]he FHA prohibits the 'refus[al] to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.'"  *Hallmark Devs., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1283 (11th Cir. 2006); *see* 42 U.S.C. § 3604.  "Claims of discrimination under the FHA may be brought under theories of (1) disparate treatment, (2) disparate impact, or (3) failure to accommodate."  *Root v. Salazar*, 406 F. Supp. 3d 1322, 1325 (M.D. Fla. 2019) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216–18 (11th Cir. 2008)).

According to Plaintiff, Defendant's intentional segregation of students by race or color resulted in increased pricing for homes within the South Tampa neighborhood and had a discriminatory effect on minorities in violation of the Fair Housing Act.

---

[2] Plaintiff agreed to dismiss Count V.

(Compl. ¶¶ 80–89, 180–81, 231.)  Plaintiff's Second Amended Verified Complaint does not identify a specific provision of the Fair Housing Act under which he is suing, but in his opposition to the Motion, Plaintiff argues that Defendant's actions violate 42 U.S.C. §§ 3604(a) and (b) and the interpreting regulations.  (Dkt. 49 at 8–20.) Defendant moves to dismiss Counts I and II and argues that the Fair Housing Act does not apply to Defendant's alleged actions. (Dkt. 45 at 7–11.)  Upon consideration, the court recommends that Counts I and II be dismissed with prejudice because Plaintiff cannot maintain causes of action against Defendant under either § 3604(a) or § 3604(b) of the Fair Housing Act.

### 1.  42 U.S.C § 3604(a)

Pursuant to 42 U.S.C. § 3604(a) of the Fair Housing Act, it is unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  In addition to actions directly involving the sale or rental of a dwelling, courts have applied § 3604(a) "as covering activities such as zoning, sale of (or refusal to sell) homeowners' insurance, racial steering, eviction, and other conduct occurring after acquisition of housing." *United States v. Advoc. L. Groups of Fla., P.A.*, 413 F. Supp. 3d 1225, 1231 (M.D. Fla. 2019) (collecting cases); *see also* 24 C.F.R. § 100.60 (providing several examples of prohibited actions).  "[I]n order to state a claim under § 3604(a), the plaintiffs must

allege unequal treatment on the basis of race that affects the availability of housing." *Jackson v. Okaloosa County*, 21 F.3d 1531, 1542 (11th Cir. 1994).

Plaintiff argues that Defendant's actions "otherwise make unavailable or deny" housing to minorities in areas that Defendant has zoned for certain schools. (Dkt. 49 at 14–15.)  Plaintiff has not cited a case in which § 3604(a) has been applied in similar circumstances and instead relies on *Jackson v. Okaloosa County*, 21 F.3d 1531 (11th Cir. 1994) to argue that Defendant's "manipulation of property values clearly affects the availability of housing when it causes housing segregation[.]" (Dkt. 49 at 14–15.)  In *Jackson*, the plaintiff sued a county and its commissioners and a local housing authority and its members under § 3604(a) alleging "race-based discrimination affecting the 'availability' of public housing" stemming from the site selection process for a new public housing project.  21 F.3d at 1542.  The Eleventh Circuit held that the plaintiff sufficiently stated a claim under § 3604(a) explaining "the phrase 'otherwise make unavailable or deny' in subsection (a) … encompass[es] actions by individuals or government units that affected the availability of housing to minorities."  *Id.* at 1542 n.17.  The court reasoned that plaintiff had sufficiently alleged that the county's policy, "which was intended to exclude public housing from areas that are predominantly white and to ensure that housing will be placed in areas that contain the greatest concentration of African-Americans" would "affect the availability of public housing in a substantial portion of the [Housing] Authority's territory and [] exacerbate segregation" in violation of the FHA.  *Id.* at 1542.  In so holding, the court applied the

FHA's "otherwise make unavailable" language "beyond providers of housing [to] include officials with authority on housing and zoning decisions." *Joubert v. Hussain*, No. CV 118-147, 2020 WL 12676384, at *4 (S.D. Ga. Sept. 8, 2020) (citing *Jackson*, 21 F.3d at 1542–43).

In contrast here, Plaintiff does not allege that Defendant has any authority over the availability or denial of housing or that Defendant directly manipulated any pricing or denied housing to any minority on the basis of their race or color. Rather, Plaintiff alleges only that Defendant's determination of school attendance zones resulted in higher home prices that affected the availability of housing in certain areas. Given the absence of authority to affect the availability of housing, Defendant's actions do not fall within the scope of § 3604(a) of the Fair Housing Act. *See, e.g.*, *Advoc. L. Groups of Fla., P.A.*, 413 F. Supp. 3d at 1231–32 (granting motion to dismiss FHA claims where "Defendants in the case at hand could not, on their own, 'make housing unavailable to the Intervenors or others on the facts alleged"); *Joubert*, 2020 WL 12676384, at *5 (granting motion to dismiss Fair Housing Act claims against individual neighbors who, "as residents objecting to the rezoning at a public hearing – even if done for discriminatory purposes – possessed no authority or power to make the dwelling unavailable"); *Sampson v. All Am. Home Assistance Servs., Inc.*, No. 1:13-cv-495-WSD, 2013 WL 12322089, at *8 (N.D. Ga. Mar. 7, 2013) ("Actions that do not affect the availability of housing are not proper under Section 3604(a), to include refusals of a bank to grant a second mortgage to improve or repair property, and claims against

third-parties for actions that impact a plaintiff's finances and ability to remain in their home."). Defendant does not allegedly control the availability of housing, nor can Defendant make housing more or less available. Defendant's alleged actions in determining school attendance zones are neither akin to the conduct prohibited in the interpreting regulations nor similar to the conduct courts have found to be covered by the FHA. *See* 24 C.F.R. § 100.60. The conduct Plaintiff challenges is too remote to support § 3604(a) liability. *See, e.g.*, *Anthony v. City of Naples*, No. 2:16-cv-543-FtM-99MRM, 2016 WL 7010949, at *3 (M.D. Fla. Dec. 1, 2016) ("In order to allege a claim under the Fair Housing Act there must be a closer causal connection between the act and the effect on the availability of housing."); *Paulk v. Ga. Dep't of Transp.*, No. CV 516-19, 2016 WL 3023318, at *8 (S.D. Ga. May 24, 2016) ("Because the roadway-planning process is not related to housing and could only remotely and indirectly impact Plaintiffs' housing rights under the FHA, it is not the type of conduct that Section 3604(a) is intended to prevent."). Plaintiff thus fails to state a claim in Counts I or II that falls within the purview of § 3604(a) of the Fair Housing Act. *See, e.g.*, *Advoc. L. Groups of Fla., P.A.*, 413 F. Supp. 3d at 1232 ("In sum, although the FHA is a remedial statute that is to be construed broadly,[] Plaintiffs are attempting to stretch § 3604(a) too far here.") (internal citation omitted).

### 2. 42 U.S.C. § 3604(b)

Pursuant to 42 U.S.C. § 3604(b) of the Fair Housing Act, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental

of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." *See also* 24 C.F.R. § 100.65 (providing examples of prohibited actions).  Plaintiff argues that Defendant's actions constitute "the provision of services" in connection with the sale of a dwelling and thus fall under § 3604(b).  (Dkt. 49 at 8–20.)  Defendant argues that § 3604(b) does not govern the conduct Plaintiff seeks to challenge in this action.  (Dkt. 45 at 7–11.)  The court agrees with Defendant.

The Eleventh Circuit has rejected an "expansive view of services covered by § 3604(b)" and instead holds that "a service within the meaning of § 3604(b) must be a housing-related service that is directly connected to the sale or rental of a dwelling." *Ga. State Conf. of the NAACP v. City of LaGrange, Ga.*, 940 F.3d 627, 633–34 (11th Cir. 2019)  In *City of LaGrange, Ga.*, the Eleventh Circuit found that basic utility services, such as water, gas, and electricity were services "in connection with" the sale or rental of a dwelling because "(1) they are services closely tied to the sale or rental of a dwelling, and (2) they are essential to the habitability of the dwelling." *Id.* at 634.  In contrast, the court stated that "[l]aw enforcement services are not provided in connection with the 'sale or rental of a dwelling[]' [because] those services are provided regardless of whether an individual has housing and are not required in order to obtain housing." *Id.* at 633.  The Eleventh Circuit further cautioned that "to extend the Fair Housing Act to any and every municipal policy or service that touches the lives of residents 'would be to expand that Act into a civil rights statute of general applicability

rather than one dealing with the specific problems of fair housing opportunities.'" *Id.* at 633 (quoting *Clifton Terrace Assocs., Ltd. v. United Tech. Corp.*, 929 F.2d 714, 720 (D.C. Cir. 1991)).

Upon consideration, the court finds that Defendant's provision of education services, including determining school attendance zones in Hillsborough County, is not a "housing-related service that is directly connected to the sale or rental of a dwelling" under § 3604(b). *See City of LaGrange, Ga.*, 940 F.3d at 633–34. Plaintiff has not cited any cases in which courts have interpreted the Fair Housing Act so expansively. Rather, the provision of education, like the law enforcement services noted by the Eleventh Circuit in *City of LaGrange, Ga.*, is a service "provided regardless of whether an individual has housing and [is] not required in order to obtain housing." *City of LaGrange, Ga.*, 940 F.3d at 633; *see also Cox v. City of Dallas, Tex.*, 430 F.3d 734, 745 (5th Cir. 2005) (holding that § 3604(b) did not apply to claims that city discriminated in enforcing zoning laws to prevent unlawful dumping near plaintiffs' residences "because the service was not 'connected' to the sale or rental of a dwelling as the statute requires"). Plaintiff does not allege that Defendant directly controlled his ability to live in a specific school boundary area due to his race, or that Defendant treated minority home buyers differently because of their race. Although Plaintiff argues that race may have been a consideration in determining school board members seats and divisions, Plaintiff has not provided a causal link evidencing racial discrimination in connection with the provision of any services related to housing or

the denial of housing rights, which is needed to bring Defendant's actions under the purview of § 3604(b) of the Fair Housing Act.  *See, e.g.*, *Hallmark Devs., Inc. v. Fulton Cnty.*, Ga., 466 F.3d 1276, 1283 (11th Cir. 2006) (finding that evidence that a rezoning decision had a disparate impact on minorities and that certain landowners and developers met with community groups expressing racial bias did not show proposed development was denied on a basis of race and thus redressable under the Fair Housing Act); *Anthony*, 2016 WL 7010949, at *3 (finding that site plan approval is "far too remotely related to the housing interests that are protected by the Fair Housing Act" to establish Fair Housing Act claims); *Price v. Howard*, No. 1:22-cv-02056-SDG, 2023 WL 2767770, at *3 (N.D. Ga. Mar. 31, 2023) (finding Plaintiff failed to state a claim for relief under the FHA because although she was a member of a class protected under the FHA as a black woman, she did not allege facts suggesting she was treated differently than white prospective home applicants or the victim of any additional discriminatory actions giving rise to a violation under the Act).

While a discriminatory practice may affect the housing market, without overt or direct action, redress is not available under the Fair Housing Act.  *See City of LaGrange, Ga.*, 940 F.3d at 633 (citing *Clifton Terrace Assocs., Ltd.*, 929 F.2d at 720). "Numerous actions, private and official, may affect housing in some remote manner, but the Fair Housing Act requires a closer causal link between the availability of housing and the disputed action[.]" *Anthony*, 2016 WL 7010949, at *3 (citing J*ersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180 (4th Cir. 1999) (finding decision

for placement of highway too remotely related to the availability of housing to support a claim under the FHA)).  Accordingly, Defendant's challenged actions in determining school boundaries do not fall under the purview of either § 3604(a) or (b) of the Fair Housing Act.  The court therefore recommends that Counts I and II be dismissed with prejudice.

### ii.  Equal Educational Opportunities Act (Count III)

In Count III, Plaintiff alleges that Defendant violated the Equal Educational Opportunities Act (EEOA), 20 U.S.C. § 1703, by denying an educational opportunity because J.W. was assigned to Adams Middle School instead of Carrollwood K-8 for the 2023-2024 school year.  (Compl. ¶¶ 184–93.)   Defendant argues that the EEOA does not create a private right of action for parents to sue on their own behalf.  Upon consideration, the court agrees with Defendant and recommends that Count III be dismissed without prejudice.

The Equal Educational Opportunities Act was enacted to enforce the Congressional policy that "all children enrolled in public schools are entitled to equal educational opportunity without regard to race, color, sex, or national origin; and the neighborhood is the appropriate basis for determining public school assignments."  20 U.S.C. § 1701.  In Count III, Plaintiff seeks redress under 20 U.S.C. § 1703(c), which provides:

> No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by –

> (c) the assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color, sex, or national origin among the schools of such agency than would result if such student were assigned to the school closest to his or her place of residence within the school district of such agency providing the appropriate grade level and type of education for such student.

20 U.S.C. § 1703(c).  "An individual denied an equal educational opportunity, as defined by this subchapter may institute a civil action in an appropriate district court of the United States against such parties, and for such relief, as may be appropriate." 20 U.S.C. § 1706.  According to Plaintiff, Congress's use of the term "an individual" indicates that the statute sweeps broader than "students," and that he, as the parent of J.W., may bring suit to vindicate the denial of J.W.'s educational opportunity.  (Dkt. 49 at 7–8.)

Upon consideration, the plain language of 20 U.S.C. § 1703(c) does not encompass a cause of action for parents to sue for the loss of an equal educational opportunity.  *See Coggin Auto. Corp. v. Comm'r*, 292 F.3d 1326, 1332 (11th Cir. 2002) ("The general rule is that unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language.").  Rather, § 1703 specifically defines several prohibited activities, including the assignment of a student to a school other the one closest to his residence, that results in a greater degree of segregation.  *See* 20 U.S.C. § 1703(c).  Further, § 1706 provides a private right of action to the "individual denied an equal educational opportunity," in other words, the student.  20 U.S.C. § 1706.  Plaintiff, as a parent of J.W., may not state a claim

under the EEOA to vindicate the denial of an equal educational opportunity to J.W. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (the doctrine of prudential standing encompasses three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.") (internal quotation marks omitted); *see also FuQua*, 615 F. App'x at 612 ("The right to appear pro se, however is limited to parties conducting 'their own cases,' and does not extend to non-attorney parties representing the interests of others. Consequently, [] 'parents who are not attorneys may not bring a pro se action on their child's behalf.'").

Courts considering a third party's right to sue under § 1703 have concluded that parents do not have a right to sue on behalf of their minor children.  *See, e.g.*, *Collins v. City of N.Y.*, 156 F. Supp. 3d 448, 456–57 (S.D.N.Y. 2016) ("Collins is claiming neither that she has been denied an equal education opportunity nor that she is bringing this cause of action on behalf of students who have been denied an equal education opportunity; under the plain language of the EEOA, therefore, she does not have a cause of action."); *Neil Through Cyprian v. Modesto City Sch. Dist.*, No. 1:17-cv-0256-LJO-SKO, 2017 WL 2911578, at *7 (E.D. Cal. July 7, 2017) ("Plaintiff Cyprian does not allege that she individually was denied an equal education opportunity, only that her daughter was.  Thus, Plaintiff does not have a cause of action as an individual

- 22 -

under the plain language of the EEOA."); *Bradford v. Morehouse Par. Sch. Bd.*, No. CV 18-1536, 2019 WL 572981, at *5 (W.D. La. Jan. 28, 2019), *report and recommendation adopted,* 2019 WL 576007 (W.D. La. Feb. 12, 2019) (dismissing complaint asserting EEOA violations where plaintiff alleged only that his grandchildren were denied an educational opportunity by the closure of their elementary school).   Accordingly, Plaintiff has failed to state a claim for violation of the EEOA, and the court recommends that Count III be dismissed.  Although Plaintiff may not bring an EEOA claim on his own behalf, J.W. may pursue his own claim through an attorney.  *See FuQua*, 615 F. App'x at 612.  The undersigned therefore recommends that Count III be dismissed without prejudice.

### iii.    Title VI – Disparate Treatment (Count IV)

In Count IV, Plaintiff asserts a claim for disparate treatment under Title VI, 42 U.S.C. § 2000d, and alleges that "Defendant intentionally discriminates on the basis of race and/or color in [its] school assignment boundaries."   (Compl. ¶¶ 194–97.) Defendant moves to dismiss Count IV contending that Plaintiff lacks standing to bring this claim on his own behalf and that it is "identical in all substantive respects to his Equal Educational Opportunities Act claim."  (Dkt. 45 at 5.)  Upon consideration, the court agrees with Defendant and recommends that Count IV be dismissed without prejudice.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits

of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A private plaintiff may bring a suit under Title VI when they are intentionally discriminated against by a recipient of federal funds because of their race, color, or national origin. *Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001); *see also Barnes v. Gorman*, 536 U.S. 181, 185 (2002) ("Although Title VI does not mention a private right of action, our prior decisions have found an implied right of action[.]"). "Title VI's protection extends no further than that already afforded under the Equal Protection Clause of the Fourteenth Amendment." *Arrington v. Miami Dade Cnty. Pub. Sch. Dist.*, 835 F. App'x 418, 420 (11th Cir. 2020) (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1202 (11th Cir. 1999)).

Upon consideration, Plaintiff's claim in Count IV fails because he, as the parent of J.W., does not have standing to sue under Title VI. The doctrine of prudential or statutory standing incorporates "at least three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc.*, 572 U.S. at 126 (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (internal quotations omitted)).[3] "The question is whether the statute grants the plaintiff the cause of action that he

---

[3] The Eleventh Circuit instructs that prudential standing is not jurisdictional because "the question is whether Plaintiffs have a valid cause of action, and 'the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction.'" *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1274 n.6 (11th Cir. 2018) (citing *Lexmark Int'l, Inc.*, 572 U.S. at 128 n.4).

asserts," with the presumption being "that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 197 (2017) (quoting *Lexmark Int'l, Inc.*, 572 U.S. at 128 n.4). In considering suits brought under Title VI, courts have consistently held that parents lack standing to assert causes of action on their own behalf "because they are not beneficiaries of federally-funded school programs." *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 CS, 2012 WL 4477552, at *18 (S.D.N.Y. Sept. 27, 2012) (citing *Rodriguez v. Boursiquot*, No. 09–CV–802, 2010 WL 985187, at *4 (S.D.N.Y. Mar. 17, 2010) (finding that plaintiff lacked standing to bring Title VI claim because claim was not brought on behalf of child or operator of after-school program and noting that "[t]he intended beneficiaries of a federally funded public school program are school children, not their parents")); *I.G. by & through Grunspan v. Jefferson Cnty. Sch. Dist. through Bd. of Educ. for Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 998 (D. Colo. 2020) ("Courts have consistently held that parents are not the intended beneficiaries of school programs and, therefore, may not assert Title VI claims on their own behalf.") (collecting cases); *R.W. ex rel. Williams v. Del. Dep't of Educ.*, No. CIV.A.05-662GMS/MPT, 2008 WL 4330461, at *3 (D. Del. Sept. 22, 2008) ("This court recommends that Counts I, II, and III be dismissed because Williams does not have standing to pursue Title VI, due process, and equal protection claims which belong to her child."), *report and recommendation adopted,* 2008 WL 4547192 (D. Del. Oct. 9, 2008); *Schuler v. Bd. of Educ. of Cent. Islip*

- 25 -

*Union Free Sch. Dist.*, No. 96-CV-4702 (JG), 2000 WL 134346, at *10 (E.D.N.Y. Feb. 1, 2000) ("Thus, while parents (through counsel) may bring a Title VI action on behalf of a child who is the intended beneficiary of a funding program, parents may not bring the action on their own behalf.").

Plaintiff, as the parent of J.W., is not a beneficiary of a federally-funded school program, and may therefore not assert a cause of action under Title VI on his own behalf. Instead, like his EEOA claim, Plaintiff may only assert this claim on behalf of J.W and through counsel. *See FuQua*, 615 F. App'x at 612; *Grappell v. Carvalho*, 847 F. App'x 698, 701 (11th Cir. 2021) ("[T]o the extent Grappell, a non-attorney, sought to represent the legal interests of her son, the district court should have dismissed those claims without prejudice."). Accordingly, the court recommends that Count IV be dismissed without prejudice.

### iv.    Title VI - Disparate Impact (Count V)

Plaintiff has agreed to dismiss Count V and the court therefore recommends that Defendant's Motion as to Count V be granted. *See* (Dkt. 45.)

### v.    42 U.S.C. § 1983 Claims (Count VI and VII)

Plaintiff brings Counts VI and VII under 42 U.S.C. § 1983. In Count VI, Plaintiff appears to allege a procedural due process claim contending that his parental rights were violated when his minor child was unable to enroll in Carrollwood K-8, and when Carrollwood K-8's hardship application process required him to withdraw other pending applications. (Compl. ¶¶ 202–18.) Defendant argues Plaintiff lacks

standing to assert claims on behalf of his minor child in Count VI and that Plaintiff fails to adequately state a claim for a due process violation. (Dkt. 45.) Additionally, in Count VII, Plaintiff argues race was the predominant factor in creating Defendant's school boundaries, and the regulation violates his rights under the Equal Protection Clause and 42 U.S.C. § 1983. (Compl. ¶¶ 219–28.) Defendant disagrees with Plaintiff's contentions and maintains that Plaintiff lacks standing to bring this claim. (Dkt. 49 at 10.)

### 1.   Due Process Claim (Count VI)

Section 1983 of Title 42 of the United States Code provides a remedy for the deprivation of certain rights afforded by federal statutory and constitutional law. *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979); *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997); *R.W. v. Charter Schools USA, Inc.*, No. 18-14405-CIV-MARRA (S.D. Fla. May 23, 2019). "To prove a violation under 42 U.S.C. § 1983, a plaintiff must show that an entity, acting under the color of state law, deprived [him] of a right under the United States Constitution or federal law." *Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). School boards may be treated as a municipality and subject to liability under § 1983 if a plaintiff establishes that a municipal policy or custom has caused him injury. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 689 (1978); *Fernandez v. Sch. Bd. of Miami-Dade Cty.,* 201 F. Supp. 3d 1353, 1365 (S.D. Fla. 2016). Additionally, in the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural

due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

Plaintiff contends that he was unable to submit a school choice application for his child to attend Carrollwood K-8 during the school choice application period in July 2023. (Compl. ¶¶ 202–05.) As a result, Plaintiff submitted a school choice application to a different school.   (*Id.* ¶ 206).   Plaintiff also attempted to submit a hardship application for J.W. to attend Carrollwood K-8, but he was unable to do so without withdrawing his school choice application. (*Id.* ¶ 207.)   According to Plaintiff, under Florida law, his son has a right to enroll in any public school that is below capacity, his school of choice is below capacity, and Plaintiff has "no procedural way to apply for general choice admission" into the school of his choice.   (*Id.* ¶¶ 209–18.)

Plaintiff alleges Defendant's violations of Florida law give rise to his § 1983 due process claim.   Specifically, Plaintiff argues that § 1014.04 of the Florida Statutes provides that parents can "direct the education and care" of their minor children, and choose "to apply to enroll his or her minor child in a public school."   According to Plaintiff, § 1002.20 of the Florida Statutes also requires schools to provide accurate and timely information to parents regarding their child's academic progress. Additionally, Plaintiff notes that § 1002.31 of the Florida Statutes defines policies and procedures related to Florida public school's "controlled open enrollment" process, which requires each district school board to identify schools that have not reached

capacity online, maintain a wait list of students who are denied access due to capacity, and notify parents when space becomes available.  It is unclear whether Plaintiff contends that these statutes establish a constitutionally-protected liberty or property interest guaranteed under the United States Constitution.  "An alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution." *Dean v. Escambia Cnty.*, No. 3:05-cv-29-LAC/MD, 2005 WL 927387, at *8 (N.D. Fla. Apr. 20, 2005).

The "Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). The Supreme Court has recognized that parents have a  fundamental right to make decisions concerning the care, custody, and control of their children – including matters pertaining to their education.  *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35 (1925); *Wisconsin v. Yoder*, 406 U.S. 205 (1972).

The allegations in Plaintiff's Second Amended Verified Complaint do not sufficiently allege the deprivation of a constitutionally-protected liberty interest. Although Plaintiff identifies Florida Statutes he maintains were violated by Defendant's school choice and hardship procedures, those alleged violations do not relate to rights guaranteed under the United States Constitution.  Courts have upheld

limitations concerning parents' rights with respect to students' education in public schools.  *See Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1223 (11th Cir. 2023) ("This Court has issued its own series of decisions outlining the contours of parents' liberty interest to control the upbringing of their children[.]") (collecting cases); *Frazier ex rel. Frazier v. Winn*, 535 F.3d 1279, 1281–86 (11th Cir. 2008) (holding that Florida's Pledge of Allegiance statute, which requires students to recite the Pledge in the absence of a written request to the contrary by a parent, is constitutional despite restricting the students' freedom of speech because it advances the fundamental rights of parents to direct the upbringing of their children); *Arnold v. Bd. of Educ. of Escambia Cnty. Ala.*, 880 F.2d 305, 313 (11th Cir. 1989) ("[W]hen parents enroll their children in public schools they cannot demand that the educational program be tailored to their individual preferences."); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395–96 (6th Cir. 2005) ("[w]hether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or [] a dress code, these issues of public education are generally 'committed to the control of state and local authorities.'"); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001) ("While [p]arents may have a fundamental right in the upbringing and education of their children, this right does not cover the [p]arent's objection to a public school Uniform Policy.").  Plaintiff has not identified caselaw and the court has not located binding precedent holding that school choice and hardship policies provide rights

protected by the United States Constitution.  As a result, Plaintiff has failed to state a claim in Count VI for a § 1983 due process violation and the court recommends that Count VI be dismissed.

### 2.   Equal Protection Claim (Count VII)

In Count VII, Plaintiff alleges that Defendant impermissibly gerrymandered its school assignment boundaries on the basis of race and thereby violated Plaintiff's rights under the Equal Protection Clause.  (Compl. ¶¶ 219–28.)  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause prohibits a State, without sufficient justification, from 'separat[ing] its citizens into different voting districts on the basis of race.'" *Bethune-Hill v. Virginia State Bd. of Elections*, 580 U.S. 178, 187 (2017) (quoting *Miller v. Johnson*, 515 U.S. 900, 911 (1995)).  The Supreme Court has held that a plaintiff challenging the apportionment of voting districts under the Equal Protection Clause "may state a claim by alleging that the legislation, though race-neutral on its face, rationally cannot be understood as anything other than an effort to separate voters into different districts on the basis of race, and that the separation lacks sufficient justification." *Shaw v. Reno*, 509 U.S. 630, 649 (1993); *see also Bethune-Hill*, 580 U.S. at 187 ("[A] plaintiff alleging racial gerrymandering bears the burden 'to show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating

the legislature's decision to place a significant number of voters within or without a particular district.'") (citing *Miller*, 515 U.S. at 916).

Plaintiff sued Defendant contending that "race was the predominant factor" in the design of Defendant's school boundaries and school board districts. (Compl. ¶¶ 1-6, 20–22, 119–55, 224–26.) According to Plaintiff's detailed allegations in the Second Amended Verified Complaint, Defendant's school boundaries and school board district boundaries were designed with the intent to discriminate based on race. (*Id.* ¶¶ 119–76.) Plaintiff supports his allegations with maps purporting to show the overlay of the school district zones with the racial makeup of Tampa, purported irregularities in school assignments based on race, and statements from School Board members and the superintendent indicating that race was a consideration in determining the school attendance zones. *See generally* (*Id.*); *see also* (Dkts. 38-1, 38-11.) Plaintiff has sufficiently alleged that Defendant made school boundary and school board district boundary decisions based on race, failed to assign white students to predominately African-American schools that were closer to their residence, assigned minority students to predominately African-American schools that were further from their residences, drew district map boundaries that directly correspond to race, and that the decisions were discriminatory and intentional. (Compl. ¶¶ 1–6, 20–22, 119–55, 224–26.) These allegations are sufficient to state a claim for a violation of the Equal Protection Clause. *See Shaw*, 509 U.S. at 649 ("We hold only that, on the facts of this case, appellants have stated a claim sufficient to defeat the state appellees' motion to

dismiss."); *Bethune-Hill*, 580 U.S. 178, 189 ("The Equal Protection Clause does not prohibit misshapen districts.  It prohibits unjustified racial classifications."); *see also Methelus v. Sch. Bd. of Collier Cnty., Fla.*, 243 F. Supp. 3d 1266, 1280 (M.D. Fla. 2017) (finding allegations sufficient to state equal protection claim where alleged "policy forced [students] to seek out and pay for unequal education programs because of their national origin and status as foreign-born ELL students"); *Barnett v. Baldwin Cnty. Bd. of Educ.*, 60 F. Supp. 3d 1216, 1231 (S.D. Ala. 2014) (denying motion for judgment on the pleadings on parents' § 1983 claim alleging equal protection violations against students).  Accordingly, the court recommends that Defendant's Motion be denied as to Count VII.

### vi.    Florida Constitutional Claims (Counts VIII and IX)

In Counts VIII and IX, Plaintiff asserts causes of action for alleged violations of Article IX, section 1(a) of the Florida Constitution.  (Compl. ¶¶ 229–37.)  Article IX, section 1(a) states in relevant part:

> The education of children is a fundamental value of the people of the State of Florida.  It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing within its borders.  Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education and for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require.

Fla. Const. art. IX, § 1(a).[4]  "Article IX, section 1(a) is a limitation on the [Florida] Legislature's power because it provides both a mandate to provide for children's education and a restriction on the execution of that mandate." *Bush v. Holmes*, 919 So. 2d 392, 406 (Fla. 2006).  Specifically, "[t]he third sentence of article IX, section 1(a) provides a restriction on the exercise of this mandate by specifying that the adequate provision required in the second sentence 'shall be made by law for a uniform, efficient, safe, secure and high quality system of free public schools.'" *Id.* at 407 (emphasis removed); *see also Citizens for Strong Sch., Inc. v. Fla. State Bd. of Educ.*, 262 So. 3d 127, 140 (Fla. 2019).

Defendant moves to dismiss Counts VIII and IX and argues that Plaintiff has not stated a claim on behalf of himself for violations of Article IX, section 1(a) and that Plaintiff otherwise cannot assert a private right of action under that section.  (Dkt. 45 at 21–22.)  Plaintiff responds that Counts VIII and IX properly challenge the constitutionality of state law.  (Dkt. 49 at 28–29.)  Upon consideration, the court finds that Plaintiff has failed to state a cause of action under Article IX, section 1(a) of the Florida Constitution and therefore recommends that Counts VIII and IX must be dismissed.

The Florida Supreme Court has recognized that a parent may have standing to challenge the constitutional validity of a legislative act alleged to be harming the

---

[4] Section 1(a) goes on to state that "[t]o assure that children attending public schools obtain a high quality education, the legislature shall make adequate provision to ensure that, by the beginning of the 2010 school year, there are sufficient number of classrooms so that" certain maximum number of students per classroom are met.  Fla. Const. art. IX, § 1(a).

educational interests of their children. *See Coal. for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles*, 680 So. 2d 400, 403, 403 n.5 (Fla. 1996) (noting the difference in Florida and federal standing requirements and discussing citizen and taxpayer standing to challenge constitutional validity of Florida legislative acts).  However, Florida courts have found that article IX, section 1(a) of the Florida Constitution is not "self-executing" and thus does not create a private cause of action "without the aid of legislative enactment." *Simon v. Celebration Co.*, 883 So. 2d 826, 831 (Fla. 5th DCA 2004) (quoting *Gray v. Bryant,* 125 So. 2d 846 (Fla. 1960)).  Article IX, section 1(a) further does not create a private right of action against individual school boards because it "specifically states that the provision of an adequate education must be made by the Legislature since the provision states that 'adequate provision shall be made by law.'"  *Sch. Bd. of Miami-Dade Cnty. v. King*, 940 So. 2d 593, 603 (Fla. 1st DCA 2006) (quoting *Simon*, 883 So. 2d at 831).  Thus, "private claims pursuant to this Florida constitutional provision alone, without regard to adequate legislative provisions, are unrecognized[.]" *M.C.G. ex rel. Gonzalez v. Sch. Bd. of Hillsborough Cnty., Fla.*, No. 8:06-cv-124-T17-MAP, 2006 WL 1528872, at *4 (M.D. Fla. June 1, 2006) (granting motion to dismiss count brought under article IX, section 1(a)) (citing *Simon*, 833 So. 2d at 831); *see also Kunz v. Sch. Bd. of Palm Beach Cnty.*, 237 So. 3d 1026, 1027 (Fla. 4th DCA 2018) ("Because the amendment compelled appropriation to achieve a goal, and not a method of enforcement, it does not provide a private right of action to enforce any specific procedure.").

Unlike the plaintiffs in *Holmes*, on which Plaintiff relies, Plaintiff here does not challenge the constitutionality of any act by the Florida legislature. Rather his Second Amended Verified Complaint is directed entirely to the actions of Defendant, the School Board of Hillsborough County, in setting the boundaries of various school attendance zones. (Dkt. 38, Compl.) For example, Plaintiff asserts in Count VIII that Defendant has failed to provide a "high quality system of free public schools" because its "manipulation of housing property values results in an additional fee that parents must pay to attend certain public schools in the form of higher rents or higher home sales prices." (*Id.* ¶¶ 229–31.) In Count IX, Plaintiff alleges that through its "[g]errymander[ing] of school attendance zones," Defendant is failing to provide a "uniform [and] efficient" system of free public schools. (*Id.* ¶¶ 232–37.) Plaintiff seeks declaratory relief that Defendant's "actions, omissions, policies , and procedures" violate article IX, section 1 of the Florida Constitution, among other statutes, as well as injunctive relief, damages, attorney fees and costs related to Defendant's actions in drawing school district maps and electing its members. (Compl. at 51–53.)

Without adequately challenging the constitutionality of a legislative provision, Plaintiff cannot maintain a private cause of action against Defendant to enforce article IX, section 1(a) of the Florida Constitution. *See, e.g.*, *M.C.G. ex rel. Gonzalez*, 2006 WL 1528872, at *4; *Simon*, 883 So. 2d at 831 (affirming that no private cause of action exists for the enforcement of Article IX, section 1(a) against individual school boards).

Accordingly, the court recommends that Counts VIII and IX be dismissed with prejudice.

## MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff moved for a preliminary injunction against Defendant. (Dkt. 40.) The Honorable District Judge Steven D. Merryday referred Plaintiff's Motion for Preliminary Injunctive Relief pursuant to Federal Rule of Civil Procedure 65 (Dkt. 55) to the undersigned. Plaintiff filed his Motion for Preliminary Injunctive Relief to "force Defendant to place a single student (Plaintiff's child J.W. ) at Carrollwood K-8 for the 2023-2024 sixth grade school year" or alternatively to "enjoin Defendant from implementing the recently promulgated Carrollwood K-8 format change" and maintain the status quo. (Dkt. 40 at 4.) Plaintiff maintains he is likely to prevail on the merits of his claim in Count III for a violation of the EEOA, 20 U.S.C. § 1703. (Dkt. 40 at 4-5.) Defendant objects to Plaintiff's Motion and maintains that Plaintiff lacks standing to pursue this claim on behalf of his minor child. (Dkt. 41 at 3-4.)

The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). To obtain a preliminary injunction, the movant must show that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the

injunction, if issued, would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly carries the burden of persuasion as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (internal citation and quotation omitted). The sole function of an action for injunction is to forestall future violations. *United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952). As such, an injunction serves to "preserve the relative positions of the parties until a trial on the merits can be held," *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983), and therefore cannot serve as a sanction for past conduct that may be addressed by adequate remedies at law, *Alabama v. U.S. Army Corps of Eng'rs.*, 424 F.3d 1117, 1133 (11th Cir. 2005). Because a preliminary injunction "is an extraordinary and drastic remedy," the movant must "clearly" establish the burden of persuasion as to each of the four criteria. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (internal citations and quotations omitted).

To obtain preliminary injunctive relief, the movant must demonstrate a substantial likelihood of prevailing on the cause of action at issue. *U.S. Army Corps of Eng'rs.*, 424 F.3d at 1134. Stated otherwise, the movant must show that it has a substantial likelihood of success on the merits of the underlying case when the case is ultimately tried. *Id.* at 1128. A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success. *Schiavo ex rel.*

*Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1383 (M.D. Fla.), *aff'd*, 403 F.3d 1223 (11th Cir. 2005).

Considering Plaintiff's EEOA claim in Count III of the Second Amended Verified Complaint and the undersigned's recommendations concerning Defendant's Motion to Dismiss, Plaintiff has not established the requirements for preliminary injunctive relief. Specifically, as the undersigned recommends granting Defendant's Motion to Dismiss, Plaintiff has not established a likelihood of prevailing on Count III of the Second Amended Verified Complaint.

As previously stated, the plain language of 20 U.S.C. § 1703(c) does not encompass a cause of action for parents to sue for the denial of an equal educational opportunity of their child. *See Coggin Auto. Corp.*, 292 F.3d at 1332 ("The general rule is that unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language."). Rather, the statute defines prohibited activities and provides a private right of action to the "individual denied an equal educational opportunity." 20 U.S.C. § 1706. The individual referenced in the statute is the student. *See Collins*, 156 F. Supp. 3d at 456–57; *Neil Through Cyprian,* 2017 WL 2911578, at *7. Thus, Plaintiff does not have a cause of action as an individual under the plain language of the EEOA. *See Bradford*, 2019 WL 572981, at *5 (recommending dismissal of complaint asserting EEOA violations where plaintiff sought to bring action on behalf of his grandchildren). Plaintiff, as a parent of J.W., may not state a claim under the EEOA to vindicate the denial of an equal educational opportunity to

J.W.   As a result, Plaintiff has not established a likelihood of prevailing on this claim. Accordingly, the undersigned recommends denying Plaintiff's Motion for Preliminary Injunctive Relief (Dkt. 40) without prejudice.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that:

1. The Defendant's Motion to Dismiss (Dkt. 45) be **GRANTED in part** and **DENIED in part**.

2. Plaintiff's Second Amended Verified Complaint be dismissed with prejudice as to Counts I, II, V, VI, VIII, and IX.

3. Plaintiff's Second Amended Verified Complaint be dismissed without prejudice as to Counts III and IV.

4. Defendant's Motion to Dismiss (Dkt. 45) be denied as to Count VII.

5. Plaintiff's Motion for Preliminary Injunctive Relief (Dkt. 40) be **DENIED without prejudice**.

**IT IS SO REPORTED** in Tampa, Florida, on February 29, 2024.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has 14 days after being served with this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Steven D. Merryday
Counsel of Record
Unrepresented Party