UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER,

    Plaintiff,

v.                                             Case No. 8:23-cv-00181-SDM-JSS

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

    Defendant.

_____/

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S THIRD AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant, the School Board of Hillsborough County, Florida (the "School Board") moves for judgment on the pleadings as to Plaintiff Blake Warner ("Warner")'s Third Amended Verified Complaint (Doc. 79) (the "Complaint").

### I. INTRODUCTION AND BACKGROUND

This Court should enter judgment as a matter of law on the pleadings because Warner's claims, contending the "school assignment boundaries violate Mr. Warner's rights" and the "districts violate Mr. Warner's rights", *see* Doc. 79 ¶¶ 160 and 168, fail as a matter of law. Warner's claims fail because both are barred by the parties' prior settlement agreement. The School Board took no action affecting Warner or his child following the release. Instead,

77509195;2

Warner relocated his residence, and subsequently, Warner made a new voluntary choice to assign his child to yet another school option.

As set forth in his Third Amended Verified Complaint, Warner currently pleads two claims under 42 U.S.C. § 1983: (1) Count I challenging the school attendance boundary assignments; and (2) Count II challenging the voting map for School Board members. Doc. 79, pp. 38-39.

Previously, Warner executed a settlement agreement with the School Board, resolving a prior matter, and Warner provided a broad release and received specific school assignments, for middle school and high school, for Warner's son. Unable to: (a) plead a breach of the settlement agreement or (b) identify any action by the School Board against the Warner since the time the agreement was executed, Warner initiated this litigation and pursued a variety of claims – including frivolous Fair Housing Act claims.

Accordingly, this Court should enter judgment against the two claims as a matter of law because (1) both claims are barred by the parties' prior settlement agreement, and (2) Warner's voluntary actions fail to state a claim.

## II.   STANDARD FOR DETERMINATION

Federal Rule of Civil Procedure 12(c) "provides 'a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings.'" *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quoting with emphasis Charles Alan Wright & Arthur

2

R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2004)). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law," accepting as true all material facts alleged in the non-moving party's pleading. *Id.* at 1335 (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). Threadbare legal conclusions in a complaint "are not entitled to the assumption of truth," but instead the complaint must include factual allegations that are plausible on their face. *Samara v. Taylor*, 38 F.4th 141, 152 (11th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III.  MEMORANDUM OF LAW

#### A.  Warner Previously Executed a Settlement Agreement with a Broad Release.

Warner's two claims are barred by the parties' prior settlement agreement, which is attached to the School Board's Answer as Exhibit 1. *See* Doc. 82-1 (the "Settlement Agreement"). In the Settlement Agreement, Warner and his son provided a general release of the School Board for "any and all claims, demands, causes of action, complaints or charges, known or unknown specifically related to J.W.'s education" through March 15, 2022. *See* Doc. 82-1, Ex. 1, p.2, ¶ 5.

In the School Board's third affirmative defense to Warner's Complaint, the School Board explained pursuant to the Settlement Agreement, Warner

3

received a specific school assignment for his minor child. *See* Doc. 82, pp. 33-35 and Doc. 82-1, p.2 (providing for enrollment at Coleman middle school and Plant high school).

The Settlement Agreement also includes a broad release where Warner agreed as follows:

> **5. Release of the School Board and District:** For and in consideration of the required acts and promises set forth in this Agreement, the **Parent hereby knowingly and voluntarily releases and discharges the School Board and District from any and all claims, demands, causes of action, complaints or charges, known or unknown** specifically related J.W.'s education, services, and educational program in the District **through the date of the execution of this Agreement**.
>
> This shall include, but not be limited to, all claims for services, supports, therapies, evaluations, tutoring, training, compensatory education or services, reimbursements, or claims for expenses, costs, fees, attorneys' fees, **and all losses of any kind whatsoever related specifically to J.W.'s education**, **which the Parent has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the Effective Date of this Agreement**.
>
> The Parent understands that this **release shall also cover any claims, if any, that may belong independently to J.W. related to his educational services and program**. The claims described in this paragraph shall be collectively referred to as "Released Claims" herein. The Parties jointly agree that the release in this paragraph shall not act to impair the enforceability of this Agreement or a waiver of the Parties' respective rights to take action to enforce this Agreement. The Parties further agree that this release

4

77509195;2

> shall not cover any claim that is not regarding J.W.'s education or any new claim that may arise by reason of an act or omission occurring after the Effective Date of this Agreement. To that end, the School Board and District acknowledge that no provision in this Agreement may be construed as relieving them of any obligation they may have under federal or state law to provide J.W. a FAPE for any time after the execution of this Agreement.

*See* Doc. 82-1, Settlement Agreement, ¶ 5 (emphasis added).

### B. Warner Subsequently Moved his Residence, and then Later, Voluntarily Made a New School Choice for his Minor Child.

Warner's first claim, challenging the attendance boundary assignments, is barred by his voluntary move and subsequently made new school choice option. After executing the Settlement Agreement in March 2022, Warner moved his residence sometime after October 2022 away from south Tampa. *See* Doc. 79, ¶ 83 (alleging Warner resided in south Tampa from August 2017 to October 2022). As a result of the move, Warner was able to maintain the election he received through the Settlement Agreement, or select a new school close to his new residence. *See* Doc. 79, ¶ 54 (alleging an assignment to Adams Middle School).

In its Eighth Affirmative Defense, the School Board explains that during the pendency of this litigation, Warner sought and received a new school placement for his child. *See* Doc. 82, p.36. In other words, Warner selected a third school option that was neither Coleman (negotiated in the Settlement

Agreement) nor Adams (the school assigned to the home Warner purchased after the date of the Settlement Agreement).[1]

C. **Warner's lawsuit is barred by the parties' prior settlement agreement.**

In Count I, Warner appears to attack the school assignment boundary changes made in May and June, 2023. *See* Doc. 79, ¶¶ 52 and 72; Doc. 79-9 (discussing changes resulting from Carrollwood Elementary becoming a PK-8 school). As a result of the change, Carrollwood Elementary (previously a PK-5 school) expands to have grades 6, 7, and 8 (*i.e.*, middle school), with middle school attendance boundaries that are identical to the PK-5 boundaries previously in place. *See* Doc. 79-9, pp.2-4. The home Warner purchased (after October 2022, *see* Doc. 79, ¶ 83) was not assigned to Carrollwood before or after this change. In other words, this change did <u>not</u> affect Warner nor his minor child, and Warner does not allege any direct impact. *See* Doc. 79, ¶¶ 80-82 (alleging general injury from knowledge of allegedly segregated school system).

As disclosed in his Complaint and above, Warner moved his residence after October 2022 away from south Tampa. *See* Doc. 79, ¶ 83 (alleging Warner resided in south Tampa from August 2017 to October 2022). As a result of his move, Warner had three options: (i) enroll his child in the school assigned to

---

[1] The specific school assigned following Warner's successful choice application is not alleged here, to protect the privacy of Warner's minor child.

his new residence; (ii) enroll his child at the school Warner negotiated for in his Settlement Agreement (Doc. 82-1, p.2); or (iii) seek a new school choice assignment. *See* Doc. 82, p.36; Doc. 79-9, p.3 (explaining that at first, general school choice options would be closed for Carrollwood PK-8, but normal school choice hardship rules would apply.[2]

In Count II, Warner attacks the district map – for voting for School Board members – "promulgated on December 16, 2021." *See* Doc. 79, ¶ 100; Doc. 79-11 (the 2021 School Board Redistricting Map). But this December 16, 2021 map was obviously enacted before the date Warner executed the March 15, 2022 Settlement Agreement.

After Warner executed the Settlement Agreement and released all claims against the School Board, the School Board took <u>no</u> action (i) affecting the school assignment for Warner's minor child, <u>nor</u> (ii) changing the voting map. After Warner executed the Settlement Agreement, Warner moved his residence, providing a new school option for his child – if Warner had elected that new option. After Warner executed the Settlement Agreement, Warner made a new school choice application, successfully resulting in a placement to

---

[2] The limited availability for choice applications makes sense given the utilization figures included on the same page. *See* Doc. 79-9, p.3 (reflecting proposed utilization with growth at 100%). Further, this also reflects the change was <u>not</u> based on race – as Warner contends – but merely based on having new middle school boundaries consistent with the same boundaries for the elementary grades already in place. *See* Doc. 79-9, p.2.

7

a third school option. Each action was taken solely by Warner, with no action by the School Board pled in Warner's operative pleading.

Although certain school boundary assignment changes were approved after the date of the release, those changes did <u>not</u> change the school options available to Warner for his child for the school year at issue in his Complaint. And again, there was no change to the voting maps after the date of the release. Thus, Warner cannot allege or demonstrate any impact to him (or his child) following the execution of the broad release. Accordingly, because of the release Warner executed (on March 15, 2022), and the fact Warner voluntarily moved to his current address following the execution of the Settlement Agreement, Warner's claims fail as a matter of law.

The extremely broad language of the release encompasses the allegations in Warner's Complaint. Although Warner's pleading, as amended, purports to focus on Section 1983 claims, Warner ties both his claims to the alleged assignment of school districts and the "district map boundaries," which directly relates to "J.W.'s education." *See* Doc. 82-1, Ex. 1, p.2, ¶ 5.

Accordingly, this Court should enter judgment as a matter of law against Warner's Complaint.

## IV.   CONCLUSION

Unhappy with both the school assignment for his new home and the school assignments he negotiated in his prior Settlement Agreement, Warner

8

initiated this litigation in an attempt to re-negotiate where his son would attend middle school and high school. Warner's Complaint attempts to assert baseless attacks on the school assignment boundaries and voting district map. But Warner's prior release of claims bars both claims, and the School Board requests final judgment in its favor.

## V. LOCAL RULE 3.01(G) CERTIFICATION

Although not required for a motion for judgment on the pleadings, I certify that I have conferred with Plaintiff, Mr. Warner, by telephone and email regarding the content of this motion, and Plaintiff opposes the relief sought herein.

Respectfully submitted,

*/s/ Jason L. Margolin*
**JASON L. MARGOLIN**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**BENJAMIN G. ROBINSON, III**
Florida Bar No. 1045169
benjamin.robinson@akerman.com
caren.deruiter@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

9

77509195;2

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2024, I filed the foregoing using the Court's CM/ECF System, which will send a true and correct copy to all counsel of record.

*/s/ Jason L. Margolin*
Counsel for Defendant