# United States District Court
## For The Middle District of Florida
### Tampa Division

Blake Warner

v.

The School Board of Hillsborough County Florida

Case Number 8:23-CV-181-SDM

## Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings

*Defendant* moved pursuant Rule 12(c) challenging the legal sufficiency of the Amended Complaint because a) "they are barred by the parties' prior settlement agreement". However the board's motion is unsupported by fact or law because they:

1. relitigated an issue the court already ruled on. Specifically that the school board cannot use the settlement agreement in a Rule 12 motion because it was not central to the Plaintiff's claims and the validity of the agreement was disputed;

2. continued to advance this release claim despite being told several times in prior filings that there was no consideration given to Mr. Warner to form a valid contract, and then failed to plead or argue consideration in the instant motion; and

3. argued release of claims that accrued after the date of release; and

1

4. argued a broad general release, despite the agreement clearly containing a limited release and knowledge that the parties intended it to be a limited release[1].

## Defendant estopped from relitigating issue

The rule 12(c) analysis for documents attached to pleadings is the exact same as for documents attached to a rule 12(b) motion. *see* Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) ("Given that the operative rule language is identical and that the provisions serve the same purpose, we believe that the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well.").

Here, Defendant referenced the settlement agreement by reference in their Rule 12(b)(6) motion[2] and then made nearly identical arguments in their instant Rule 12(c) motion.

The magistrate judge issued findings of law in their Report and Recommendation ("R&R") that the settlement agreement could only be considered at a motion for summary judgment, *not* a Rule 12 motion, because "the settlement agreement was not referenced in the 53-page paragraph Second Amended Verified Complaint, nor do Plaintiff's claims rely on the settlement agreement in any way" and "the settlement agreement appears to be neither undisputed, nor central to Plaintiff's claims". Citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

The R&R had the following "NOTICE TO PARTIES":

> "A party has 14 days after being served with this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1. " *see* Doc 72 pp. 41

---

[1] *see* attached emails and document redline between the original draft and the final agreement to remove any doubt that the parties intended for the release to be narrow (original draft contained a broad general release, that was negotiated down to a narrow release) in the final version.

[2] *see* Doc. 45 pp. 3 ("Plaintiff previously entered into a settlement agreement with the School Board, in which Plaintiff (and his minor child, J.W.) released all claims relating to J.W.'s education. Doc. 30-1, Ex. 1 (the 'Settlement Agreement'), at 2 ¶ 5."

2

Defendant had an opportunity to object to these findings of fact, yet failed to do so. The only difference between their 12(b)(6) and 12(c) motion, is the 12(b)(6) motion referenced the settlement agreement by reference, and the 12(c) relied on the attachment of the agreement to the school board's answer. But under *Horsley*, this is a distinction without a difference: they are functionally identical, and the proper vehicle to address this is a motion for summary judgment. As this issue has already been adjudicated by this court, Defendant is estopped from relitigating it again in a subsequent Rule 12 motion.

To the extent that the school board's 12(c) motion is construed as a Rule 60(b) motion, the motion has not articulated any grounds for such relief and the filing of the motion was untimely.

## The court cannot consider the Agreement at this stage in the litigation

As Mr. Warner discussed above, and as the court already found, the agreement attached to the the school board's answer cannot be used in the context of a Rule 12 motion because it is not referenced by or central to Plaintiff's claims and the agreement is disputed. *see Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## Settlement Release is not enforceable

Release clauses are disfavored and will be strictly construed against the party claiming to be relieved of liability[3]

### 1. The release was not a general release

"'To determine the scope of a release, [one must] look to the parties intent as expressed in the contract.' *Solitron Devices. Inc. v. Honeywell, Inc.*, 842 F.2d 274, 277 (11th Cir. 1988) (citing *Alliance Oil Refining Co. v. United States*, 13 Cl.Ct. 486 (1987)). 'A release entered into that clearly waives a

---

[3]*see Murphy v. Young Men's Christian Ass'n of Lake Wales*, Inc., 974 So. 2d 565, 567-68 (Fla. Dist. Ct. App. 2008) ("Exculpatory clauses are disfavored and will be strictly construed against the party claiming to be relieved of liability.")

right to pursue a cause of action is binding.' *National Helicopter Corp. v. City of New York*, 137 F.3d 81, 87 (2d Cir. 1998). However, 'a release should not be read to include matters of which the parties had no intention to dispose.' *Id.*" *Sunbelt Cranes Cons. Hauling v. Gulf Coast Erectors*, 189 F. Supp. 2d 1341, 1346 (M.D. Fla. 2002)

The plain language of the release makes clear that the parties intended to release claims related to the direct educational instruction given to J.W.:

"the Parent hereby knowingly and voluntarily releases and discharges the School Board and District from any and all claims, demands, causes of action, complaints or charges, known or unknown *specifically related J.W.'s education, services, and educational program* in the District through the date of the execution of this Agreement."

"The Parties further agree that this release shall not cover any claim that is not regarding J.W.'s education or any new claim that may arise by reason of an act or omission occurring after the Effective Date of this Agreement."

Mr. Warner's voter challenge to the school board's district voting map is not "specifically related J.W.'s education", and neither is his racial gerrymandering challenge to the student school assignment boundaries of schools all across the *entire* school district. Any argument to the contrary is patently frivolous: the fact that J.W. happens to attend a school operated by the board, standing alone, does not make every claim against the board "specifically related J.W.'s education".

Especially in light of the fact that the majority of the boundary challenges are to middle and high school boundaries, and J.W. was in elementary school at the date of the release, making it impossible under any circumstance for the release to apply to middle and high school boundary challenges.

Particularly egregious is the argument that somehow Mr. Warner's right to vote for school board representatives is somehow "specifically related J.W.'s education", when Mr. Warner would get to vote for school board representatives regardless of whether he had any children at all.

4

## 2. No consideration was given to Mr. Warner in exchange for the release

"'The basic elements of an enforceable contract are offer, acceptance, consideration, and specification of essential terms.' *Triton Stone Holdings, L.L.C. v. Magna Bus., L.L.C.*, 308 So. 3d 1002, 1006 (Fla. 4th DCA 2020) (quoting *Jericho*, 207 So. 3d at 941).". *see Moore v. Wagner, 377 So. 3d 163, 167 (Fla. Dist. Ct. App. 2023)*.

The only consideration offered by the school board in their attached agreement is:

> "Consideration: As consideration of the promises made by the Parent under this Agreement, The School Board agrees:
>
> (a) REDACTED
>
> (b) to guarantee J.W. a school assignment through the District Choice Options program (hereinafter "CHOICE") for middle school to Coleman Middle School (hereinafter "Coleman") and for high school to Plant High School (hereinafter "Plant") provided that the Parent completes the CHOICE application as set forth below." Doc 82-1 pp. 1-2

However guaranteed school placement is consideration for J.W., not Mr. Warner. The agreement does not allow Mr. Warner to enroll at Coleman Middle School. The release was not even mutual, the school board did not release Mr. Warner of any claims (not that there were any to release).

Therefore the release is only potentially enforceable on J.W., *not* Mr. Warner as there is no valid contract with Mr. Warner[4].

## 3. Count I accrued after the date of release

The school board admits that it promulgated the new student assignment boundaries on May 9, 2023 (Doc. 82 ¶ 52) and June 20, 2023 (Doc. 82 ¶ 72) and that it

---

[4] *see Maytronics, Ltd. v. Aqua Vac Systems*, Inc., 277 F.3d 1317, 1320-21 (11th Cir. 2002) ("In *Pick Kwik Food Stores, Inc. v. Tenser*, 407 So.2d 216 (Fla.Dist.Ct.App. 1981), the court found that an agreement between the operator of a convenience store and a gasoline retailer giving the latter the right to sell gasoline on premises leased by the convenience store was "void from the beginning for lack of consideration or . . . lack of mutuality [of obligation]." *Id*. at 218")

was sued because of those acts performed in 2023. *see also* Doc. 86 ("In Count I, Warner appears to attack the school assignment boundary changes made in May and June, 2023"). However the release only potentially covers claims that accrued before the agreement was executed on or before March 15, 2022 (Doc. 82-1), more than a year prior:

> "Release of the School Board and District: For and in consideration of the required acts and promises set forth in this Agreement, the Parent hereby knowingly and voluntarily **RELEASES AND DISCHARGES THE SCHOOL BOARD** and District from any and all claims, demands, causes of action, complaints or charges, known or unknown specifically related J.W.'s education, services, and educational program in the District **THROUGH THE DATE OF THE EXECUTION OF THIS AGREEMENT**." *see* Doc. 82

Next, the board argues that Mr. Warner must be harmed after the date of release regardless of when the acts occurred. Yet the board failed to cite any portion of the settlement agreement that supports this assertion because it does not exist. The agreement says "any fact(s), act(s) or event(s) occurring prior to the Effective Date of this Agreement". To the extent the board is arguing Article III standing, the court already addressed and ruled that Mr. Warner has standing.

The board further argues that because Mr. Warner voluntarily moved from south tampa to north tampa, he cannot sue for discrimination with regards to J.W.'s assignment in north tampa. This is argument misguided for several reasons:

First, J.W.'s school assignment is no longer at issue because the court dismissed all count's related to J.W.'s placement. *see* Doc. 78 ORDER adopting 72–report and recommendations.

Second, that claim did not exist at the date of release on March 15, 2022, because the claim did not exist until the school board changed the school boundary in 2023 making Carrollwood Elementary a K-8.

Third, the school Mr. Warner ultimately chose to enroll J.W. in is irrelevant to whether the board excluded him from a school that he was not permitted to attend

on the basis of race. Mr. Warner further disputes this claim because J.W. attends the school that Defendant currently assigned him to based on his address[5].

### 4. THE RELEASE WAS AMBIGUOUS

"However, Florida law also provides that "'[i]f a written contract is ambiguous or obscure in its terms, so that the contractual intention of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence of the subject matter of the contract, of the relations of the parties to each other, and of the facts and circumstances surrounding them when they entered into the contract may be received to enable the court to make a proper interpretation of the instrument.'" *Larsen v. AirTran Airways, Inc.*, 8:07-CV-00442-T-17TBM, 2009 WL 1076035, *10 (M.D. Fla. Apr. 21, 2009) (quoting *Gilman v. John Hancock Variable Life Ins. Co.*, 2003 WL 23191098 at *8 (Fla. Cir. Ct. Oct. 20, 2003) (in turn quoting *L'Engle v. Scottish Union & Nat'l Fire Ins. Co.*, 37 So. 462 (Fla.1904))." *Moore v. Lender Processing Servs. Inc.*, Case No: 3:12-cv-205-J-UATCMCR, at *5 (M.D. Fla. June 5, 2013)

To the extent that the Court finds that the claims are covered by the release, the release is unenforceable because the scope of the release was not clear and unambiguous to Mr. Warner. The words "specifically related to J.W.'s education..." would be superfluous and meaningless if the court extends that to practically any claim against the School Board by virtue that they always have some tenuous connection to J.W.'s education.

The release itself gives examples of the types of claims that the parties intended to be released: "all claims for services, supports, therapies, evaluations, tutoring, training, compensatory education or services". These are all claims or relief associated with I.D.E.A. and Section 504 litigation which is what the underlying litigation was about. Nothing in the agreement either expresses or implies that the release went beyond I.D.E.A. and Section 504 claims, much less to voting map challenges, and racial discrimination challenges to student school assignment maps at large. The intent to release these claims must be clear[6] and unambiguous

---

[5] Mr. Warner enrolled J.W. at this school one year before the new boundary change was to take affect, to avoid J.W. having to change schools and because J.W. was not permitted to attend Carrollwood K-8.

[6] *see Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc.*, 974 So. 2d 565, 568 (Fla. Dist. Ct. App. 2008)

to an ordinary and knowledgeable person, to be enforceable[7].

The nonsensical interpretation of the release that Defendant is asking this court to adopt would also preclude Mr. Warner from bringing a premise liability claim against the school board if he had a slip-and-fall at J.W.'s school. It would render the words "specifically related to J.W.'s education" meaningless.

## 5. Civil rights waiver was not knowingly, voluntarily, and intelligently made

In addition to being knowingly and voluntarily signed, a valid agreement also must: (1) offer some sort of consideration in exchange for the waiver of the right to sue; (2) not require the party to waive future rights; and (3) comply with applicable state and federal laws.

Waiver of civil rights claims are closely scrutinized. *Morey v. McDonald*, CASE NO.: 8:16-cv-3232-T-23AEP, at *6 (M.D. Fla. June 29, 2017) ("The waiver of a Title VII claim is closely scrutinized, and in determining whether a waiver is "knowingly" and "voluntarily" signed, the "totality of the circumstances" are examined. *Puentes v. United Parcel Service, Inc.*, 86 F.3d 196, 198 (11th Cir. 1996)."). Federal Employment discrimination, housing discrimination, and educational discrimination law are all like Clay County kissing cousins[8].

> "In determining whether a release was knowingly and voluntarily entered, the factors that guide a court include: the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the

---

("Such clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away.")

[7]Sanislo v. Give Kids the World, Inc., 157 So. 3d 256, 260-61 (Fla. 2015) ("Exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away.")

[8]The Supreme Court and several lower courts have relied on Title VII precedents to interpret Title VIII. *see DiCenso v. H.U.D.*, 96 F.2d 1004, 1008-09 (7th Cir. 1996); *Huntington Branch of the N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 935 (2d Cir.), aff'd per curiam, 488 U.S. 15 (1988); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 128889 (7th Cir. 1977), cert. denied, 434 U.S. 1025 (1978);

waiver when compared with the benefits to which the employee was already entitled." Beadle v. City of Tampa, 42 F.3d 633, 635 (11th Cir. 1995)

The *Beadle* factors challenged here are the lack of consideration given to Mr. Warner in exchange for the release, and the lack of clarity of the agreement with regard to the scope of the release. This case-by-case "totality of the circumstances" cannot be resolved in a Rule 12 motion in this case.

Additionally, waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. *see Strickland. Brady v. United States*, 397 U.S. 742, 748 (1970); *United States v. Brown*, 586 F.3d 1342, 1346 (11th Cir. 2009). To the extent that the release was ambiguous, the consequences of releasing civil rights claims unrelated to the underlying IDEA litigation were not clear and unambiguous and are therefore unenforceable.

### 6. THE RELEASE VIOLATES PUBLIC POLICY

The release is unenforceable because the interest in enforcement is outweighed by the harm to public policy caused by the enforcement. *see* Newton v. Rumery, 480 U.S. 386 (1987) ("The question whether the policies underlying § 1983 may in some circumstances render a waiver of the right to sue thereunder unenforceable is one of federal law, to be resolved by reference to traditional common-law principles. The relevant principle is that a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.").

The complaint seeks to challenge racial discrimination in the school system at large, and the Supreme Court has already found a strong public policy in eradicating racial discrimination in public education. *see Bob Jones University v. United States*, 461 U.S. 574, 575 (1983) ("The Government's fundamental, overriding interest in eradicating racial discrimination in education substantially outweighs

whatever burden denial of tax benefits places on petitioners' exercise of their religious beliefs."). The only harm the board suffers—the minimal cost of defending the lawsuit against a non-attorney pro se litigant with limited resources—does not outweigh the public interest of eradicating racial discrimination in Hillsborough county public schools at large.

## 7. Defendant impermissibly burden-shifts burden of proof

The burden is on the Defendant to prove the agreement was knowingly and voluntarily made, and the courts cannot presume it. *see* Newton v. Rumery, 480 U.S. 386, 388 (1987) ("The defendants in a § 1983 suit may establish that a particular release executed in exchange for the dismissal of criminal charges was voluntarily made, not the product of prosecutorial overreaching, and was in the public interest. But they must prove that this is so; the courts should not presume it."). Yet the Defendant presented zero argument or evidence that the release was knowingly and voluntarily made, Mr. Warner disputes it, and the court cannot presume it. Therefore this 12(c) motion should be denied.

## Conclusion

Mr. Warner respectfully requests that the Court deny the school board's motion for judgment on the pleadings.

| | |
|---|---|
| 8-10-2024 | /s/blake warner |
| Date | Signature |
| | Blake Warner, *pro se* |
| | 2211 S Village Ave |
| | Tampa, FL 33612 |
| | E-Service: BLAKE@NULL3D.COM |

11