# United States District Court
## For The Middle District of Florida
## Tampa Division

Blake Warner

v.

The School Board of
Hillsborough County Florida

Case Number 8:23-CV-181-SDM-JSS

# Plaintiff's Motion to Compel Answers and Production of Documents

The school board has continuously failed to adequately respond to discovery requests, or produce any documents nearly a *year* after the requests were served, despite being granted every requested extension. They have continuously failed to honor their multiple promises to produce. Despite Mr. Warner's multiple good faith attempts to resolve the matter, he has been unable to get the discovery, and now moves the court for an order compelling discovery to move this case forward.

# I  FACTS AND PROCEDURAL HISTORY

1. On November 29, 2023, Plaintiff served both his First Request for Production and First set of Interrogatories.

2. On January 2, 2024, three days past the discovery deadline, requested an extension to respond to discovery from the Plaintiff. Plaintiff agreed to a 30-day extension to serve *actual* documents and answers however objections and claims of privilege were due by the original deadline.

3. That same day, Defendant moved the court for an extension to respond to the discovery until after the court rules on the pending Motion to Dismiss (Doc. 68). Plaintiff responded and cross moved to compel arguing they waived objections and privilege by missing the deadline.

4. The court granted the motion to extend the deadline until the court rules on the pending Motion to Dismiss (Doc. 68). Notably, the order was not *nunc pro tunc*.

5. On June 7, 2024, the court granted in part and denied in part the Motion to Dismiss (Doc. 78), lifting the discovery stay / extension.

6. On June 22, 2024, Plaintiff emailed Defendant to inform them that their discovery responses were untimely. Two weeks later, Defendant responded and requested, and Plaintiff agreed to, an extension to July 18.

7. On July 18, Defendant failed to properly respond[1] to the discovery requests:

   > Mr. Warner,
   >
   > Thank you again for the prior extension on our discovery responses. We will get the responses to your request for production and interroga-

---

[1]Plaintiff does not take issue with the lack of signature on the interrogatories.

tories later today.  I will need a few more days to get the verification page signed because our signatory is not back until Monday.  I should have that verification page then, and do not expect any changes to the responses, which again, we can send later today.  We are also still working to gather the responsive documents and the email data you have requested.  I'm working to get those to you as soon as we can, but it is taking longer than I expected.

8. Specifically, Plaintiff took issue with improper responses/objections, including a failure to produce documents.  On July 18, 2024, Plaintiff requested dates/times to confer on a motion to compel.  To date, Defendant has not responded.

9. On July 26, 2024, Plaintiff again emailed Defendant to follow up on documents that had not been turned over and regarding the previous inquiry to confer on the motion to compel.  The next day, Defendant responded that they needed more time to produce the documents but provided no ETA.

10. On July 31, 2024, Plaintiff again followed up regarding the status of the outstanding discovery responses.  Defendant did not timely respond, however they did respond to a later request to confer on a motion to compel, on August 7, 2024.

11. During that August 7 conference, Defendant indicated that one reason for the deficient responses was due to not enough time to adequately respond, and spoilation caused by the early decommissioning of an email server that contained discoverable documents.  Mr. Warner has granted all previous requests for an extensions of time to respond.  So Mr. Warner granted them another extension to September 9, 2024 without waiving waiver argument:

Mr. Warner:

Thank you for your time on our call this afternoon. Below is a summary of our conclusions following our conferral. Please reply and let me know if you agree with the summary or if there is anything to change/add.

1. We discussed your draft motion to compel.

   a. We agreed you would extend our deadline to get additional documents to you through Monday, September 9, 2024, without any waive of your arguments, including your argument that there was a prior waiver of objections/privilege.
   b. In the interim, the School Board will prepare a motion for protective order to seek a ruling on our FERPA objections. Before proceeding with this motion, I will review the case law you sent me today.
   c. You may provide some additional questions about the data loss / decommissioned server mentioned in our objections for a future conferral.

2. We discussed our draft motion for judgment on the pleadings and your draft motion to strike.

   a. I will look for a case regarding the consideration argument you raised, which could impact the briefing on these motions.
   b. We may proceed with filing these respective motions at any time. (Again, I will look at the consideration issue, but this does not waive the right either of us have to proceed on this issue. While we may confer further, we agree conferring on these motions is complete).

3. We discussed your unserved subpoena to attorney LaKisha Kinsey-Sallis and our draft motion for protective order.

   a. I am holding on our draft motion for protective order and you are holding on serving the subpoena.
   b. I will prepare a stipulation, which we anticipate will admit/authenticate emails (with drafts of the settlement agreement) exchanged between you and Ms. Kinsey-Sallis.
   c. The stipulation will not discuss "intent", but I understand you will use the emails/drafts to argue your intent in executing the settlement agreement.
   d. I will argue "intent" does not matter here, the language of the agreement controls.

e. We anticipate this stipulation will permit you to withdraw your subpoena (not yet served) and render our motion for protective order unnecessary.

f. Should the School Board try to introduce evidence of its intent from Ms. Kinsey-Sallis, then you would seek to serve the subpoena, and possibly take the deposition of another (Susan Sharp?).

12. On August 29, 2024, Mr. Warner sent an email inquiring on the status of the promised protective order and answers to questions regarding spoilation of the email server. Defendant never responded.

13. Defendant failed to respond at all by the September 8, 2024 discovery due date. The next day, Mr. Warner inquired on the status of the untimely discovery responses. Defendant never responded.

# II   ALL PRIVILEGES WERE WAIVED BY FAILING TO RESPOND THREE TIMES

Defendant blew the original January 2, 2024 deadline to respond to discovery, requested an extension 3 days past the deadline, again blew the June 7, 2024 deadline, and finally requested an extension to September 8, 2024 which they again blew.

A party has thirty days to respond to interrogatories by serving answers or objections, although a longer or shorter time may be imposed by stipulation of the parties or court order. Fed. R. Civ. P. 33(b)(2). Pursuant to Federal Rule of Civil Procedure 33(b)(4), "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); see Middle District Discovery (2015) at 16 ('Absent compelling circumstances, failure to assert objections to an interrogatory within the time for answers constitutes a waiver and will preclude a party from asserting the objection in response to a motion to compel.') Therefore, 'when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived.' *Pitts v. Francis*, 5:07CV169/RS/EMT, 2008 WL 2229524, at *2

(N.D. Fla. May 28, 2008) (citing In re United States, 864 F.2d 1153, 1156 (5th Cir. 1989)). The waiver operates even in situations where a party had a proper objection to a discovery request. Third Party Verification, *Inc. v. SignatureLink, Inc.*, No. 6:06-cv-415-Orl-22DAB, 2007 WL 1288361 *3 (M.D. Fla. May 2, 2007) (holding '[a] party who fails to file timely objections waives all objections, including those based on privilege or work product.')

hspace*0pt *United States v. Wilkins*, Case No: 8:14-cv-993-T-17JSS, at *3 (M.D. Fla. Sep. 21, 2017)

When Mr. Warner reminded Defendant that their discovery was overdue by two weeks, they represented that they assumed Mr. Warner had abandoned his outstanding discovery requests when the court had granted in part and denied in part Defendant's motion to dismiss[2].

They failed to respond a *third* time when they failed to respond in any way by the September 8, 2024 discovery due date.

Technically, they blew the deadline a fourth time when they finally "served" their objections on July 18, 2024 un-notarized, then promised to serve them notarized "a few days later", then failed to serve them until nearly two weeks later on July 30, 2024.

# III   ALL PRIVILEGES WERE WAIVED BY ASSERTING GOOD FAITH DEFENSE

The board raised the affirmative defense of "good faith" in their answer, claiming they acted "lawfully". *see* Doc. 82 pp. 3. But this puts privileged communications at issue, and waives privilege. *see United States ex rel. Rosen v. Exact Scis. Corp.*, 8:19-cv-1526-MSS-AAS, at *4 (M.D. Fla. Feb. 2, 2023)[3]

---

[2]"My apologies that with the Court's order on the dismissal being entered, and your subsequent amended pleading, we did not realize you would be pursuing the same discovery requests. Would you be agreeable to us getting our responses to you by July 18?"

[3]As a general rule, a party "waives the [attorney-client] privilege if it injects into the case an issue that in fairness requires an examination of otherwise protected communications." Cox v. Administrator, U.S. Steel &Carnegie, 17

# IV   THE SCHOOL BOARD MUST SUBMIT A PRIVILEGE LOG

Should the validity of the asserted privileges and protections be challenged, the party asserting the privileges and protections must provide the following in support of a motion for a protective order or in response to a motion to compel production of the allegedly privileged or protected information or documents: (1) a memorandum of law discussing the elements of each privilege or protection asserted; (2) the privilege log for the documents at issue; and, (3) an appendix containing "affidavits, deposition testimony, other sworn statements or other evidence" upon which the party relies to support each element of each asserted privilege or protection in dispute. See CSX Transp., Inc. v. Admiral Ins. Co., No. 93-132-CIV-J-10, 1995 WL 855421, at * 5 (M.D. Fla. July 20, 1995). The appendix shall be organized so that the evidence submitted in support of the privileges or protections asserted is specifically correlated with the information or document to which the evidence applies. The privilege log, appendix and accompanying memorandum of law must be sufficient to establish a prima facie case to support assertion of each privilege or protection.

# V   ATTORNEY CLIENT PRIVILEGE

State law says the school board does not have any attorney-client privilege except in special called board meetings not applicable here. *see* Neu v. Miami Herald Publishing Co., 462 So. 2d 821, 824 (Fla. 1985)[4].

---

F.3d 1386, 1419 (11th Cir. 1994). "Injecting" an issue into litigation in this context means "when a litigant 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.'"

[4]"Petitioners urge that opening up the consultation of the governmental body with its attorney to its adversary in pending litigation gives the adversary an unfair advantage which can be used to secure unmerited or excessive judgments or settlements against the public. There is a good deal of wisdom in petitioners' argument but, as will be made clear

7

To be clear, federal common-law governs attorney-client privilege here[5]. However the state law foreclosing the privilege is not a court procedural rule, rather it governs all document disclosure outside of court. By asserting that privilege while knowingly breaking Florida law raises its own set of ethical questions. But this court need not wade into that issue, merely forcing the board to produce a privilege log will allow Mr. Warner to obtain the withheld records through a public records request (and likely lawsuit) under Florida law.

## VI   FERPA

As a threshold matter, FERPA is not a valid privilege the school board can assert to withhold documents. *see* Sansoni v. Orange Cnty. Sch. Bd., 6:24-cv-327-JSS-LHP, at *4 (M.D. Fla. July 11, 2024) ("see also generally Bigge v. Dist. Sch. Bd. of Citrus Cty., Fla., No. 5:11-cv-210-Oc-10TBS, 2011 WL 6002927, at *1 (M.D. Fla. Nov. 28, 2011) ('FERPA does not create a privilege which protects against the disclosure of student information, rather, it provides for the imposition of sanctions against an offending institution.')."). The proper vehicle would have been for Defendant to move for a protective order when they became aware that Plaintiff sought records potentially covered by FERPA, yet they failed to do so for nearly a year.

Next, FERPA authorizes the release of "directory information" which consists of a student's name, address, telephone listing, email address, and other identifying information. *see* Warner Bros. Records, Inc. v. Does 1-14, No. 8:07-CV-625-T-24TGW,

---

below, we have no constitutional or statutory authority to create an exception to the Sunshine Law for governmental bodies to meet privately with their attorneys to discuss pending litigation."

[5]*see* Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc., 230 F.R.D. 688, 690 (M.D. Fla. 2005) ("In federal question cases, privileges are determined under federal common law. Fed.R.Evid. 501.")

at *4 (M.D. Fla. Nov. 29, 2007)[6]

Yet all of the information sought in the interrogatories the Defendant objected to, is properly classified as "directory information" and therefore can be disclosed under the "directory information exemption":

> As used herein, the term 'identify' when used in reference to student, means to state:
>
> 1. The student's identification number used within HCSB systems.
> 2. The gender of the student.
> 3. The race of the student.
> 4. The ethnicity of the student.
> 5. The latitude and longitude position of the student's home address for that specific school year with up to 200 feet of jitter to add some anonymity.
> 6. The school the child is enrolled in.
> 7. The respective school year for the school enrollment.

hspace*0pt                    Plaintiff's First Set of Interrogatories pp. 3

Notably, Mr. Warner is not even asking for the students name even though it is exempt from FERPA. *see* BIGG v. DIST. SCH. BOARD OF CITRUS CTY, No. 5:11-cv-210-Oc-10TBS, at *4-5 (M.D. Fla. Nov. 28, 2011)[7]. The discovery requests were narrowly tailored to protect the privacy interests of any third party students.

Finally, the interrogatories explicitly state to redact personal information[8], and redaction is enough to comply with FERPA. *see* Sansoni v. Orange Cnty. Sch. Bd.,

---

[6]"Furthermore, contrary to the defendants' assertion, the information sought is not protected by 20 U.S.C. 1232g. That provision, and its implementing regulations, permit the disclosure of directory information, which includes the student's name, address, telephone number, e-mail address, and similar information that not would be considered harmful or an invasion of privacy if disclosed. 34 C.F.R. 99.3. The information that is requested appears to fall in that category. Moreover, disclosure is authorized to comply with a judicial order or a lawfully issued subpoena. 34 C.F.R. 99.31(a)(9)(i). Thus, this Order, as well as the subpoena, authorize the disclosure of the information."

[7]"And, the Court notes that the information the plaintiffs seek is limited to the student's name and contact information, no request has been made for her grades, test scores, evaluations, conduct reports, health records or any other information."

[8]"... the student's application (with personal information redacted)"

6:24-cv-327-JSS-LHP, at *3-4 (M.D. Fla. July 11, 2024)[9], any responsive documents that contain student PII could be redacted, and the Defendant has not explained why they can't produce the records redacted.

The Florida privacy laws the simply incorporate FERPA are preempted by federal law (FRCP). The court has the tools to product the privacy on third party minors on its own.

## Overbroad, unduly burdensome, and not relevant

The board continously improperly objected to interrogatories and requests for production on the basis that the requests are "Overbroad, unduly burdensome, and not relevant".

This is an improper boilerplate objection that does not explain how the request is overbroad, unduly burden, or not relevant. The Defendants thread bare assertions on their own are meaningless and should be ignored. *see* Byte Fed. v. Lux Vending LLC, 8:23-cv-102-MSS-SPF, at *4-5 (M.D. Fla. May 1, 2024)[10].

While Mr. Warner bears the initial burden to show the discovery is relevant (as

---

[9]"And Defendant fails to address why redaction of any records subject to FERPA would alone be insufficient. See, e.g., Doe v. Rollins Coll., No. 6:18-cv-1069-Orl-37LRH, 2019 WL 11703979, at *5 (M.D. Fla. Apr. 10, 2019) ("FERPA does not prohibit the release of records so long as the student's identifying information is redacted." (citing United States v. Miami Univ., 294 F.3d 797 (6th Cir. 2002); Ragusa v. Malvern Union Free Sch. Dist., 549 F.Supp.2d 288 (E.D.N.Y. 2008))); see also generally Bigge v. Dist. Sch. Bd. of Citrus Cty., Fla., No. 5:11-cv-210-Oc-10TBS, 2011 WL 6002927, at *1 (M.D. Fla. Nov. 28, 2011) ('FERPA does not create a privilege which protects against the disclosure of student information, rather, it provides for the imposition of sanctions against an offending institution.')."

[10]"The Court finds that Cardamone's objection to the Request should be overruled. As a preliminary matter, the objection is boilerplate in that it does not explain how the Request is vague or what Cardamone fails to comprehend about the Request. See Spencer v. City of Orlando, Fla., No. 6:15-cv-345-Orl-37TBS, 2016 WL 397935, at *2 (M.D. Fla. Feb. 2, 2016) ("Objections stating that a request is 'vague,' 'overly broad,' or 'unduly burdensome' are meaningless standing alone.") (citations omitted); see also Zurich Am. Ins. Co. v. Hardin, No. 8:14-CV-775-T-23AAS, 2019 WL 3082608, at *4 (M.D. Fla. July 15, 2019) ("Boilerplate or general objections constitute a waiver of the objections to the discovery sought."); Miner, Ltd v. Keck, No. 619CV722ORL41TBS, 2019 WL 2869063, at *2 (M.D. Fla. Jul. 3, 2019). In other words, "[a] party objecting on these grounds must explain its reasoning in a specific and particularized way." Martin v. Zale Del., Inc., No. 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008)."

he will address below), that relevancy threshold is low. *see* Byte Fed. v. Lux Vending LLC, 8:23-cv-102-MSS-SPF, at *3 (M.D. Fla. May 1, 2024)[11]

# VII  INTERROGATORIES

The school board objected to all propounded interrogatories on the basis that:

1. overbroad, unduly burdensome, and not relevant to Mr. Warner's claims (requests 1-5); or

2. improperly demands personally identifiable information of all minors who attended school within the district that is protected by 20 U.S.C. § 1232g ("FERPA") and Florida Statutes §§ 10002.22(2)(d) ('Students and their parents shall have the right of privacy with respect to such records and reports.'), 1002.221, 1002.222, 1002.225, and 1006.52 (requests 1 - 3).

### 1.  IDENTIFY ALL STUDENTS FOR SCHOOL YEARS BEGINNING IN SCHOOL YEAR 2018-2019 TO PRESENT.

RESPONSE: The School Board objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not relevant to Mr. Warner's claims. The School Board also objects to the Interrogatory, which improperly demands personally identifiable information of all minors who attended school within the district, for several years, and such information of non-parties is protected, confidential, and privileged. In addition to other authorities, this information is protected by the Family Educational Rights and Privacy Act (FERPA) codified in 20 U.S.C. § 1232g, and Florida Statutes §§ 10002.22(2)(d) ("Students and their parents shall have the right of privacy with respect to such records and reports."), 1002.221, 1002.222, 1002.225, and 1006.52.

---

[11]citing Moore v. Lender Processing Servs. Inc., Case No: 3:12-cv-205-J-UATCMCR, at *4-5 (M.D. Fla. June 5, 2013) ("'Thus, although the undersigned is aware that the threshold for determining whether discovery is relevant is relatively low, the 'proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant.' ' Diamond State Ins. Co. v. His House, Inc., No. 10-20039-CIV, 2011 WL 146837, *5 (S.D. Fla. Jan. 18, 2011) (quoting Peacock v. Merrill, No CA 05-0377-BH-C, 2008 WL 176375, *8 (S.D. Ala. Jan.17, 2008)). Here, Plaintiff has satisfied that burden.")

This information is relevant because where the students live, their race, where they were assigned, and where they attended is germane to whether school board board assigned them in a discriminatory manner as challenged in Count I.

**2.   IDENTIFY ALL STUDENTS WHO SUBMITTED A SCHOOL CHOICE HARDSHIP APPLICATION ON OR AFTER JANUARY 12, 2018, WITH THE STUDENT'S APPLICATION (WITH PERSONAL INFORMATION REDACTED), THE SCHOOL THE STUDENT WAS SEEKING TO GET ADMITTED INTO, THE SCHOOL BOARD'S DECISION ON THAT APPLICATION, A DETAILED DESCRIPTION OF WHY THE SCHOOL BOARD REACHED THAT DECISION.**

RESPONSE: See Response and Objection to Interrogatory No. 1 above. In addition, the School Board objects to this Interrogatory as it relates solely to claims no longer at issue in the operative complaint, and thus, is not relevant to any party's claim or defense and not proportional to the needs of the case.

Count I alleges that the school board unlawfully assigned students to schools on the basis of race, to exclude certain races from certain schools. Students that the school board allows in the back door via the hardship choice program to attend these coveted white schools speaks both to intent and the discriminatory act itself. For example, Mr. Warner suspects that the school board disproportionally approves hardship choice applications of white students, while disproportionally denying minority hardship choice applications – in sub instances even if the minority students reside closer to the school than the white students who were allowed to attend. These purely discretional decisions by the school board alter the racial makeup of the schools, which is directly at issue in Count 1.

3. **Identify all students who were admitted into a school (outside of the school choice process) that they were not assigned to, and a detailed reason for why the school board allowed them to attend that school. Examples of this include, but are not limited to, teachers being allowed to enroll their children at schools that they work at, and Addison Davis allowing his daughter to enroll at Plant High School despite living outside of its attendance zone in Apollo Beach.**

RESPONSE: See Response and Objection to Interrogatory No. 2 above.

Same relevance as the previous interrogatory. In an addition to the previous interrogatory, this request also speaks to the racial makeup of the staff that are assigned to these schools, since these backdoor admissions are usually granted to school board employees (since their children are usually the same race as the parent), and racial imbalance of staff assigned to schools is relevant to Count 1.

4. **Identify all adult persons employed by you, who was involved in the decision making process of the student school assignment boundary changes that took place from 2022 to present, and describe their role in that process in detail.**

This question is not ambiguous. The "decision making process" is not just the ultimate school board vote, but rather encompasses any decision made regarding which students to assign to which schools in each of the 5 boundary proposals that was ultimately presented to the school board to vote on. Publicly, the school board only provided limited feedback on the various maps.

However the bulk of the decisions were made privately, many consultants and school board employees had their thumb on the scale: the school board paid a private consultant, WXY studios, $500,000 to do a boundary analysis and submit proposals. I already know school board employees and/or board members

influenced the consultants' recommendations via private back-channel communications. Ultimately, the consultant submitted 3 proposals, and I simply want the identities of each person who was involved in the decisions made in each of those proposals (including any school board employees or school board members who contacted them privately regarding those proposals).

Additionally, the superintendent went off the reservation and proposed two of his own maps (despite paying a consultant $500,000 to do this), and I want the identities and roles of each person who was involved in each decision in those proposals. I already know board member Stacy Hahn contacted the superintendent privately to pressure certain changes to south tampa schools.

The identities of these people are relevant, as I intend to seek relevant discovery from them regarding decisions made in the school student assignment boundaries at issue in Count I.

**5. DESCRIBE IN DETAIL HOW THE SCHOOL BOARD DECIDES WHETHER TO APPROVE OR DENY A SCHOOL CHOICE HARDSHIP APPLICATIONS WHILE IDENTIFYING ANY POLICY, PRACTICE, CUSTOM, LAW, BYLAW, OR ANY DOCUMENT THAT THE SCHOOL BOARD RELIES ON TO MAKE THESE DETERMINATIONS.**

RESPONSE: The School Board objects to this Interrogatory as it relates solely to claims no longer at issue in the operative complaint, and thus, is not relevant to any party's claim or defense and not proportional to the needs of the case.

Same relevance as interrogatory #2 and #3. This information is required because this policy directly affects the racial makeup of the schools through who the board lets in via the backdoor, whether the school board arbitrarily admits students to schools that disproportionally favor one race or another, whether there is

any explicit or implicit racial criteria in the policy, whether the school board vio-

lates this policy to admit certain students over others on the basis of race, whether

the policy has a disparate impact to minorities, and speaks to intent which is at

issue.

# VIII   REQUESTS FOR PRODUCTION

## 1.   ALL DOCUMENTS THAT YOU WILL USE TO SUPPORT ANY AFFIRMATIVE DEFENSE

Response: The School Board objects to the Request as overbroad, unduly burdensome, and premature as the School Board has not answered the operative pleading. Should the School Board file affirmative defenses, the School Board will produce the documents it will use at trial within the time period required by the Court.

It is not overly broad, it is basically akin to initial disclosures. Just turn over

documents they know are relevant and plan to use. I am not expecting them to

give every document at the beginning of discovery. But I need some bread crumbs

to bootstrap discovery, otherwise I will have to needlessly expend resources with

unnecessary depositions that will basically ask the same question: What evidence

do you have to support your affirmative defenses?

## 2.   ALL DOCUMENTS REGARDING ANY COMMUNICATIONS BETWEEN THE SUPERINTEND(S) ANY OF THE SUPERINTENDENT'S LEADERSHIP STAFF (I.E. ANY DEPUTY SUPERINTENDENTS, ANY CHIEFS, ANY SUPERINTENDENTS), CHRIS FARKAS, AND ANY SCHOOL BOARD MEMBER REGARDING STUDENT ASSIGNMENT BOUNDARIES, FROM 2018 TO PRESENT.

Response: School Board will produce responsive communications regarding student assignment boundaries, from 2018 to the present, which can be located after a reasonable search. To the extent this request seeks additional documents, the School Board objects to this request, especially its use of "All documents regarding any communications" as overly broad, vague, and unduly burdensome.

Defendant never produced the documents it indicated they would.  Additionally, the documents are not overly broad, they are seeking documents between a finite number of school board employees regarding a specific subject matter that was ephemeral.

**3.   ALL DOCUMENTS REGARDING ANY COMMUNICATIONS BETWEEN ANY SCHOOL BOARD EMPLOYEE (INCLUDING BOARD MEMBERS) AND WXY STUDIOS (INCLUDING ANY WXY EMPLOYEE, CONTRACTOR, REPRESENTATIVE, OR SUBSIDIARY) REGARDING SCHOOL ASSIGNMENT BOUNDARIES OR THE SCHOOL ASSIGNMENT BOUNDARY CHANGE PROCESS, FROM 2018 TO PRESENT.**

Response:  As part of its role and service to the School Board, WXY received confidential personally identifiable information for minors who attended school within the district, for several years, and such information of non-parties is protected, confidential, and privileged.  In addition to other authorities, this information is protected by the Family Educational Rights and Privacy Act (FERPA) codified in 20 U.S.C. § 1232g, and Florida Statutes §§ 10002.22(2)(d) ("Students and their parents shall have the right of privacy with respect to such records and reports."), 1002.221, 1002.222, 1002.225, and 1006.52.  Accordingly, the School Board objects to this request to the extent it seeks such information.

Although WXY may have received personally identifiable information for students, that information did not contain race information, which is what Plaintiff seeks in this case.  Accordingly, the School Board also objects to this request as overly broad and not proportional to the needs of the case because it seeks documents that are not relevant to the issues in this action.

School Board will produce non-confidential responsive communications with WXY studios regarding student assignment boundaries, from 2018 to the present, which can be located after a reasonable search.

To the extent this request seeks additional documents, the School Board objects to this request, especially its use of "All documents regarding any communications" as overly broad, vague, and unduly burdensome.

The reasons for decisions made during the re-boundary process is clearly relevant.  The board paid this company to make boundary change recommendations, the board ignored large portions of those recommendations, it is hard to imag-

ine how these communications are not relevant. Even assuming the boards representations about the contents of these communications are accurate, the documents do not have to contain explicit references to race to be relevant. I already know they relied on free/reduced lunch as a proxy for race. And even if they were completely devoid of race, the documents are still needed to rebut any non-discriminatory pretextual reason given under the McDonnell Douglas burden shifting framework, or for impeachment purposes.

4. **ALL DOCUMENTS REGARDING ANY COMMUNICATIONS BETWEEN THE SUPERINTENDENT(S), ANY OF THE SUPERINTENDENT'S LEADERSHIP STAFF (I.E. ANY DEPUTY SUPERINTENDENTS, ANY CHIEFS, ANY SUPERINTENDENTS), CHRIS FARKAS, AND ANY SCHOOL BOARD MEMBER REGARDING STUDENT RACE OR ETHNICITY, FROM 2018 TO PRESENT.**

Response: School Board objects that this Request is overbroad, unduly burdensome, and disproportionate to the needs of the case, and that it seeks irrelevant information and is vague and ambiguous, in that it seeks "any communication… regarding race or ethnicity," without specification or limitation. The School Board also objects to this request and its use of "All documents regarding any communications" as overly broad, vague, unduly burdensome, and not proportional to the needs of the case.

Evidence of racial considerations or discussions from the board's executive team is directly relevant to intent, mental state, and impeachment. Surely it is not a common event for the board's executive team to be explicitly discussing the race of their students. The amount of responsive documents should be limited.

5. **ALL SCHOOL ASSIGNMENT BOUNDARY MAP DOCUMENTS THAT WERE IMPLEMENTED BETWEEN THE YEAR 1848 TO PRESENT.**

Response: The School Board objects to this request for "all … documents … from 1848 to present" on the grounds that it is overbroad, unduly burdensome, not proportional to the needs of the case, and not relevant to Mr. Warner's claims.

The school assignment maps are directly relevant to a racial gerrymander challenge to those exact same maps. Even more egregious, is the school board put the maps directly at issue when they raised the affirmative defense that the maps didn't change, that any change in demographics of the schools was due to natural population change. Changes to these maps are infrequent, it should not be difficult for the board to produce them. While I do not expect the board to have maps from 1848 when Hillsborough County Public Schools were first created, I do expect them to have quite a few.

**6. ALL DISTRICT BOARD MEMBER VOTING MAP DOCUMENTS THAT WERE IMPLEMENTED BETWEEN THE YEAR 1848 TO PRESENT.**

Response: The School Board objects to this request for "all documents … from 1848 to present" on the grounds that it is overbroad, unduly burdensome, not proportional to the needs of the case, and not relevant to Mr. Warner's claims.

Again, these maps are directly at issue in this case, as count 2 is a racial gerrymandering challenge to those maps. While I do not expect the board to have maps from 1848, I do expect them to turn over any maps they do have.

**7. ALL DOCUMENTS REGARDING ANY COMMUNICATIONS BETWEEN ANY SCHOOL BOARD EMPLOYEE (INCLUDING BOARD MEMBERS) AND TINDALE OLIVER (INCLUDING ANY TINDALE OLIVER EMPLOYEE, CONTRACTOR, REPRESENTATIVE, OR SUBSIDIARY) REGARDING SCHOOL ASSIGNMENT BOUNDARIES OR THE SCHOOL ASSIGNMENT BOUNDARY CHANGE PROCESS, FROM 2018 TO PRESENT.**

Response: As part of its role and service to the School Board, Tindale Oliver may have received confidential personally identifiable information for minors who attended school within the district, for several years, and such information of non-parties is protected, confidential, and privileged. In addition to other authorities, this information is protected by the Family Educational Rights and Privacy Act (FERPA) codified in 20 U.S.C. § 1232g, and Florida Statutes §§ 10002.22(2)(d) ("Students and their par-

ents shall have the right of privacy with respect to such records and re-
ports."), 1002.221, 1002.222, 1002.225, and 1006.52. Accordingly, the
School Board objects to this request to the extent it seeks such informa-
tion.

Although Tindale Oliver may have received personally identifiable infor-
mation for students, that information did not contain race information,
which is what Plaintiff seeks in this case. Accordingly, the School Board
also objects to this request as overly broad and not proportional to the
needs of the case because it seeks documents that are not relevant to the
issues in this action.

School Board will produce non-confidential responsive communications
with Tindale Oliver studios regarding student assignment boundaries, from
2018 to the present, which can be located after a reasonable search.

To the extent this request seeks additional documents, the School Board
objects to this request, especially its use of "All documents regarding any
communications" as overly broad, vague, unduly burdensome, and not
proportional to the needs of the case.

The board has not produced any documents that they said they would. Addi-

tionally, this was a contractor who was hired to propose school boundary changes.

Nearly all communications between the board and this contractor are relevant to

the boundary challenge.

### 8. ALL DOCUMENTS REGARDING STUDENT RACIAL DEMOGRAPHICS FROM 1848 TO PRESENT.

Response: The School Board objects to this request for "all documents
… from 1848 to present" on the grounds that it is overbroad, unduly bur-
densome, not proportional to the needs of the case, and not relevant to
Mr. Warner's claims.

It is egregious that the board takes the position that the racial demographics of

its schools are not relevant to a racial discrimination challenge to the boundary

maps that assign students to those schools. They are plainly relevant. They al-

ready have a duty under state law to compile many of these reports and submit

them to the Florida Department of Education.

**9.   ALL REPORTS AND PRESENTATIONS IN REGARDS TO THE SCHOOL ASSIGNMENT BOUNDARIES BETWEEN 2018 TO PRESENT.**

Response:  All reports and presentations presented to the public or the School Board at public meetings may be found with the meeting notes that are publicly available at (https://www.hillsboroughschools.org/Page/6365). Notwithstanding the fact that these documents are already publicly available to Plaintiff, the School Board will produce the meeting minutes and reports and presentations made at these meetings.

To the extent this Request seeks additional documents, the School Board objects to this Request for "all reports and presentations" on the grounds that it is overly broad, vague, unduly burdensome, and not proportional to the needs of the case.

There are many documents and reports that the board presented to the public, that they then took down from their website after the boundary process was complete (I have copies of some of the documents, see attached Exhibit E for an example of one such document they failed to produce).  They conducted many polls of the public regarding boundary issues, compiled reports of those polls.  There are a *lot* of responsive documents that the board created, and they know it.  Yet they failed to produce them.  If they are hiding this many documents that I know exist, it creates a lot of doubt that they are actually turning over discovery that I do not know exists.

10. **A**LL DOCUMENTS REGARDING ANY COMMUNICATIONS BETWEEN ATTORNEYS WHO REPRESENT THE SCHOOL BOARD AND ANY SCHOOL BOARD EMPLOYEE (INCLUDING THE SCHOOL BOARD MEMBERS) IN REGARDS TO ANY SUBJECT MATTER IN **W**ARNER V. **S**CHOOL **B**OARD OF **H**ILLSBOROUGH **C**OUNTY, **F**LORIDA, 8:23-CV-00181, (M.D. **F**LA.) OR **W**ARNER V. **S**CHOOL **B**OARD OF **H**ILLSBOROUGH **C**OUNTY, **F**LORIDA, 8:23-CV-01029, (M.D. **F**LA.).

Response: School Board objects that this Request is improper, overbroad, unduly burdensome, and disproportionate to the needs of the case, and that it seeks only communications protected by the attorney-client privilege, the work product privilege, or any other applicable privilege or protection. The School Board also objects to this request and its use of "All documents regarding any communications" as overly broad, vague, unduly burdensome, and not proportional to the needs of the case.

The public policy of the state of Florida is that these communications are public record (as outlined previously), and it is likely that not all of these communications are privileged to begin with. At the very least, Defendant should provide a privilege log. In any event, the privileges were waived by failing to timely respond as previously discussed.

11. **A**LL DOCUMENTS REGARDING RESIDENTIAL PROPERTY VALUES.

Response: The School Board objects to this Request for "all documents" and for documents regarding "residential property values" on the grounds that it is overly broad, vague, unduly burdensome, and not proportional to the needs of the case.

That is pretty specific, and the amount of responsive documents should be limited as the board should not be discussing residential property values. We already know the superintendent was on TV news making official statements regarding residential property values, and I want any non-public documents they may have created regarding the same. This is still relevant despite the FHA claims being dis-

missed, because it speaks to motive with pressure the public exerted on the school board to engage in discriminatory practices.

12. **All documents regarding communications between any member of the public, the superintendent(s), any of the superintendent's leadership staff (i.e. any Deputy Superintendents, any Chiefs, any Superintendents), and any school board member regarding student assignment boundaries, from 2018 to present.**

Response: The meeting minutes, including public comment (i.e., communications between any member of the public and the school board), are publicly available at (https://www.hillsboroughschools.org/Page/6365). Notwithstanding the fact that these documents are already publicly available to Plaintiff, the School Board will produce the meeting minutes from these meetings. This includes any meetings regarding school format changes. To the extent this Request seeks additional documents, the School Board objects to this Request for "all documents" on the grounds that it is overbroad, unduly burdensome, and not relevant to Mr. Warner's claims. The School Board also objects to this request and its use of "All documents regarding any communications" as overly broad, vague, unduly burdensome, and not proportional to the needs of the case.

I do not know why the board is focusing on the board minutes, when the scope of the request was well beyond that. Specifically, Mr. Warner wants emails, voicemails, an other communications that the board members themselves and their employees invited the public to send them. There are a lot of responsive documents here that are outside of the board meeting minutes. The pressure the public exerted on the board to make potentially discriminatory boundary decisions is relevant to the claims.

13. **ALL DOCUMENTS REGARDING COMMUNICATIONS BETWEEN ANY MEMBER OF THE PUBLIC, THE SUPERINTENDENT(S), ANY OF THE SUPERINTENDENT'S LEADERSHIP STAFF (I.E. ANY DEPUTY SUPERINTENDENTS, ANY CHIEFS, ANY SUPERINTENDENTS), AND ANY SCHOOL BOARD MEMBER REGARDING SCHOOL FORMAT CHANGES (CONVERTING K-5 SCHOOLS K-8), FROM 2000 TO PRESENT.**

Response: See Response to Request No. 12 above. The School Board also objects to this Request to the extent it relates to claims that are no longer at issue in light of Mr. Warner's amendment to his pleading following the initial service of these Requests.

Same as previous answer.

14. **ALL DOCUMENTS REGARDING STATISTICAL ANALYSIS OF ANY STUDENT ASSIGNMENT MAP OR DISTRICT VOTING MAP.**

Response: The School Board will produce reports and presentations, including the statistical analysis therein, presented to the public or the School Board at public meetings may be found with the meeting notes that are publicly available at (https://www.hillsboroughschools.org/Page/6365). To the extent this Request seeks additional documents, the School Board objects to this Request for "all documents" on the grounds that it is overly broad, vague, unduly burdensome, and not proportional to the needs of the case.

The board has not produced any documents that it indicated they would produce.

15. **ALL DOCUMENTS REGARDING STUDENT ENROLLMENT AND INDIVIDUAL SCHOOL STUDENT CAPACITIES, FROM 2018 TO PRESENT.**

Response: The School Board objects to this Request for "all documents" on the grounds that it is overly broad, vague, unduly burdensome, and not proportional to the needs of the case. The School Board also objects to the Request, which improperly demands personally identifiable information of all minors who attended school within the district, for several years, and such information of non-parties is protected, confidential, and privileged. In addition to other authorities, this information is protected by the Family Educational Rights and Privacy Act (FERPA) codified in 20 U.S.C. § 1232g, and Florida Statutes §§ 10002.22(2)(d) ("Students and

their parents shall have the right of privacy with respect to such records and reports."), 1002.221, 1002.222, 1002.225, and 1006.52.

hspace*0pt

Mr. Warner is not seeking information regarding individual students, but merely documents related to enrollment numbers and school capacities at the individual schools. This is specific enough, and limited enough in scope for the board to adequately respond.

### 16. ALL DOCUMENTS REGARDING BLAKE WARNER OR HIS CHILD J.W., EXCLUDING DOCUMENTS RELATED TO J.W.'S EDUCATIONAL INSTRUCTION OR IEP.

Response: The School Board objects to this request to the extent it seeks production of confidential and privileged documents protected by the attorney-client privilege or work product doctrine or any other privilege, such as those related to the defense of the multiple lawsuits filed by Mr. Warner on behalf of himself and/or his child J.W. The School Board will produce all non-privileged, responsive documents located after a reasonable search.

hspace*0pt

Defendant failed to produce the records they indicated that they would produce.

# RELIEF REQUESTED

Plaintiff respectfully requests that this court:

1. deem the objections and claims of privilege waived.

2. order Defendant to adequately respond to the discovery and produce a privilege log within 30 days.

3. award Plaintiff $330 in costs as a Rule 37 sanction. Specifically 3 months of legal research costs from casetext.com. *see* attached Exhibit F.

24

# Local Rule 3.01(g) Certification

I certify that I have conferred with the opposing party, and they have indicated that they are opposed to the relief sought in this motion.

9-11-2024

/s/blake warner

Date

Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM