UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER,

    Plaintiff,

v.                                                                          Case No. 8:23-cv-00181-SDM-JSS

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

    Defendant.

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

    Defendant, the School Board of Hillsborough County, Florida (the "School Board") submits this response to Plaintiff Blake Warner ("Warner")'s Motion to Compel Answers and Production of Documents (the "Motion to Compel"), Doc. 93, and states:

### INTRODUCTION

    As separately briefed, this Court should stay discovery and this case until it full resolves the School Board's Motion for Judgment on the Pleadings) (Doc. 86) (the "MJP"). *See* Doc. 96 (the School Board's Motion to Stay) (the "Motion to Stay"). As explained in the MJP and Motion to Stay, Warner's Third Amended Complaint fails as a matter of law because Warner previously

78056567;3

released his claims through prior settlement agreements (the "Release Defense"). *See* Doc. 86.

Regardless of whether this Court grants the Motion to Stay or ultimately enters judgment against Warner's claims based on the MJP, Warner's discovery is improper because, among other reasons, it is extremely overbroad (seeking information back to the year the School Board was formed over 150 years ago, in 1848) and it is irrelevant (seeking information related to claims that have been dismissed with prejudice). Accordingly, the Court should deny Warner's Motion to Compel.

**I.      RELEVANT PROCEDURAL BACKGROUND AND DISCOVER**

1. Warner filed his Second Amended Complaint on July 10, 2023. (Doc. 38).

2. The School Board filled its motion to dismiss July 24, 2023. (Doc. 45).

3. The Court heard argument on the motion to dismiss on October 26, 2023, taking the matter under advisement. (Doc. 66).

4. One month later, on November 29, 2023, Warner served his initial disclosures and informed the School Board:

> While I do not oppose staying discovery, my concern is that the court will toll this time absent a stay order. If you wish to file a motion to stay discovery, then I would be unopposed. Absent that motion being filed, I will start serving discovery requests.

(Doc. 96-1) (Email from Plaintiff dated November 29, 2023).

5. At that same time, Plaintiff also served his first set of document requests. (Doc. 96-2) (Plaintiff's Request for Production). In multiple requests, Plaintiff seeks documents from "the year 1848 to present." *See id.*, Request Nos. 5-6, and 8.

6. The next day, on November 30, 2023, Plaintiff's served his first set of Interrogatories. *See* Doc. 96-3 (Plaintiff's Interrogatories). In multiple interrogatories, Plaintiff seeks information about non-party students. *See id.*, Interrogatory Nos. 1-3.

7. Plaintiff also indicated an intent to serve non-party subpoenas and again proposed a stay. (Doc. 96-4) (Exhibit 4), Email from Plaintiff dated November 30, 2023 ("Just to reiterate, I am unopposed to a motion to stay discovery until the MTD is ruled upon.").

8. The School Board first moved for a stay on December 11, 2023. (Doc. 68).

9. Because no order had then been entered on the initial stay motion, the School Board also moved for an extension of time on January 2, 2024. (Doc. 69).

10. The Court granted both the School Board's Unopposed Motion to Stay Discovery (Doc. 68) and the School Board's Motion for Enlargement of Time to Respond to Discovery (Doc. 69) on February 21, 2024. (Doc. 71).

3

11. The Court's Report and Recommendation was entered on February 29, 2024, recommending the Court dismiss Counts I, II, III, IV, V, VI, VIII, and IX. (Doc. 72). The Court only recommended denial with respect to Count VII (an equal protection claim). *Id.* The Court did not recommend dismissing the prior pleading based on the parties' settlement agreement <u>because</u> it was not part of the pleadings. *See id.*, pp. 7-8.

12. The Court adopted the Report and Recommendation on June 7, 2024 (Doc. 78).

13. Plaintiff filed his Third Amended Complaint on June 10, 2024, raising only two claims for equal protection. This litigation, as framed by Warner's Third Amended Complaint, involves allegations by Warner that the School Board is "operating a segregated school system by drawing their school assignment maps and district voting maps in a discriminatory manner." (Doc. 79, at 1). Warner alleges claims under 42 U.S.C. § 1983, with the first claim attacking the school assignment maps and the second claim attacking the voting maps. *Id.* at ¶¶ 152–68. Warner includes allegations regarding his minor child's school assignments in North Tampa. *Id.* at ¶¶ 52-54, 62-63.

14. The School Board answered, incorporating the settlement agreement into the pleadings. (Doc. 82). The School Board also filed its Motion for Judgment on the Pleadings on August 9, 2024, seeking judgment based on

this same argument with the agreement now able to be considered by the Court. (Doc. 86).

15. Plaintiff requested the School Board respond to the previously served discovery. (Doc. 93-1) (containing June 22, 2024 email from Warner stating "I am standing on my original discovery requests.").

16. Although the School Board has served responses and objections to the written discovery, the School Board maintains Plaintiff's discovery is extremely overly broad and improper, especially where most of it targets claims that have been dismissed.

17. On September 13, 2024, the School Board filed its pending Motion to Stay. (Doc. 96).

18. Throughout the process, the parties have repeatedly conferred, some of which Warner attaches to his Motion to Compel. Obviously, Warner is unsatisfied with the progress to date and moved to compel asking the Court to "deem the objections and claims of privilege waived" and pay Warner's "legal research costs." (Doc. 93, p.24).

## II.   NO PRIVILEGE HAS BEEN WAIVED.

The School Board responded on July 18, 2024, serving its responses and objections to both Warner's Requests for Production and Interrogatories, as shown in the Exhibits to Warner's Motion to Compel. *See* Doc. 93-3 (response to requests for production) and Doc. 93-4 (response to interrogatories). The

5

78056567;3

School Board properly asserted appropriate privileges including the attorney-client privilege, the work product doctrine and protection under the Family Educational Rights and Privacy Act ("FERPA"). *See id.*

Warner incorrectly contends the School Board "blew the original January 2, 2024 deadline." *See* Doc. 93, p.5 (inexplicably arguing the School Board "requested an extension 3 days past the deadline). The docket refutes this statement. The docket reflects on January 2, 2024, the School Board filed a motion for extension of time in case the stay was not granted. *See* Doc. 69. Moreover, the School Board had previously and timely filed an <u>unopposed</u> motion to stay the discovery on December 11, 2023. *See* Doc. 68. Although Warner proposed the stay and agreed to it, he inexplicably opposed the extension. *See* Doc. 70. Regardless, the Court granted both the stay and extension. *See* Doc. 71. Thus, no waiver occurred.

Despite the dismissal of almost all of his claims, Warner maintains that his original discovery remained pending after the order dismissing his claims. Warner then agreed to provide the School Board until July 18, 2024 to respond. *See* Doc. 93, p.2 ¶ 6. The School Board timely served its responses and objections on July 18, 2024. *See* Doc. 93-3 and 93-4.

The School Board acknowledges it is still in the process of gathering documents for production and was unable to complete the production prior to the agreed-upon date, given the shifting scope of this litigation, general

6

workload associated with the start of the school year, and ongoing conferrals. While the School Board continues to gather documents, it has separately filed a motion to stay the case as another dispositive motion remains pending. *See* Doc. 96. Regardless, any minor delay in producing documents is not akin to a failure to respond raising privilege and other objections, and it is not a waiver of any privilege, especially where the law weighs against any implied waiver of privilege. *Bankers Sec. Ins. Co. v. Symons*, 889 So. 2d 93, 95–96 (Fla. 5th DCA 2004)  (citing *Tyne v. Time Warner Entertainment Co., L.P.,* 212 F.R.D. 596 (M.D. Fla. 2002), as an example "where privilege log was not filed until almost one year after discovery request, and did not sufficiently describe documents, federal court in interpreting federal discovery rule found that privilege log was untimely, but nevertheless declined to compel production, finding that sanction would be too harsh.")

## III.  THE GOOD FAITH DEFENSE DOES NOT WAIVE PRIVILEGE.

The School Board's assertion of a good faith defense to Warner's claims does <u>not</u> waive the attorney-client privilege regarding communications about Warner's lawsuits. Warner alleges the School Board is "operating a segregated school system by drawing their school assignment maps and district voting maps in a discriminatory manner." Doc. 79, at 1. The School Board raised good faith as one of its defenses. Doc. 82, p.3. This does <u>not</u> waive the attorney-client privilege between the School Board and its counsel defending against Warner's

7

various lawsuits. *See Centennial Bank v. ServisFirst Bank, Inc.*, No. 8:16-CV-88-T-36CPT, 2020 WL 1061450, at *5–6 (M.D. Fla. Mar. 4, 2020) (finding assertion of good faith in affirmative defenses did not waive the attorney-client privilege or the work-product doctrine where those defenses were fairly characterized as denials); *see also Bartholomew v. Lowe's Home Centers, LLC*, No. 2:19-cv-00695, 2022 WL 2869655, at *4 (M.D. Fla. July 21, 2022) (noting a party only waives attorney-client privilege where it involves a defense that **necessitates** disclosure, and plaintiffs are always free to seek discovery of unprivileged, underlying facts).[1]

## IV.   A PRIVILEGE LOG IS NOT REQUIRED HERE.

A privilege log is not required here because the School Board has raised other objections to the scope of the request and because the request explicitly calls for attorney-client privileged communications. *See* Fed. R. Civ. P. 26(b)(5)(A) (requiring privilege long only when "a party withholds information otherwise discoverable"); *Avatar Prop. & Cas. Ins. Co. v. Jones*, 291 So. 3d 663, 667 (Fla. 2d DCA 2020) ("Before a written objection to a request for production

---

[1] The *Rosen* case Warner cites involved a defendant affirmatively spending "six pages and two subsections" in a motion "on the exact contention that '[it] had a good faith belief that its [actions] complied with the law.'" 2023 WL 1472436, at *2. And in any event, the *Rosen* case never required production of any privileged communications. The School Board never asserted that it acted in good faith "based on advice of counsel" or any comparable phrase. To the extent the Court finds the School Board's defense objectionable, the School Board requests the ability to amend to remove the defense.

8

78056567;3

of documents is ruled upon, the documents are not "otherwise discoverable" and thus the obligation to file a privilege log does not arise.").[2]

Warner seeks:

> All documents regarding any communications between communications between attorneys who represent the school board and any school board employee (including the school board members) in regards to any subject matter in Warner v. School Board of Hillsborough County, Florida, 8:23-cv-00181, (M.D. Fla.) or Warner v. School Board of Hillsborough County, Florida, 8:23-cv-01029, (M.D. Fla.).

*See* Doc. 93-3, p.6 ¶ 10. Warner explicitly seeks attorney-client privileged communications about the lawsuits he filed. *See id.*, Doc. 93-3, p.8 ¶16; *see also Bankers Sec. Ins. Co. v. Symons*, 889 So. 2d 93, 95 (Fla. 5th DCA 2004) ("Bankers urges that failure to submit a privilege log by the due date for the response to the request to produce does not automatically constitute a waiver of its right not to disclose their work-product. We agree.").

## V.    THE ATTORNEY-CLIENT PRIVILEGE REMAINS IN FORCE.

Although the vast majority of the School Board's documents are public records, the School Board maintains an attorney-client privilege for communications regarding lawsuits. *See City of Tampa v. Titan Se. Const. Corp.*, 535 F. Supp. 163, 166 (M.D. Fla. 1982) ("The legislature did just that

---

[2] While Florida state court cases turn on the state court rule of civil procedure (Rule 1.280), the rule contains the same language found in its federal counterparty (Rule 26), which requires a privilege log only when a party "withholds information <u>otherwise</u> discoverable." Fed. R. Civ. P. 26(b)(5)(A) (emphasis added).

78056567;3

when it passed the Evidence Code and recognized 'public' entities as 'clients' that have 'a privilege to refuse to disclose, and to prevent any other person from disclosing' lawyer-client communications."); *Zorc v. City of Vero Beach*, 722 So. 2d 891, 896 (Fla. 4th DCA 1998) (recognizing Sunshine Law was amended in 1993 to enable a government entity to meet privately with its attorney). Accordingly, Warner's arguments fail, and the Court should deny his Motion to Compel.

## VI.     FERPA BARS THE DISCOVERY SOUGHT.

FERPA protects student records. 42 U.S.C. § 1232g(b)(1) eliminates funding for schools that have policies or practices allowing the release of personally identifiable information about students. Section 1232g(a)(4) defines personally identifiable information as including any "information directly related to a student" that an educational agency or institution maintains. Florida law adopts the federal standards and likewise requires privacy of these records. Fla. Stat. §§ 1002.221–.222, 1002.225, 1006.52; *see, e.g.*, *WFTV, Inc. v. Sch. Bd. of Seminole*, 874 So. 2d 48, 53 (Fla. 5th DCA 2004) ("The court agrees with the School Board. Pursuant to section 228.093(3)(d), the Requested Records are confidential and specifically exempted from the requirements of section 119.07(1). The School Board is prohibited from disclosing the Requested Records to WFTV, without written parental consent.").

78056567;3

To release protected student information, the School Board requires either (1) parental consent of **each** affected student, or (2) a judicial order (which also would require notification to each affected student family). 42 U.S.C. § 1232g(b)(2). Neither condition is satisfied by Warner's discovery, in which Warner demands the School Board "Identify all students for school years beginning in school year 2018-2019 to present." *See, e.g.*, Doc. 93-4, p.2 Interrogatory No.1. Warner's discovery calls for the identification of hundreds of thousands of non-party minors and is wholly inappropriate.

Warner suggests the School Board should just redact the records to the extent they contain FERPA-protected information, relying on *Sansoni v. Orange County School Board*, No. 6:24-cv-00327-JSS-LHP, 2024 WL 3678626, at *2 (M.D. Fla. July 11, 2024) (the "*Sansoni* Opinion"). The Court in that case noted the defendant did not "address why redaction of any records subject to FERPA would alone be insufficient." *Id.* The Court also cited numerous other decisions suggesting redaction would be appropriate as a protective method.

The problem, however, is that none of those cases involved the magnitude of records at issue here. The discovery order in *Sansoni* is sparse on the details of the specific records at issue, but the complaint involved an individualized education plan ("IEP") for a student with a disability. Complaint, Doc. 1, *Sansoni v. Orange County School Board*, No. 6:24-cv-00327-JSS-LHP (filed February 14, 2024). Moreover, the *Sansoni* Opinion followed

11

an order granting a motion to compel, which the defendant failed to oppose. *See Sansoni* Opinion, at *1 (explaining the Court granted the motion to compel as unopposed after defendant failed to respond to the motion)*; Sansoni v. Orange Cnty. Sch. Bd.*, No. 6:24-CV-327-JSS-LHP, 2024 WL 3161835, at *1 (M.D. Fla. June 25, 2024) (opinion prior to clarification in *Sansoni* Opinion).

The discovery requests actually at issue in *Sansoni* primarily focused on allegations specific to the plaintiff and not records for other non-party students, as opposed to the district-wide student information sought in the Warner Discovery. *See Sansoni v. Orange County School Board*, No. 6:24-cv-00327-JSS-LHP, Doc. 40 (the motion to compel attaching the discovery requests) (attached as **Exhibit 1**). The failure to oppose the motion to compel in *Sansoni* and the actual discovery requests at issue in that case, each independently distinguish *Sansoni* from this case and demonstrate that it is <u>not</u> good precedent to justify a sweeping order requiring production of records for every single student that attended the Hillsborough County School District from 2018 to the present. *Id.* Moreover, the potential production in *Sansoni* was also distinguishable from the records sought in this case because of the redaction concern. *Id.*, at *2 (stating there was no argument as to whether redaction would be insufficient). Again, in contrast, this case has a clear answer: millions of pages of documents and hundreds of thousands of families. *See* Demographic Report for 2024-2025 School Year, dated September 3, 2024

12

(attached as **Exhibit 2**) (publicly available at https://www.hillsboroughschools.org/cms/lib/FL50000635/Centricity/Domain/4/DemographicReport.pdf). There are over 220,000 students this year alone. *See id.* Warner seeks information for six separate school years, which will greatly expand the number of non-party students about whom he improperly seeks information and records.

Likewise, none of the cases *Sansoni* cites imply redaction would work here. *U.S. v. Miami University* involved records of specific disciplinary records (*i.e.*, *Miami University* did **not** involve the records of **every** student in an entire school district). 294 F.3d 797, 803 (6th Cir. 2002). *Doe v. Rollins College* was the same, with the defendant only needing to redact information about ten perpetrators of sexual misconduct. No. 6:18-cv-01069-Orl-37LRH, 2019 WL 11703979, at *1, 4–5. *Ragusa v. Malverne Union Free School District* involved only approximately 100 records. 549 F. Supp. 2d 288, 294–95 (E.D.N.Y. 2008). And *Bigge v. District School Board of Citrus County, Florida*, involved only a single student. No. 5:11-cv-00210-Oc-10TBS, 2011 WL 6002927, at *3 (M.D. Fla. Nov. 28, 2011).

Again, this is a case of magnitude. Warner is not seeking the records of a single or even handful of students; he is demanding the records of **every** student that attended the Hillsborough County schools from 2018 to the present. His suggestion that redaction is available ignores the practical

13

challenges that would go into sorting through each individual record, finding irrelevant data, and removing it from production. It likewise ignores his own burden in then having to go through those documents, not to mention the Court's burden in having to parse their contents for relevance to any issues Warner might later raise. In short, Warner's proposed "fix" for the FERPA considerations is unworkable, and the protective order is appropriate.

This discovery is completely inappropriate, and the School Board properly asserted objections, including objections under FERPA.

## VII. WARNER'S DISCOVERY IS OVERLY BROAD, UNDULY BURDENSOME, NOT RELEVANT, AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE.

Warner acknowledges he bears the initial burden of demonstrating his discovery is relevant. *See* Doc. 93, p.10. But Warner fails to explain why his discovery – served before the Court dismissed almost all of his claims – remains relevant in light of his substantially altered pleading. Warner also fails to explain why he needs records with personal information about hundreds of thousands of non-party minors.

It appears that Warner seeks to identify the race/ethnicity of every student and the student's address, as part of some complex, self-manufactured analysis of their proximity to school. *See, e.g.*, Doc. 93, p.9 (discussing Warner's request for information about the "latitude and longitude position of the student's home address for that specific school year …" in addition to their race

14

and ethnicity); Doc. 79 ¶¶ 20-23 (with self-generated maps purporting to allege some kind of analysis of "compactness). Notably, Warner's requests for information and proposed analysis ignores the reality that homes without students currently living there must be assigned to specific schools. And as shown in the attached Report, the demographic break down by school is readily and publicly available. *See* Ex. 2. Accordingly, Warner's discovery is <u>not</u> proportional to the needs of the case.

### VIII. THE SCHOOL BOARD PROPERLY RESPONDED TO WARNER'S INTERROGATORIES.

The School Board properly responded, raising objections, to Warner's Interrogatories on July 18, 2024 (*see* Doc. 93-4, p.4), the agreed upon extended deadline. *See* Doc. 93, p.2 ¶ 6 (admitting "Plaintiff agreed to, an extension to July 18"). Warner demands the School Board (i) "identify all students" for the past 7 years; (ii) "identify all students who submitted a school choice hardship application"; (iii) "identify all students who were admitted" otherwise to a different school for the past 7 years; and (iv) describe the "school choice hardship" program. *See* 93-4 (interrogatories 1-3, and 5).

First, as explained above, the School Board properly objected to the disclosure of student identification information under FERPA and multiple Florida Statutes. Warner's Interrogatories Nos. 1-3 improperly seek the identification of a massive number of non-party students, the vast majority of

15

which are minors. *See* 42 U.S.C. § 1232g(a)(4); Fla. Stat. §§ 1002.221–.222, 1002.225, 1006.52; *see, e.g.*, *WFTV, Inc.*, 874 So. 2d at 53. Again, as shown in the attached Report, the demographic break down by school is readily and publicly available and there is no need for individuals students to be identified by race and home address. *See* Ex. 2.

Second, Warner's Interrogatories are extremely over broad, irrelevant, and not proportional to the needs of the case. Notably, in Count VI of Warner's now-dismissed Second Amended Complaint, Warner alleged a due process violation based on a school choice application. *See* Doc. 38, ¶¶ 203-216. Of Warner's five interrogatories, two focus on the school choice issue. *See* 93-4 (interrogatory nos. 2 and 5). The Court since dismissed Count VI <u>with prejudice</u>. *See* Doc. 78, p.3. Thus, there is no relevance for these interrogatories. *See* Fed. R. Civ. P. 26(c)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is <u>relevant to any party's claim or defense</u> and proportional to the needs of the case.") (emphasis added). As the claim based on the school choice application has been dismissed with prejudice, discovery about these applications are <u>not</u> relevant to any pending claim or defense. *Id.*

With respect to Warner's Interrogatory No. 4, seeking identification of those "involved in the decision making process," the School Board objected to the vague nature of this phrase. *See* 93-4, p.3. Notwithstanding the objection, the School Board also responded to explain the "decision making process"

16

occurs through the School Board considering recommendations and proposals from the Superintendent at public meetings. The identification of the individual School Board members and the Superintendent are public knowledge, and the discussions and votes at public meetings are all public record, available on the internet, and equally accessible to the Plaintiff. Thus, the School Board properly answered Interrogatory No. 4, but Warner simply does not like the answer. Warner has no basis to challenge the response.

Accordingly, the Court should deny Warner's Motion to Compel with respect to all five Interrogatories.

### IX. THE SCHOOL BOARD PROPERLY RESPONDED TO WARNER'S REQUESTS FOR PRODUCTION.

The School Board properly responded, raising objections, to Warner's Requests for Production on July 18, 2024 (*see* Doc. 93-3, p.8), the agreed upon extended deadline. *See* Doc. 93, p.2 ¶ 6 (admitting "Plaintiff agreed to, an extension to July 18"). The Court should sustain these objections as explained below.

Warner's pending Third Amended Complaint now focuses on two specific issues: Warner asserts – incorrectly – that "race was the predominant factor in the design of school assignment maps" and "race was the predominant factor in the design of all of the non-at-large districts." Doc. 79, ¶¶ 155, 164. As noted above, because Warner's claim predicated on the school choice application has

been dismissed with prejudice. Similarly, Warner's claims under the Fair Housing Act and related to home valuations are all dismissed, and accordingly, discovery related to same (such as Warner's Request No. 11) is improper and not relevant here. *See* Fed. R. Civ. P. 26(c)(1).

Even when it might be targeted to his baseless allegations, Warner's requests are objectional as over broad, vague, and unduly burdensome. First, Warner seeks to discovery any document that might disprove or prove his bald assertions. *See, e.g.*, Doc. 93, p.15 (discussing his request for all documents the School Board will use to support its defenses). Second, many of Warner's requests demand the School Board search for documents that are more than 170 years old. *See* 93-3, Request Nos. 5-6, and 8 (all seeking documents from the year 1848 to the present). Third, Warner also seeks to compel the School Board to dig through every communication to identify and produce those that may be about the boundaries from 2018 to the present. *See* 93-3, Request Nos. 2-4, 7, 10, and 12. Warner also seeks all documents that might in any way address student enrollment, student capacities, and race for the past six years. *See* 93-3, Request Nos. 8-9, 14-15. These requests are overly broad and impose a significant, undue burden that is not proportional to the needs of this case.

The School Board properly objected to the overly broad nature of this discovery and to production of any student identification information (as discussed above). *See, e.g., Williams v. Hernandez*, 221 F.R.D. 414, 416

18

(S.D.N.Y. 2004) (denying motion to compel where it "failed to justify a wholesale production of e-mails."). The Court should sustain these objections and deny Warner's Motion to Compel.

Notwithstanding these objections, where appropriate, the School Board agreed to search for non-confidential and responsive communications. *See* School Board's responses to Request Nos. 1-3, 7, 9, 12-14, and 16 (agreeing, subject to objections, to produce non-confidential documents that could be located after a reasonable search). Warner has no legitimate basis to challenge these objections. The Court should deny Warner's motion to compel, and unless the Court grants the School Board's pending motion to stay discovery, then the Court should grant the School Board additional time to complete its search for responsive documents, and impose other limitations on the scope of Warner's discovery.

## X.   CONCLUSION

Warner seeks to engage in an improper fishing expedition, seeking documents from 1848 and confidential information on hundreds of thousands of non-party minor students. This massive amount of information is completely unnecessary to resolution of this case. Accordingly, the Court should deny Warner's Motion to Compel.

19

78056567;3

Respectfully submitted,

*/s/ Jason L. Margolin*
**JASON L. MARGOLIN**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September 2024, I filed the foregoing using the Court's CM/ECF System, which will send a true and correct copy to all counsel of record.

*/s/ Jason L. Margolin*
Counsel for Defendant

20

78056567;3