UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER,

    Plaintiff,

v.                                    Case No. 8:23-cv-00181-SDM-JSS

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

    Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S VERIFIED MOTION TO STAY SUMMARY JUDGMENT

Defendant, the School Board of Hillsborough County, Florida (the "School Board") submits this response to Plaintiff Blake Warner ("Warner")'s Verified Motion to Stay Summary Judgment (the "Motion to Stay SJ"), Doc. 106, and states:

### INTRODUCTION

As separately briefed, the Court should enter judgment as a matter of law because Warner's claims, contending the "school assignment boundaries violate Mr. Warner's rights" and the "districts violate Mr. Warner's rights", *see* Doc. 79 ¶¶ 160 and 168, fail as a matter of law because of the parties' prior Settlement Agreement, after which the only actions Mr. Warner alleges

79173984;3

occurred were his voluntary relocation to another residence. *See* Doc. 86 (the School Board's Motion for Judgment on the Pleadings) (the "MJP"). The School Board has asserted the Settlement Agreement bars Warner's claims from the beginning. *See* Doc. 30 (Answer filed May 30, 2023), pp. 17-18 and Exhibit 1 (the Settlement Agreement).

Due to procedural changes, the Court has never decided whether the Settlement Agreement bars Warner's claims. The School Board's prior motion for judgment on the pleadings (Doc. 34 filed June 23, 2023) was not resolved because the complaint was amended when the Court ordered that Warner's second lawsuit would be consolidated into this one. *See* Doc. 37 (the Order); Doc. 38 (the Second Amended Verified Complaint). The School Board subsequently attempted to re-raise the issue, this time through a motion to dismiss (Doc. 45), but the Court did not reach a decision on this issue finding it was outside the four-corners of the complaint. *See* Doc. 72, pp. 7-8, Doc. 78.

Once again, the School Board seeks a ruling on this threshold issue, through its pending MJP. *See* Doc. 86.

Warner moved to strike the School Board's third affirmative defense (the defense predicated on the Settlement Agreement). *See* Doc. 85 (the "MTS"). And Warner opposed the MJP. *See* Doc. 87. But Warner has never disputed he executed the Settlement Agreement. *See* Docs. 85, 87 *generally*. Instead, Warner challenges it based on the procedural posture, by alleging a lack of

2

consideration, and by arguing the scope of the release does not cover the pending claims. *Id.* These are all legal arguments for the Court to resolve without any further discovery.

Accordingly, the Court should deny Warner's Motion to Stay SJ and rule on the pending MJP. The School Board further addresses each section of Warner's Motion to Stay SJ below.

## I.   RULE 56(D)

Warner does not require any additional discovery to understand the scope of the releases within the Settlement Agreement. *See* F.R.C.P. 56(d) (permitting the Court to defer consideration <u>if</u> the nonmovant shows "for specified reasons, it cannot present facts essential to justify its opposition"). Warner has not satisfied his burden here. The Court may adjudicate the School Board's MJP without considering any other materials beyond the pleadings and exhibits thereto, and the legal arguments set forth in the MJP and Warner's opposition.

First, the Settlement Agreement is <u>not</u> ambiguous, and Warner has failed to identify any latent ambiguity that would permit the Court to consider parol evidence. When Florida courts analyze contracts, they begin with the agreements' plain language. *Aleman v. Gervas*, 314 So. 3d 350, 352 (Fla. 3d DCA 2020) (quoting *Beach Towing Servs., Inc. v. Sunset Land Assocs.*, 278 So. 3d 857, 860 (Fla. 3d DCA 2019)). Under the parol evidence rule, "a complete

3

and unambiguous written agreement may not be contradicted or modified by extrinsic evidence." *Whiting v. Whiting*, 160 So. 3d 921, 924 (Fla. 5th DCA 2015). A "latent ambiguity," however, can enable a court to examine evidence outside the four corners of the contract notwithstanding the parol evidence rule. *See Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1310 (11th Cir. 1998) ("Under Florida law, however, parol evidence is **not** admissible to explain a patent ambiguity; it is admissible to explain only a latent ambiguity.") (emphasis added). A latent ambiguity exists where a contract's language is clear, but the clear language <u>fails</u> to address a particular set of circumstances. *E.g.*, *Whiting*, 160 So. 3d at 924; *see also Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52–53 (Fla. 1st DCA 2005) ("A latent ambiguity arises when a contract on its face appears clear and unambiguous, but fails to specify the rights or duties of the parties in certain situations.").

In other words, latent ambiguities involve what are effectively voids or gaps (even non-obvious ones) in the written language of a contract. *See Johnson Enters.*, 162 F.3d at 1310 ("A latent ambiguity . . . exist[s] where a contract fails to specify the rights or duties of the parties in certain situations . . . .") (quoting *Crown Mgmt. Corp. v. Goodman*, 452 So. 2d 49, 52 (Fla. 2d DCA 1984) (explaining parol evidence is necessary in the context of latent ambiguities because the contract itself does not provide sufficient insight into how the parties intended to handle a particular situation)). But

4

they do <u>not</u> involve situations where the parties simply disagree about how a court might interpret written contract language. *See Quezada v. Sante Shipping Lines, Inc.*, No. 11-23246, 2014 WL 12860596 (S.D. Fla. Apr. 17, 2014) ("However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner.") (internal citation omitted).

Accordingly, the Settlement Agreement is <u>not</u> ambiguous even if Warner asserts the scope of the release should be narrower than the School Board contends. In *Quezanda*, the court refused to consider parol evidence to address the parties' conflicting positions on the interpretation of the document at issue, specifically disregarding evidence the defendant supposedly made a verbal statement that directly contradicted the clear, written language of the agreement. *Id.* at *5–6.[1] In short, the "document [was] not an ambiguous written instrument, wrought with latent ambiguity, for which [the court] must consider parol evidence." *Id*. The same reasoning applies here. Warner has not demonstrated the existence of a latent ambiguity within the Settlement Agreement at all, let alone within the release provision (paragraph 5) or

---

[1] The dispute in *Quezanda* involved an alleged bonus payment to which the plaintiff claimed entitlement. The contract explicitly described bonus eligibility by requiring the employee to maintain his or her employment through the date of the bonus. *Id.* at *5. As a result, there was no gap in the contract that would allow the court to consider outside evidence to fill any purported unaddressed topic – *i.e.*, no ambiguity.

5

agreement not to sue (paragraph 6), which bar his present claims. The language simply says exactly what appears on the contract's face: to release all claims Warner might have had "regarding J.W.'s education" (paragraph 5).

Second, to the extent Warner has additional evidence regarding the Settlement Agreement, the Court permitted him leave to file it. *See* Doc. 103 (the "Order"). To that end, although the School Board maintains no additional facts or exhibits were necessary to adjudicate the pending MJP, the School Board agreed to stipulate to the admissibility of certain emails Warner requested. *See* Doc. 105. To be clear, the School Board stipulated to the authenticity of several emails pursuant to Warner's request and to resolve Warner's prior request to take the deposition of the School Board attorney who defended against Warner's prior lawsuit. *Id.* As explicitly stated in the stipulation, by stipulating to the authenticity of the documents, the School Board does <u>not</u> contend they are relevant to the adjudication of the pending motion, whether resolved under the Rule 12(c) standard or the Rule 56 standard. *Id.* The School Board also agreed it would not oppose Warner's request for additional briefing to explain the evidence Warner wanted to file, so long as the School Board be permitted a reply to any such brief.

Separately, Warner has since made multiple filings of his own. *See* Doc. 104, Doc. 107. Thus, to the extent Warner contends there is more for the Court to review, he has had the opportunity to file it with the Court.

6

Third, contrary to Warner's attempts to delay adjudication and reopen discovery, there is nothing further for the School Board to produce because Warner seeks discovery into privileged information. Specifically, Warner intends to take testimony from School Board attorneys, or review attorney-client privileged communications, in a fishing expedition to discover the "state of mind" of the School Board, which is improper. *See* Fla. Stat. § 90.502 (the "Lawyer-client privilege"); Doc. 105, p.1 (reflecting the Joint Stipulation of Facts and Exhibits was prepare in response to the Order, but also to resolve Warner's prior subpoena and request for the deposition of the attorney representing the School Board in the matter from which the Settlement Agreement arose). Thus, Warner's argument that he needs additional discovery is undercut by his declared intention to seek discovery that would be prohibited by the attorney-client privilege.

If Warner contends he had a different understand of the releases he signed, that is evidence that would come only from him. And Warner has already filed this type of evidence. *See* Doc. 107-1 (Warner's Declaration alleging what he "believed" to be released by the Settlement Agreement). The School Board cannot speak to Warner's state of mind. *See* Doc. 106-1, ¶ 6 (Warner's declaration where he questions whether the release he signed was knowingly and voluntarily made). The School Board only intends to rely on the language of the release Warner executed (shown in the Settlement Agreement

7

attached to the Answer). At most, as in response to Warner's motion to strike, the School Board compared the language in the Settlement Agreement to the language of the release Warner signed with the School Board in another matter. *See, e.g.* Doc. 91-1 (Settlement Agreement and Release executed by Warner arising from a public records lawsuit). In its MJP, the School Board maintains the plain language of the release within the Settlement Agreement attached to the School Board's Answer bars Warner's claims in this case.

Under these circumstances, Warner has not shown converting the MJP to a motion for summary judgment would deprive him of the ability to present any valid defense.

## II. MEETING OF THE MINDS.

Warner likewise implies (though he does not outright state) that no "meeting of the minds" occurred between himself and the School Board with respect to the Settlement Agreement. This "meeting of the minds" language raises a few necessary background principles:

**First,** the "meeting of the minds" language that appears in some Florida case law is an antiquated way of describing the <u>negotiation</u> process of entering into an agreement as opposed to an element of the <u>final</u> agreement. *See generally Webster Lumber Co. v. Lincoln*, 115 So. 498, 503 (Fla. 1927) ("There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement

8

must extend to all the terms which the parties intend to introduce."). In other words, the parties' discussions of a possible agreement do not create a binding contract. Modernly, Florida law recognizes the near-universal elements of (1) offer, (2) acceptance, and (3) consideration to create a binding contract (with the occasional addition of elements such as "specification of essential terms"). *E.g.*, *Triton Stone Holdings, LLC v. Magna Bus., LLC*, 308 So. 3d 1002, 1006 (Fla. 4th DCA 2020). So the real question is: Did the parties intend to enter into a contract?

**Second,** the analysis of whether the parties intended to enter into a binding contract does not revolve around the parties' subjective beliefs, but rather whether a reasonable person would understand the circumstances to create a contract. For example, *Med-Star Central, Inc. v. Psychiatric Hospitals of Hernando County, Inc.*, which is a commonly cited case involving the "meeting of the minds" language, expressly noted "the test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." 639 So. 2d 636, 637 (Fla. 5th DCA 1994) (quoting *Jackson v. Inv. Corp. of Palm Beach*, 585 So. 2d 949, 950 (Fla. 4th DCA 1991)).

In this case, the Settlement Agreement evidences a clear meeting of the minds – i.e., a clear offer and acceptance. *See* Doc. 82-1 ("The purpose of this

9

Agreement is to conclusively resolve and settle any and all claims pertaining specifically to the education of J.W. This Agreement shall also specifically cover any and all purported claim raised in the matter . . . (hereinafter 'Lawsuit')")." Following the Settlement Agreement, the parties all acted with the understanding the Settlement Agreement was enforceable: Warner dismissed the Lawsuit against the School Board and the School Board provided Warner with the CHOICE assignment he selected for his son and all other consideration promised in the Settlement Agreement. And in any event, a reasonable person would have understood that signing the Settlement Agreement in fact meant he or she intended to enter into a contract. *See MedStar*, 639 So. 2d at 63.

The parties now ask this Court to rule on whether the scope of the release within the Settlement Agreement bars Warner's pending claims. This request – briefed in the MJP and opposition – calls for a legal determination based on the plain and unambiguous language of the Settlement Agreement. Thus, Warner's arguments to seek discovery as to whether there was a "meeting of the minds" should be denied.

### III. KNOWINGLY AND VOLUNTARY.

As explained above, the Court can and should evaluate the release provision of the Settlement Agreement based on its plain language. To the extent Warner interprets the release differently, Warner has had ample

10

opportunity to brief his position and provide any self-serving declaration he wishes to include. The Court should not permit Warner to take discovery into "internal school board documents and in the minds of school board employees that can only be obtained through depositions and document requests" (Doc. 106, p.3), because Warner is actually seeking to take discovery from the School Board's attorneys. Doc. 105, p.1 (reflecting Warner's attempt to subpoena the School Board's attorney for deposition).

## IV.   DUE PROCESS

There is no due process violation by the Court considering the School Board's MJP under the summary judgment standard. Warner had the opportunity to file – and did in fact file – an opposition to the MJP. *See* Doc. 87. And again, the Court permitted Warner the opportunity to file all additional evidence Warner deemed appropriate. *See* Order. Warner has now done so. *See* Doc. 104, Doc. 150, and Doc. 107.

Warner also argues "no opportunity has been given to present all arguments related to summary judgment that Mr. Warner is entitled to." (Doc. 106, p.4). In light of the ample briefing and filings discussed above, the School Board does not believe any additional briefing is necessary or warranted here. However, the School Board does not oppose Warner's request for an opportunity to file an additional brief to include argument on the evidence filed

11

in response to the Court's Order, so long as the School Board be given leave to serve a response of equal length within two weeks of any such filing.

## V. CONCLUSION

The Court should deny Warner's Motion to Stay SJ, thereby maintaining the stay of discovery set forth in its Order. Should the Court permit Warner to make any further filings with respect to the pending MJP, then the School Board respectfully requests the Court permit the School Board two weeks to file a reply of equal length.

Respectfully submitted,

*/s/ Jason L. Margolin*
**JASON L. MARGOLIN**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December 2024, I filed the foregoing using the Court's CM/ECF System, which will send a true and correct copy to all counsel of record.

*/s/ Jason L. Margolin*
Counsel for Defendant