# United States District Court
For The Middle District of Florida
Tampa Division

Blake Warner

v.

The School Board of
Hillsborough County Florida

Case Number 8:23-CV-00181-SDM-LSG

**Plaintiff's Opposition to Defendant's Motion for Entitlement**

The School Board asks for an extraordinary remedy: $183,661.50 in attorney's fees from a pro se civil rights plaintiff—a figure that suggests either exceptional legal complexity or exceptionally optimistic bookkeeping. To justify such an award, the Board must show that the plaintiff's claims were "frivolous, unreasonable, or without foundation.". The record, however, reflects legitimate advocacy that merits adjudication, not punishment.

Plaintiff's claims necessitated two detailed Reports and Recommendations spanning 79 pages (Docs. 72 and 112). The Fair Housing Act claims represented a good-faith extension of existing law, bolstered by the Supreme Court's mandate for "generous construction" and the Eleventh Circuit's expansive reading in *Georgia State Conference of the NAACP v. City of LaGrange*, 940 F.3d 627 (11th Cir. 2019).

1

The Court's own actions belie any claim of frivolity. Equal Protection claims survived the motion to dismiss stage—an achievement incongruous with purported meritlessness. The Magistrate Judge characterized a different key issue as "a closer call," confirming these were substantive legal questions, not judicial windmills.

At issue was a legitimate dispute over agreement scope and whether extrinsic evidence must be considered for civil rights waivers under the "totality of circumstances" test. The Southern District of Florida in *Duvall v. Sun-Sentinel Co., No. 12-62497-CIV-SCOLA*, 2013 WL 3310073, at *2-3 (S.D. Fla. July 1, 2013) expressly held that "the Court cannot dismiss on the basis of [release] documents alone, no matter how broad the release's language." While the Eleventh Circuit remains undecided on this question for § 1983 claims, the Third Circuit in *W. B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995) explicitly applied this test. This circuit split—coupled with evidence the release wasn't knowing and voluntary—places Plaintiff's position squarely within reasonable advocacy.

The School Board's motion contains fatal procedural defects: improperly seeking appellate fees beyond this Court's jurisdiction, time-barred fees from a previously dismissed case, and phantom docketing fees they never incurred (Doc. 124).

Finally, as the Supreme Court emphasized in *Hughes v. Rowe*, 449 U.S. 5 (1980), pro se litigants deserve protection from punishment for failing "to recognize subtle factual or legal deficiencies" in their claims. *Id.* at 179. Granting fees here would create precisely the chilling effect on civil rights litigation that the Supreme Court cautioned against.

The School Board's motion should be denied in its entirety.

2

## LEGAL STANDARD: THE HIGH THRESHOLD FOR DEFENDANTS

While 42 U.S.C. § 1988(b) and 42 U.S.C. § 3613(c)(2) permit prevailing defendants in civil rights cases to recover attorney's fees, the Supreme Court has established an intentionally "asymmetric approach" with a significantly higher standard for defendants than for plaintiffs. A prevailing defendant may recover fees only if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

This standard is deliberately stringent to avoid undercutting Congress' policy of promoting vigorous prosecution of civil rights violations. *Id.* at 422, *Bonner v. Mobile Energy Servs. Co., 246 F.3d 1303*, 1305 (11th Cir. 2001) (per curiam).

When the plaintiff is proceeding pro se, an even higher threshold applies. The Supreme Court has specifically emphasized that "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Hughes v. Rowe*, 449 U.S. at 15. This recognition of the disadvantages faced by pro se litigants is particularly relevant to fee determinations in civil rights cases.

Courts must also "avoid post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. at 421-22. This caution is particularly prudent in cases involving complex legal questions or novel theories. *Id.*

ARGUMENT

**PLAINTIFF'S CLAIMS WERE NOT FRIVOLOUS OR UNREASONABLE**

**The School Board Misrepresents Summary Judgment to Fabricate Frivolity**

The School Board's motion contains a critical misrepresentation that Warner "failed to show any evidence in opposition to the School Board's converted motion for summary judgment." Doc. 123 at 10. This assertion is demonstrably false and forms the centerpiece of their frivolity argument.

Warner submitted substantial evidence addressing the converted summary judgment motion, including an affidavit (Doc. 107-1), the original draft agreement with redline markups (Doc. 107-2), and relevant email correspondence (Doc. 105-1 - 4). These submissions directly addressed the sole issue converted to summary judgment: the School Board's affirmative defense based on the settlement agreement.

The School Board's criticism that Warner focused on "arguing that the School Board interpreted the Settlement Agreement wrongly" rather than "present[ing] evidence in support of his claims" (Doc. 123 at 10) fundamentally misunderstands the procedural posture. As the Court's R&R explicitly stated, the conversion to summary judgment was solely "to consider the settlement agreement" (Doc. 112 at 7), not to evaluate the merits of Warner's substantive claims.

When a court converts a motion on an affirmative defense to summary judgment, a plaintiff has no obligation to present evidence on the underlying merits of his claims. Moreover, discovery was stayed during this period, making it impossible for Warner to develop evidence on his underlying claims even if required.

This misrepresentation is particularly significant because it forms the foundation

4

of the School Board's frivolity argument under *Head v. Medford*, 62 F.3d 351, ( (11th Cir. 1995) noting that "findings of frivolity have been sustained when... a motion for summary judgment... has been granted where plaintiffs did not introduce any evidence to support their claim").

**Plaintiff's Claims Required Extensive Judicial Analysis**

Far from being obviously frivolous, Plaintiff's claims required extensive judicial analysis in two distinct contexts:

1. **Analysis of the Settlement Agreement (Doc. 112)**: The Court issued a 38-page Report and Recommendation analyzing complex issues regarding:

   - Whether the release language was "clear and unambiguous"
   - Whether the agreement released claims arising after its execution
   - Whether federal common law required application of the "totality of the circumstances" test
   - Allocation of consideration between Warner individually and as parent

2. **Analysis of the Substantive Claims (Doc. 72)**: The Court issued a separate 41-page Report examining the merits of Plaintiff's claims, including:

   - Whether the Fair Housing Act's § 3604(a) prohibition could encompass school boundary decisions
   - Whether residential school assignments could constitute "services" under § 3604(b)
   - The causal relationship between school boundaries and housing availability

The settlement agreement contained numerous ambiguities requiring careful interpretation, including conflicts between provisions purporting to release "any other facts, acts, or events occurring in whole or in part on or before the Effective Date" while simultaneously stating that "this release shall not cover... any new claim that may arise by reason of an act or omission occurring after the Effective Date of this Agreement." Doc. 117 at 30-31.

Most significantly, the settlement agreement expressly preserved claims arising after its effective date. Plaintiff's claims in Count One challenged school boundary changes made in 2023—changes that indisputably occurred after the settlement agreement's March 15, 2022 effective date.

As recognized by the Eleventh Circuit, cases requiring such "extensive judicial analysis" are generally inappropriate for defendant fee awards. *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985).

**The Magistrate's Analysis Confirms Warner's Claims Are Not Frivolous**

The strongest evidence against frivolity comes from the Magistrate's own analysis in the Report and Recommendation (Doc. 112). In considering whether the voting district map claims were covered by the settlement agreement's narrow release of claims "specifically related to J.W.'s education," the Magistrate explicitly acknowledged the difficulty of resolving this question:

> "Whether the release covers Warner's challenge to the voting district maps is a closer call... Although Warner's claim of vote dilution resulting from the voting district changes relates broadly to J.W.'s education, the 'specific' relation is difficult to see in the third amended complaint." Doc. 112 at 17

If a federal judge found the question to be "a closer call" and the specific relation

6

"difficult to see," then Warner's position could not possibly meet the "frivolous, unreasonable, or without foundation" standard required for a fee award.

The Magistrate's struggle to resolve this question conclusively demonstrates that the parties had a genuine and substantial legal disagreement over the proper interpretation of the settlement agreement's language. This disagreement was particularly focused on the meaning of "specifically related to J.W.'s education"—a phrase that was extensively negotiated during settlement discussions, precisely because Warner intended to preserve his right to bring claims unrelated to J.W.'s individual educational needs.

**The Court's Treatment of the Equal Protection Claims Supports Non-Frivolity**

The Court's ruling on the School Board's motion to dismiss supports the non-frivolous nature of Plaintiff's claims. The Court denied the School Board's motion to dismiss as to the Equal Protection claims, finding that Plaintiff had adequately stated a claim upon which relief could be granted. See Doc. 78, p.3 (adopting Report and Recommendation, Doc. 72, pp. 31-33).

In the Report and Recommendation, the Magistrate Judge conducted a thorough analysis of Plaintiff's Equal Protection claim, concluding that "Plaintiff has sufficiently alleged that Defendant made school boundary and school board district boundary decisions based on race" and that "[t]hese allegations are sufficient to state a claim for a violation of the Equal Protection Clause." Doc. 72, p. 32.

While survival at the motion to dismiss stage does not automatically preclude a finding of frivolity, it is strong evidence that the claims had sufficient legal and factual foundation to be non-frivolous. As the Supreme Court has emphasized,

7

"allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*." *Hughes v. Rowe*, 449 U.S. at 15-16.

**An Affirmative Defense Victory Does Not Render Claims Frivolous**

The Board improperly equates winning on an affirmative defense with the frivolity of underlying claims. Success of the settlement agreement defense does not establish that the claims themselves lacked legal or factual foundation.

The Supreme Court clarified in *Neitzke v. Williams*, 490 U.S. 319 (1989) that a complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Id.* at 325 This standard examines the substantive allegations, not whether they might be procedurally barred. Under the Board's flawed reasoning, any claim defeated by an affirmative defense—whether by limitations, release, or res judicata—would automatically qualify as "frivolous" regardless of its actual merit.

Notably, the Board cites no precedent establishing that a claim barred by settlement is inherently "frivolous" for purposes of fee-shifting.

**Plaintiff's FHA Claims Were Novel**

Plaintiff's Fair Housing Act claims represent precisely the type of novel legal theories and good-faith attempts to extend existing law that the Supreme Court has cautioned cannot support an award of attorney's fees. *Christiansburg Garment Co. v. EEOC*, 434 U.S. at 421-22.

These claims were firmly grounded in legislative intent, as expressed by FHA sponsor Senator Walter Mondale:

> "De facto segregation in schools and education is directly traceable to the existing patterns of racially segregated housing... Fair housing is therefore

8

more than merely housing. It is part of an educational bill of rights for all citizens." (90th Cong., 2nd sess., Congressional Record 114, February 15, 1968, at 3134)

Plaintiff's § 3604(a) claims relied on the statute's prohibition against actions that "otherwise make unavailable or deny" housing based on race—language requiring a "generous construction." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211-12 (1972). School boundaries create a direct causal chain affecting housing availability: they establish predominantly white school zones, increase property values in those zones, and make housing financially inaccessible to many minority families, effectively "making unavailable" housing because of race. This interpretation aligns with *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2515 (2015), which confirmed the FHA encompasses disparate-impact claims.

Similarly, Plaintiff's § 3604(b) claims drew from the Eleventh Circuit's decision in *Georgia State Conference of the NAACP v. City of LaGrange*, 940 F.3d at 632, which held that § 3604(b) covers post-acquisition services connected to housing. School assignment creates an even more direct housing connection than utility services, as it establishes a property-specific entitlement to particular educational services. The Supreme Court recognized this relationship in *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 20-21 (1971), noting that "people gravitate toward school facilities" and "the location of schools may influence the patterns of residential development."

9

**The School Board's Substantial Fee Request Contradicts Its Claim of Frivolity**

The School Board's assertion that this case was frivolous is undermined by its own fee request: a staggering $183,661.50 in attorney's fees. This extraordinary sum—sought for a case that never even reached the discovery phase—speaks not to frivolity but to the inherent complexity of the legal issues at stake.

The contradiction is logically inescapable: If Plaintiff's claims were truly "frivolous, unreasonable, or without foundation" as the School Board contends, competent counsel should have disposed of them with minimal effort and expense. That the School Board instead devoted such substantial resources to this litigation reveals the substantive nature of the legal questions presented.

Even more telling, the Court itself had to raise arguments and affirmative defenses sua sponte that the School Board's counsel—now seeking $183,661.50 in fees—failed to identify. As the Court's own order acknowledges: "the report considers (1) whether the settlement agreement's 'agreement-not-to-sue' provision (Doc. 111 ¶ 6) applies to Warner's claim or (2) whether Warner has standing to assert Warner's claim in Count II—issues the school board's motion fails to argue." (Doc. 120, p. 3).

This judicial intervention fatally undermines the School Board's position. A case requiring judges to formulate legal reasoning overlooked by defense attorneys cannot reasonably be deemed frivolous. It's illogical to expect self-represented plaintiffs to anticipate losing based on arguments their opponents failed to identify.

The School Board cannot have it both ways: either the case presented complex legal issues requiring substantial attorney time and judicial analysis (as the fee

10

amount and Court intervention suggest), or it was frivolous and should have been quickly dismissed with minimal effort (as their fee motion claims). The evidence clearly supports the former, not the latter.

**THE KEY LEGAL DISPUTE OVER EXTRINSIC EVIDENCE**

**The Dispute Turned on a Genuine Legal Question with Circuit Split**

The central legal question in this case—whether extrinsic evidence should be considered when evaluating a release of federal civil rights claims—represents a legitimate, complex legal dispute that cannot be characterized as frivolous. This question involves a potential conflict between state contract law principles and federal common law governing civil rights waivers, with disagreement among circuits.

The Third Circuit has explicitly held that the "totality of circumstances" test applies to determine whether a waiver of civil rights claims was knowing and voluntary, and that this determination is a question of fact unsuitable for summary judgment. See *W. B. v. Matula*, 67 F.3d at 497-98 (applying "totality of circumstances" test to § 1983 claims and noting "there is at least a dispute of fact whether the agreement is clear and specific as to a waiver of any damage claims"). The Third Circuit's approach directly contradicts the R&R's conclusion that extrinsic evidence should be excluded.

More significantly, courts in the Southern District have emphatically held that when evaluating releases of federal civil rights claims, courts "cannot dismiss on the basis of those documents alone, no matter how broad the release's language." *Duvall v. Sun-Sentinel Co.*, 2013 WL at at *2-3 (citing *Myricks v. Fed. Reserve*

11

*Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007)). Instead, "Eleventh Circuit case law instructs that the Court must make fact-intensive inquiries to determine whether, under 'the totality of the circumstances,' the release was knowing and voluntary." *Id.*

While the R&R suggested that *Beadle* and similar precedent are "inapplicable" because Warner is not an employee who released his employer, this distinction is not well-established in Eleventh Circuit law.

In fact, several district courts within the Eleventh Circuit have gone the other way and applied the "totality of circumstances" test to various civil rights contexts beyond the employment setting. See *Jones v. Asset Acceptance, LLC*, No. 8:07-cv-02382-T-24-MSS 2008 WL 4080269, at *9 (M.D. Fla. Aug. 28, 2008) (applying "totality of circumstances" to Florida Civil Rights Act claims); *Norris v. Suntrust Banks, Inc.*, Case No: 5:19-cv-430-Oc-37PRL 2020 WL 533934, at *7 (M.D. Fla. Feb. 3, 2020) (applying "totality of circumstances" to jury trial waiver); *United States v. Smith*, 821 F.3d 1293, 1305 (11th Cir. 2016) (applying "totality of circumstances" to Fifth Amendment rights waiver).

Where legitimate disputes exist regarding the proper legal standard—particularly in areas with apparent circuit splits—a party's advancement of one reasonable interpretation cannot be deemed frivolous. The Court's ultimate rejection of Plaintiff's legal theory does not render the argument itself frivolous, as the Supreme Court has emphasized that "allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation.'" *Hughes v. Rowe*, 449 U.S. at 15-16.

12

**Warner's Evidence Strongly Supported His Position**

Building on this legal framework, Warner submitted compelling evidence demonstrating that the release was neither knowing and voluntary nor intended to be broad, including: 1)A sworn declaration detailing explicit conversations with Hillsborough County Public School officials who assured him the settlement only covered special education claims (Doc. 107-1 ¶¶ 4-8); 2) Email correspondence showing Warner's consistent rejection of broader release language, insisting that the agreement conform to what was verbally agreed upon with Suzette Sample (Doc. 105-2); and 3) Draft versions of the agreement demonstrating how the language evolved through negotiations.

This evidence, if considered under the proper "totality of circumstances" test, would have created, at minimum, a genuine issue of material fact regarding whether Warner knowingly and voluntarily released his constitutional claims. The School Board prevailed not because Warner's position lacked merit, but because the Court declined to apply the totality of circumstances test and refused to consider the extrinsic evidence that overwhelmingly supported Warner's position.

As *Duvall v. Sun-Sentinel Co.* emphasized, when evaluating releases of federal claims, courts "cannot dismiss on the basis of those documents alone, no matter how broad the release's language." Instead, courts must conduct "fact-intensive inquiries" under the totality of circumstances. The R&R's refusal to do so does not render Warner's position frivolous—it simply reflects a disagreement on the applicable legal standard.

13

## THE SCHOOL BOARD'S FEE REQUEST IS DEFECTIVE

### This Court Lacks Jurisdiction to Award Appellate Attorney's Fees

The School Board improperly seeks attorney's fees for work related to Plaintiff's appeal to the Eleventh Circuit and Supreme Court petition. District courts cannot award fees for appellate work. The Eleventh Circuit clearly established that "a district court is not authorized, by local rule or otherwise, to control what happens in the circuit court. This court is the only entity that can determine whether attorney's fees should be awarded for appellate work." *Mills by Mills v. Freeman*, 118 F.3d 727, 733-34 (11th Cir. 1997). Similarly, the Supreme Court held that "a request for attorney's fees for representation on appeal should be made to the court of appeals." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (1990).

Moreover, Warner's position is far from frivolous, as evidenced by: (1) First Liberty Institute accepting his Supreme Court petition pro bono; (2) eight separate amicus briefs supporting his position from respected organizations; and (3) the Supreme Court issuing a call for response when the School Board declined to file a brief.

### The School Board Is Time-Barred from Seeking Fees Related to The 1029 Case

The School Board incorrectly claims the cases were consolidated when Case No. 8:23-cv-01029 was actually dismissed without prejudice on July 5, 2023. The Court directed Warner to "assert his claims against the School Board in a single action" (Doc. 37 at 4), triggering Local Rule 7.01(b)'s mandatory fourteen-day deadline for seeking attorney's fees—which the Board missed.

Even if the cases had been consolidated, this would not extend the deadline, as

"consolidation does not merge the suits into a single cause, or change the rights of the parties." *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 497 (1933). Each action "retains its separate character" despite consolidation. *Hall v. Hall, 584 U.S. 59,* 138 S. Ct. 1118, 1127 (2018).

**The Settlement Agreement Contains No Attorney's Fee Provision for Enforcement**

When a defendant prevails through a release or settlement agreement, the victory rests on contract law principles separate from the underlying civil rights claims. The court is not determining that the plaintiff's claims lacked merit, but merely that the plaintiff had contracted away the right to bring those claims.

Significantly, the Settlement Agreement contains no provision authorizing attorney's fees for enforcement actions—a standard clause that sophisticated parties like the School Board routinely include when fee-shifting is intended.

**THE SCHOOL BOARD FAILS TO MEET ITS BURDEN**

The School Board, as the moving party, bears the heavy burden of proving that Warner's claims were "frivolous, unreasonable, or without foundation." This burden requires specific, substantive analysis—not mere conclusions. Yet the motion presents precisely such conclusory assertions, failing to demonstrate how Warner's specific claims meet this exacting standard.

Consider the School Board's central assertion that Warner's claims were "frivolous," "unreasonable," or "without foundation" simply because "the Settlement Agreement previously entered into by the parties... barred all of these claims." Doc. 123 at 8. This represents classic circular reasoning: declaring claims frivolous merely be-

15

cause they ultimately failed. The Supreme Court explicitly rejected such "post hoc reasoning" in *Christiansburg*, recognizing that unsuccessful claims are not inherently frivolous.

Notably, the School Board fails to identify any specific aspect of Warner's legal theories or factual allegations that was frivolous from the outset, instead vaguely referencing dismissal of "most of Plaintiff's claims at the pleading states [sic]" without engaging the Court's actual reasoning. Doc. 123 at 9.

The Eleventh Circuit has told us that "findings of 'frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Fed.R.Civ.P. 41(b) motion for involuntary dismissal"—not on pre-discovery Rule 12 motions as occurred here. *Sullivan v. School Bd. of Pinellas County*, 773 F.2d at 1189. Warner's claims were dismissed at the pleading stage before discovery, and even the portion converted to summary judgment proceeded with discovery stayed—making it summary judgment in name only.

The School Board thus fails both by offering conclusory statements instead of specific analysis and by ignoring the procedural context that, under binding precedent, weighs decisively against finding frivolity in Rule 12 dismissals.

**Public Policy and Warner's Pro Se Status Weighs Against Awarding Fees**

The Supreme Court has established special protections for pro se litigants facing potential fee awards. In *Hughes v. Rowe*, 449 U.S. 5, the Court emphasized that "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Id.* at 15.

Plaintiff's claims addressed matters of significant public importance—namely,

16

the potential racial segregation effects of school assignment boundaries. Courts have consistently recognized that cases involving such issues of public importance should rarely result in fee awards against plaintiffs, even when unsuccessful. See, e.g., *Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991) (declining to award fees against plaintiff who raised important issues of public concern).

The allegations in this case—that school assignment boundaries may perpetuate racial segregation—implicate core civil rights concerns that Congress specifically intended § 1988 to address. Imposing substantial attorney's fees against a plaintiff raising such claims would directly contravene the purpose of civil rights fee-shifting provisions, which is to encourage, not discourage, private enforcement of civil rights laws.

## CONCLUSION

For the foregoing reasons, the Court should deny the School Board's Motion for Entitlement to Attorney's Fees and Costs.

April 10, 2025

Date

/s/blake warner

Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM